IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re: : Chapter 11

NORTHWESTERN CORPORATION, : Case No. 03-12872 (CGC)

Debtor. :

## FINAL ORDER GRANTING MOTION PURSUANT TO 11 U.S.C. §§ 105, 362, 363 AND 364 FOR ENTRY OF AN ORDER (A) AMENDING PRE-PETITION CREDIT FACILITY, (B) PROVIDING PROTECTIONS UNDER SECTION 364(c)(1), ON A PERMANENT BASIS, AND (C) GRANTING RELATED RELIEF

UPON the motion (the "Motion") of NorthWestern Corporation, a Delaware corporation (the "Debtor"), for Entry of an Order (A) Amending Pre-Petition Credit Facility, (B) Providing Protections Under Section 364(c)(1), on an Interim Basis and Permanent Basis, (C) Scheduling Hearings and Establishing Notice Requirements and (D) Granting Related Relief; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefore, THE COURT HEREBY FINDS:

A. On September 14, 2003 (the "Petition Date") the Debtor filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner. An Official Committee of Unsecured Creditors was appointed on September 30, 2003.

ATL/987618.1

1

B.  A need exists for the Debtor to have sufficient financing to continue the operation of its business and successfully reorganize. The ability of the Debtor to finance its operations and the availability to it of long-term financing both during the bankruptcy proceeding and after its reorganization through the amendment of the CSFB Facility[1] are vital to the confidence of the Debtor's vendors and suppliers of goods and services, to its customers and employees and to the preservation and maintenance of the value of the Debtor's estate. The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under § 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to § 364(a) or (b) of the Bankruptcy Code, or unsecured debt having the priority afforded by § 364(c)(1) of the Bankruptcy Code.

C.  Credit Suisse First Boston, acting through its Cayman Islands branch, as the agent ("CSFB") and the Lenders under the CSFB Facility are willing to continue to provide the financing under the CSFB Facility subject to the terms and conditions set forth herein and in the CSFB Facility, as amended, and in this order assuring that the obligations under the CSFB Facility, as amended, are super-priority claims; provided, however, that such super-priority claims are subject to and junior to any similar claim granted to Bank One, N.A. ("Bank One") under the Bank One DIP Agreement (as defined below).

D.  CSFB and each of the Lenders party to the CSFB Facility, as amended, have acted in good faith in consenting to the amendment of the CSFB Facility and the reliance of

---

[1] Any capitalized term used herein but not otherwise defined shall have the meaning ascribed to such term in the Motion.

each of the Lenders party to the CSFB Facility on the assurances referred to herein is in good faith.

E.   Good cause has been shown for the entry of this order. Among other things, entry of this order will provide significant benefits to the estate by reducing interests costs and providing long-term financing for the Debtor to emerge from bankruptcy. Amendment of the CSFB Facility as proposed is in the best interests of the Debtor's estate.

F.   The amended CSFB Facility has been negotiated in good faith and at arm's length among the Debtor, CSFB and the Lenders party to the amended CSFB Facility and the terms of the financing arrangement are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

G.   This Court concludes that entry of this Order is in the best interests of the Debtor and its estate and creditors as its implementation will, among other things, allow for the continued operation and reorganization of the Debtor's existing business.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.   The Motion is **GRANTED** on a final basis in accordance with the terms of this Final Order. Any objections to the Motion not withdrawn or resolved as stated on the record at the Interim Hearing or the Final Hearing are overruled. This Final Order is valid immediately and is fully effective upon its entry. Each factual finding set forth within this Final Order shall be of a final nature.

2. This Court has jurisdiction over these proceedings and the parties and property affected pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

3. The Debtor is authorized to amend the CSFB Facility and perform its obligations under the amended CSFB Facility, in accordance with, and subject to, the terms of this Order and the amended CSFB Facility.

4. The amendment and modification of the CSFB Facility has been negotiated in good faith and at arm's length among the Debtor, CSFB, and the Lenders party to the amended CSFB Facility and any obligations extended to the Debtor by CSFB under the amended CSFB Facility shall be deemed to have been extended by CSFB, and such Lenders, in good faith, as that term is used in Section 364(e) of the Bankruptcy Code.

5. Subject to this Final Order, the Debtor, CSFB and the Lenders party to the amended CSFB Facility stipulate and agree as follows:

   a. Prior to the Petition Date, CSFB, as agent for itself and certain lenders (collectively, the "Pre-Petition Lenders"), provided financing to the Debtor pursuant to the CSFB Facility;

   b. The Debtor is not aware of any claim, counterclaim, setoff or defense of any kind or nature which would in any way affect the validity, enforceability and nonavoidability of the CSFB Facility or any of the Pre-Petition Lenders' pre-petition liens, claims or security interests, or otherwise reduce or affect the obligations of the Debtor to pay any of the Pre-Petition Lenders' claims;

   c. The Debtor agrees and acknowledges that the liens and security interests held by the Pre-Petition Lenders under the CSFB Facility are valid, enforceable, properly perfected first priority liens and security interests and are non-avoidable;

    d. The Debtor agrees and acknowledges that as of September 14, 2003, the principal balance due under the CSFB Facility was $388,050,000, accrued interest thereon was $7,168,145.83, plus other fees, costs and expenses, as provided for under the CSFB Facility; and

    e. In entering into the amended CSFB Facility, and as consideration therefor, the Debtor hereby agrees that until such time as all the obligations under the CSFB Facility are indefeasibly paid in full in cash, the Debtor shall not in any way prime the liens existing in favor of CSFB and the lenders party to the amended CSFB Facility under the terms of this Final Order by offering a subsequent lender or party-in-interest a superior or pari passu lien or claim pursuant to Section 364(c) and (d), 503(b) or 507(b) of the Bankruptcy Code (excluding any pari passu claim of Bank One under Section 364(c) and any similar claim granted pursuant to or arising under the Cash Management Order);

6.     The stipulations in (b), (c), (d), and (e) above are binding on the Debtor, but shall not be binding on the Official Committee of the Unsecured Creditors (the "Committee") unless and until the passing of the Investigation Termination Date (as defined below) with no objection, adversary proceeding or appropriate litigation being initiated in accordance with this Final Order.

7.     Notwithstanding anything herein to the contrary, for a period of one hundred and twenty (120) days from the date of entry of the Interim Order (the "Investigation Termination Date"), the Committee shall be entitled to investigate and challenge the validity, perfection, enforceability, amount and non-avoidability of the obligations arising under the CSFB Facility. If the Committee determines that there may be a challenge to the pre-petition liens and claims by the Investigation Termination Date, the Committee may file and prosecute an objection or claim related thereto, and shall have only until the Investigation Termination Date to file such objection or otherwise initiate an appropriate action or adversary proceeding setting forth the basis of any such

challenge, claim or cause of action. If such action is not filed on or before the Investigation Termination Date, the stipulations contained in (b), (c) and (d) above, and the validity, perfection, enforceability, and non-avoidability of the obligations under the CSFB Facility and such obligations shall be irrevocably binding on all creditors of the Debtor's estate and all other parties-in-interest without further action by any party or this Court. The Investigation Termination Date may not be extended, except with the consent of CSFB and the Debtor or by further order of this Court following notice and hearing.

8. The interests of the DIP Lenders and interests in certain accounts pursuant to the Cash Management Order (defined below) of Wells Fargo are adequately protected as the prepetition security interests and liens granted under the CSFB Facility will continue to exist unaltered and are to be paid according to terms of the CSFB Facility.

9. As adequate protection and security for all the obligations under the amended CSFB Facility, CSFB is hereby granted pursuant to Section 364(c)(1) of the Bankruptcy Code an allowed claim having administrative priority and senior status over any and all administrative expenses, including, without limitation, the kind specified in Sections 105, 326, 330, 331, 503(b), 507(b) and 726 of the Bankruptcy Code; <u>provided, however</u>, any super-priority administrative expense claim in favor of CSFB shall be subordinate and junior to any similar claim granted to or arising in favor of Bank One, N.A. under the Bank One DIP Agreement[2] and the Carve-Out, and any similar claim granted pursuant to or arising under the Cash Management Order.

---

[2] Bank One DIP Agreement shall refer to that certain Secured, Super-priority Debtor-in-Possession Credit and Guaranty Agreement dated as of September 15, 2003 by and

10. The amended CSFB Facility and the provisions of this Final Order shall be binding on CSFB, the Lenders party to the amended CSFB Facility, the Debtor and their respective successors and assigns and the same shall inure to the benefit of CSFB, the Lenders party to the amended CSFB Facility and the Debtor and their respective successors and assigns to the extent allowable under applicable law.

11. The amended CSFB Facility to which the Debtor is a party shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with its respective terms. Upon execution the amended CSFB Facility will have been duly executed and delivered to CSFB by the Debtor. Except for any provisions that are otherwise subject to a further order of the Bankruptcy Court as provided in this Final Order, the rights, remedies, powers, privileges, liens and priorities of CSFB provided for in this Final Order and under the amended CSFB Facility shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in this case or in any subsequent cases under the Bankruptcy Code unless CSFB and Required Lenders (as that term is defined in the amended CSFB Facility) under the CSFB Facility, as amended, consent or the obligations under the amended CSFB Facility have first been paid in full, in cash, and completely and indefeasibly satisfied.

12. The Debtor is expressly authorized and empowered to enter into and deliver, among other documents, the amended CSFB Facility in substantially the form

---

among the Debtor, the other loan parties thereto, Bank One, N.A., as administrative agent, and the lending institutions party thereto, as amended.

presented at the initial hearing to consider the Motion, subject to additional modifications and changes as may be mutually agreed by the Debtor and CSFB. The Debtor is authorized, empowered, and directed to perform all of its obligations under the amended CSFB Facility and such other agreements as may be reasonably required by CSFB to give effect to the terms of the amended financing provided for in this Final Order. Subject to the terms of this Final Order, the Debtor is authorized to perform and do all acts that may be required in connection with the amended CSFB Facility, including, without limitation, the payment of fees and the reimbursement of present and future reasonable costs and expenses, including, but not limited to, reasonable attorneys fees and legal expenses paid or incurred by CSFB. Copies of statements for any legal fees and expenses to be paid by the Debtor shall be provided to counsel for the Debtor, counsel for the Committee and the U.S. Trustee. The amended CSFB Facility shall constitute valid and binding obligations of the Debtor enforceable against the Debtor, and the Debtor's successors and assigns, in accordance with its terms, subject to the terms of this Final Order. Following execution, the Debtor may enter into any non-material amendments or modifications to the CSFB Facility without the need of further notice and hearing or Order of this Court, provided that such modifications or amendments do not materially and adversely affect the rights of any creditor, equity holder or party-in-interest and do not affect Bank One, N.A. or the Bank One DIP Agreement in any manner prohibited under the Bank One DIP Agreement. For purposes of this Final Order, non-material amendments or modifications to the CSFB Facility shall include, without limitation, clarifications of procedures and reporting requirements, insertions of incomplete information, corrections of any errors, any waivers

or consents that CSFB may exercise at its discretion, or to the extent authorized by the CSFB Facility and to the extent that such amendments or modifications do not cause an increase in the maximum amount available to be borrowed pursuant to the amended CSFB Facility.

13. Without limiting the rights of access and information afforded CSFB under the amended CSFB Facility, the Debtor shall permit representatives, agents and/or employees of CSFB to have reasonable access to its premises and its records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

14. Any and all payments or proceeds remitted to CSFB pursuant to this Final Order shall be received by CSFB for the benefit of CSFB and the relevant Lenders, as provided for under the amended CSFB Facility.

15. This Final Order is entered pursuant to Sections 361 and 364(c)(1) of the Bankruptcy Code. CSFB and the Lenders party to the amended CSFB Facility are entitled to all protection afforded by Section 364(e) of the Bankruptcy Code. Except for any provisions of that are otherwise subject to a further order of the Bankruptcy Court as provided in this Final Order, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or order to vacate shall not affect: (i) the validity of any obligation, indebtedness or liability incurred post-petition hereunder by the Debtor to CSFB prior to the date of CSFB's receipt of written notice to CSFB of the effective date of such reversal, stay, modification

or vacation; or (ii) the validity and enforceability of priority authorized or created hereby in favor of CSFB (including, but not limited to, all liens in favor of CSFB) or pursuant to the provisions of this Final Order for CSFB or the amended CSFB Facility. Notwithstanding any such reversal, stay, modification or vacation, any indebtedness, obligation or liability incurred post-petition hereunder by the Debtor to CSFB and CSFB's prior written notice to the Debtor of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Final Order and CSFB shall be entitled to all the rights, remedies, privileges and benefits granted herein and pursuant to the terms of this Final Order and the amended CSFB Facility with respect to all such indebtedness, obligations or liability.

16. Subject only to the provisions of the amended CSFB Facility and the Cash Management Order, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary so as to permit CSFB, and the Lenders party to the amended CSFB Facility, to exercise, upon the occurrence of an Event of Default and the giving of the five (5) business days' written notice to the Debtor and to the Committee, all rights and remedies against the Collateral provided for in the amended CSFB Facility. In any hearing after the giving of the aforementioned notice, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. Notwithstanding the foregoing, the automatic stay provisions of Section 362 of the Bankruptcy Code are not vacated or modified in any manner with respect to any party's rights or remedies under any of the Debtor's first mortgage bond indentures or the assets securing first mortgage bonds

issued pursuant to such indentures, certain of which first mortgage bonds are the Collateral provided for in the amended CSFB Facility. Moreover, after an event of default under the Bank One DIP Agreement, Bank One, N.A., as agent thereunder, shall use commercially reasonable efforts to satisfy obligations incurred and outstanding under the Bank One DIP Agreement, first from the assets that comprise the borrowing base under such financing, and shall only take remedial action with respect to other collateral securing the Bank One DIP Agreement after providing fifteen (15) days notice to the Debtor, the Committee and CSFB, and counsel for each of the foregoing, that Bank One, N.A. has determined, in its good faith discretion, that doing so is reasonably necessary to protect the interests of the agents and lenders under the Bank One DIP Agreement.

17.     The obligations under the amended CSFB Facility shall not be discharged by entry of an order confirming a plan of reorganization in this Chapter 11 case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor having hereby waived such discharge. Until all obligations under the amended CSFB Facility shall have been indefeasibly paid in full, the Debtor shall not seek any order dismissing this Chapter 11 case. If an order dismissing this Chapter 11 case under section 1112 of the Bankruptcy Code or otherwise is entered at any time, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that the super-priority claim granted and liens continued pursuant to this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all obligations in respect thereof shall have been indefeasibly satisfied and paid in full in cash (and that

such super-priority claims and liens shall, notwithstanding such dismissal, remain binding on all parties-in-interest).

18. Nothing contained in this Order, including, without limitation, paragraphs 5(c), 7 and 8 hereof, shall affect the rights or obligations of the Debtor or CSFB pursuant to the January 27, 2003 order of the Montana Public Service Commission (the "MPSC") (Order 6474a) including those rights and obligations involving liens and security interests, subject to the right of any party-in-interest to challenge the existence, scope or applicability of the MPSC order in light of the Debtor's chapter 11 case.

19. To the extent of any conflict between or among the express terms or provisions of any of the amended CSFB Facility, the Motion, any other order of this Court (other than the Cash Management Order[3] or the Bank One DIP Order,[4] with respect to the matters specifically subject to the applicable order) or any other agreements and the express written terms and provisions of this Final Order, the terms and provisions of this Final Order shall govern. Notwithstanding any contrary provision within any order, document or agreement, except as expressly provided in this Final Order, the amended CSFB Facility, or as consented to by CSFB in writing, and except as set forth herein, no other liens or priority status having a lien or administrative priority superior to or pari

---

[3] "Cash Management Order" shall refer to the Final Order Authorizing Debtor to Continue and Maintain its (A) Consolidated Cash Management System; (B) Existing Bank Accounts; (C) Existing Business Forms; (D) Public Purpose Programs; and (E) to Pay Certain Intercompany Obligations; and Guaranty Related Relief.

[4] "Bank One DIP Order" shall refer to the Final Order (I) Authorizing Debtor-in-Possession to Enter into Postpetition Credit Agreement and Obtain Postpetition Financing Pursuant to Sections 363 and 364 of the Bankruptcy Code, (II) Granting Liens, Security Interests and Superpriority Claims, and (III) Authorizing Adequate Protection Payments to Debtor's Senior-Secured Debt.

passu with that granted by or continued by this Final Order to CSFB shall be granted while any portion of the obligations under the amended CSFB Facility remain outstanding, except for those replacement liens which may be granted to the holders of Senior Liens (as that term is defined in the Bank One DIP Order) pursuant to paragraph 5 of the such Order, and pursuant to the Cash Management Order.

20. Notice given by the Debtor of the Interim Order and Final Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). The Debtor has served by United States mail, first class postage prepaid, copies of the Motion, Interim Order and Notice of the Final Hearing to the following parties: (i) the Office of the United States Trustee, (ii) counsel for the Debtor's Pre-Petition Lenders; (iii) counsel for Bank One; (iv) counsel for the Official Committee of Unsecured Creditors; (v) the Securities and Exchange Commission; (vi) the Federal Energy Regulatory Commission; (vii) the Montana Public Service Commission; (viii) the South Dakota Public Utilities Commission; (ix) the Nebraska Public Service Commission; (x) counsel for Credit Suisse First Boston; and (xi) all parties that have requested special notice in this Chapter 11 case pursuant to Bankruptcy Rule 2002.

21. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.

Dated: Wilmington, Delaware
~~December ___, 2003~~
Jan 13, 2004

THE HONORABLE CHARLES G. CASE, II
UNITED STATES BANKRUPTCY JUDGE

ATL/987618.1

13