# EXHIBIT A

| | | |
|---|---|---|
| 1 | Judge: | I will note the appearances on the appearance |
| 2 | | sheet. We're ready to proceed. |
| | | |
| 3 | Austin: | Thank you, Your Honor. For the record I'm Jes |
| 4 | | Austin with Paul Hastings Demask and Walker. I'm |
| 5 | | the counsel for Northwestern Corporation. We are |
| 6 | | here on the regularly scheduled under this |
| 7 | | hearing that was set this afternoon in the case, |
| 8 | | we have published an agenda, and we distributed |
| 9 | | an amended agenda, with respect to today's |
| 10 | | hearing and there are, I believe, there were 12 |
| 11 | | items noted on the agenda and as we've done in |
| 12 | | the past, I'm going to let Ms. Dennistein go |
| 13 | | through this agenda based on where things are, I |
| 14 | | can advise the Court that most of the matters are |
| 15 | | either resolved by agreement or stipulation. One |
| 16 | | of the other major matters was a motion for the |
| 17 | | forming of an equity committee has been at the |
| 18 | | request of the advance pulled from today's |
| 19 | | calendar and will be set on a future calendar, so |
| 20 | | that I believe that the only contested matter |
| 21 | | that we will have today is a motion that was |
| 22 | | filed by Magten for relief from the automatic |
| 23 | | stay as well as a motion dealing with an |

1    expansion of investigatory time related to the

2    committee and CS First Boston Credit Agreement.

3    We have had certain additional parties join in

4    the Magten motion and obviously we, on behalf of

5    the debt, have filed papers in opposition, so

6    that's the only real contested matter we have

7    today, but I'd like Ms. Denniston to run through

8    the agenda to advise the Court on the

9    developments of everything else that is

10    acceptable. Thank you. Please.


11   Ms. Denniston:    Good afternoon Your Honor. The first

12    agenda item is the status conference re Verified

13    Complaint, Northwestern against American Electric

14    Power. The appointees are in the process of

15    exchanging information and has scheduled a

16    meeting to discuss settlement. We have that

17    meeting, we'll take, are in the process of

18    scheduling a meeting, that meeting is expected to

19    take place in the next two week sand we would

20    like to continue this to the May 17th hearing.


21   Judge:    So ordered.


2

1  Ms. Denniston:      Number Two, on the agenda, Your Honor

2                is the debt's summation for Order Pursuant to

3                9019 Approving Settlement Agreement among Debtor

4                Clark Fort & Black for Atlantic Richfield. We're

5                requesting that this be continued to May 17th.

6                The parties are in the process of finalizing the

7                second stipulation that we advised the Court of

8                at the last hearing.

9  Judge:    So ordered.

10  Ms. Denniston:      Thank you, Your Honor. Number Three on

11                the agenda is the Motion of Deutsche Bank for

12                Relief for Automatic Stay. Deutsche and the

13                Debtor are requesting that this be continued to

14                May 17th.

15  Judge:    So ordered.

16  Ms. Denniston:      Number Four on the agenda, Your Honor,

17                is the application to employ Price Waterhouse as

18                Business Consultants on this matter was continued

19                so that the Debtor and Price Waterhouse could

20                address issues raised by the US Trustee and

21                others regarding a potential conflict. The

3

1         resolution of that issue is that the Minneapolis

2         office of Price Waterhouse will not perform

3         litigation services for Northwestern and with

4         that we have an Order authorizing the retention

5         with limited terms of engagement, and I'd like to

6         hand that over.


7  Judge:    Okay. Sign the order.


8  Ms. Denniston:      Thank you're your Honor. As Mr. Austin

9         indicated, Item Number Five on the agenda is the

10        Motion for Order Extending Time with the Official

11        Committee of unsecured credits to investigate,

12        and we've requested that we put to the end of the

13        docket.


14  Judge:    Okay.


15  Ms. Denniston:      Item #6 is the Motion for Court

16        Approval to Assume Executory Contract between

17        Northwestern and Mid-American Energy. This Motion

18        follows the stipulation that was presented at the

19        February Omnibus hearing. A Certificate of No

20        Objection was filed on April 7th and we'd like to

21        hand up the Order at this time.


4

1   Judge:   I signed the order.

2   Ms. Denniston:   Thank you Your Honor. Item #7 is the

3               Motion of Magten Asset Management Corporation for

4               Order granting relief in the automatic stay. As

5               Mr. Austin indicated, we'd like to continue that

6               till the end of the docket.

7   Judge:   So ordered.

8   Ms. Denniston:   Item #8 is the Motion for Relief of

9               Automatic Stay by Hydro Dynamics. The Debtor

10              filed an objection that was joined by the

11              Committee. In connection with this Motion the

12              Debtor has proposed or has filed a motion to

13              assume the Hydro Dynamics contracts. That Motion

14              will be set for the omnibus hearing in May and we

15              also have filed a stipulation to continue this

16              motion to the next omnibus hearing.

17   Judge:   So ordered.

18   Ms. Denniston:   Number 9 is the Motion of the Debtor

19              for an Order Pursuant to 11USE Section 1121

20              extending the exclusivity period to solicit

21              acceptances of the proposed plan of

1          reorganization. A certificate of no objection was

2          filed on March 31st and we'd like to hand up an

3          order.

4    Judge:    I signed the order.

5    Ms. Denniston:      Thank you Your Honor. Matter #10 is the

6          Motion to appoint official equity security

7          holder's committee filed by RCG Copathia and

8          others. A number of objections were filed Your

9          Honor and at the request of the [?] this matter

10         is being continued to the May 17th hearing.

11   Judge:    So ordered.

12   Ms. Denniston:      Number #11, Your Honor, is the pretrial

13         conference regarded Amended Verified Complaint

14         against Carpenter Pension Trust by agreement of

15         the parties we're requesting that that be

16         continued to May 17th.

17   Judge:    So ordered.

18   Ms. Denniston:      Thank you Your Honor. Number 12 is the

19         Plaintiff's Motion for scheduling order. The

20         Plaintiff filed a request for a scheduling order

1            to set an evidentiary hearing. The debtor filed a

2            response concurring that we're requesting that an

3            evidentiary hearing be sat during the month of

4            July and that matter is going forward. I am not

5            sure whether there is anybody here on behalf of

6            the Plaintiff.

7    Judge:    Yes, there is counsel here.

8    Counsel:  Good afternoon. Maureen O'King of Skadden Arps on

9            behalf of Yellowstone Energy Limited Partnership

10           is a plaintiff, and I rise with [                ]

11           listed ---- Skadden Arps Washington D.C. Office.

12           He's appearing telephonically. We've filed a pro

13           hoc admission for --- it's pending before the

14           Court.

15   Judge:    Mr. Meaghen, how are you?

16   Mr. Meaghen:   Your Honor,      --- LLP speaking, first of

17           all, Thank you Your Honor for allowing me to

18           appear before and to digital telephonically

19           today. Should I get to the gist of what our

20           motion is about sir?

1   Judge:      Yes, my question about this, was how much time

2               you needed in July. As I understood the parties'

3               position, it was once you had a time set in July

4               for a trial you'd be able to work backward in

5               terms of setting an appropriate schedule.

6   Mr. Meaghen:    And this is our hope.

7   Judge:      And so, my question was, and so I understood

8               there was a request by the parties for me to set

9               this matter for trial and I just need more advice

10              as to much time we're going to need to get this

11              done.

12  Mr. Meaghen:    --- I was thinking, my belief would be that

13              we would need absolutely no more than a single

14              day and if the parties were to agree that direct

15              examination could go in by way of declaration or

16              some other means, I am confident that we have the

17              trial in less than a single day.

18  Ms. Denniston:      The debtor concurs with that, Your

19              Honor.

20  Judge:      Why don't we set a day now. Which day of the week

21              is that? Thursday? Wednesday. We'll set it for

1          Wednesday July 14th at 9:30. We'll set that for

2          the full day to avoid any difficulty. Does that

3          work for everybody?

4  Mr. Meaghen:    -- that's fine your Honor.

5  Ms. Denniston:    Your Honor would that be proceeding

6          here in Wilmington?

7  Judge:    Yes, that's a week I'm here in Wilmington.

8  Ms. Denniston:    Thank you, Your Honor.

9  Judge:    Unless you all want to come to Phoenix in July.

10  Ms. Denniston:    We might need less than a day.

11  Judge:    Well, if we started 4 or 5 o'clock after the air

12          conditioning goes out, we may see how things

13          settle.

14  Ms. Meaghen:    If I understand, Mr. Mead again, we [?] have

15          between us counsel to follow up and try to work

16          backwards and submit an agreed order. If by any

17          chance, we are not able to agree upon schedule to

18          get us to July 14th, would be there a time where

19          we might be able to a very brief telephone

9

1          conversation with Your Honor, to resolve any

2          issue Your Honor?


3   Judge:     Assuming that occurs, you just need to contact,

4          call the Deputy here, and we'll set something up.


5   Mr. Meaghen:    Thank you very much Your Honor.


6   Ms. Denniston:        Your Honor, there are two housekeeping

7          details as we've reached the end of the agenda.

8          The first one is the stipulation that we

9          previewed for the Court at the last hearing. This

10          involved the agreement of the debtor to mediate,

11          the what has been called the McGreevy Litigation,

12          and we have done a limited stipulation to enlist

13          automatic stay to allow that mediation to

14          continue or to proceed. This arises out of

15          certain litigation pending in Montana and the

16          Federal District Court out there has requested

17          that we have our order listing the automatic stay

18          for the purpose of mediation and so that

19          mediation can proceed. I'd like to hand up an

20          order if that's appropriate.


21   Judge:    I've signed the Order.

1  Ms. Denniston:       Thank you Your Honor. Another, I have

2              two other small housekeeping matters. The debtor

3              has requested or has filed on regular notice, a

4              motion to retain the Paul Myer firm to deal with

5              execution compensation and board of director

6              compensation issues, and had requested a special

7              setting on that. The issue there being that it's

8              the debtor's request that that work begin and the

9              request of Pearl Meyer that an order be entered

10             before work actually starts, given the timing of

11             the case, as we move for the disclosure statement

12             the need for the information we'd like to be able

13             to get a special setting, if the Court could

14             accommodate that.

15  Judge:    Tell me what time you're looking.

16  Ms. Denniston:       We would be more than willing, Your

17             Honor, to come to Phoenix. We don't anticipate

18             that it would take long at this point. We haven't

19             gotten any indication that there'll be any

20             objection to the application so something. I

21             understand the committee has comments to the

22             application. We would work through those as we

23             have in the past. I hope we'll be able to resolve

1          them, but we were looking for something, either

2          at the end of this month or the first part, first

3          week in May, either Tuesday or Wednesday of that

4          week, we can set something. I think Tuesday we

5          kind of filled up yesterday, didn't we? So maybe

6          we'll set something on Wednesday, we can get you

7          a specific date and time, after I consultant with

8          my call him Deputy in Phoenix.

9   Ms. Denniston:        Thank you Your Honor.

10  Judge:    If that's sufficient, then you notice it out.

11  Ms. Denniston:        Yes we will, and thank you Your Honor,

12          we appreciate the Court's accommodation. The last

13          [?] matter is a stipulation that..

14  Judge:    And depending on how contested that is, we could

15          do the whole thing by telephone if that's what

16          parties want to do.

17  Ms. Denniston:        Thank you, Your Honor.

18  Judge:    I'll leave to the parties to decide if it's a

19          matter that they want to be heard in person,

20          whether they travel to Phoenix.

1   Ms. Denniston:        Thank you. The last housekeeping

2               matter is a stipulation, an order regarding the

3               stay of proceedings with respect to Rodger and

4               Carol Ror's motion for withdrawal of reference.

5               This stipulation provides that this matter will

6               be stayed both here and at the district court

7               level till all the parties were settlement. I'd

8               like to hand out this stipulation and the order

9               at this time.

10   Counsel:   Your Honor, no grounds for Roger & Carol Ror. I

11              just here we wish to stipulate this matter

12              probably will be resolved by the parties at

13              Global.

14   Judge:   I signed the order.

15   Ms. Denniston:        Thank you Your Honor.

16   Counsel:   With that, may I be excused your Honor.

17   Judge:   Of course.

18   Ms. Denniston:        Your Honor that leaves number 5 and

19              number 7, these are the motions filed by Magten

20              Asset Management Corporation.

```
 1   Judge:      Now before we get to that, I've got a short

 2               housekeeping matter I want to bring up. I

 3               understand that there was a request made to the

 4               Courtroom deputy that we set a regular second

 5               hearing a month in Phoenix. Am I correct about

 6               that? I had heard that I think your local

 7               counsel. Am I right Ginger? The local counsel had

 8               made such a request. I simply wanted to say that

 9               in the comment that we received was something

10               along the lines that a case like this has more

11               than one hearing, and so we want to have more

12               than one hearing. In this case, and in others, I

13               have been as accommodating as I've been able to

14               be based on my calendar there to have hearings

15               and if in fact the counsel here conclude that

16               that's necessary, and - this sort of matter it

17               should be brought up at one of these hearings or

18               at a hearing rather than requests made to the

19               Courtroom deputy. I see everybody puzzled, but

20               that certainly is... Mr. Chipman made that

21               request.

22   Ms. Denniston:      Your Honor there was a great deal of

23               confusion with regard to the Pearl Myer
```

14

1        application in getting that for hearing. Now

2        that's now been resolved and I suspect that

3        there's been some sideways communication. AT this

4        point I think you can tell that the parties in

5        the courtroom have not anticipated a second

6        omnibus hearing in Phoenix.

7  Judge:   Right, and I just want to understand that if

8        that's ever really necessary to transact the

9        business of the case, then all you have to do is

10       make that case to me, but I think it aught to be

11       made to me, not necessarily through the courtroom

12       deputy because she doesn't really know what my

13       availability is or whether I'd be willing to set

14       another hearing, it's just a matter that can be

15       done on notice pretty simply.

16  Ms. Denniston:        Thank you, Your Honor we'll take care

17       of that.

18   Judge:    Alright, then, let's go back to Item #5.

19   Counsel:  Your Honor.

20   Judge:    And item number 7.

15

1   Counsel:    I apologize, Ed Morton from Young Conaway on

2               behalf of the Touch America debtors. To briefly,

3               if I may, turn the Court's attention back to

4               number four. I merely wanted to place in the

5               record, we were one of the other parties that had

6               formally commented on this application. Price

7               Waterhouse Coopers is also a retained

8               professional at our bank which a case that was

9               filed last summer. We have had discussions with

10              Price Waterhouse Coopers and with the debtors,

11              and our sense of the motion was based on not any

12              representations regarding the Minneapolis office

13              and their involvement, but based upon the limited

14              scope of Price Waterhouse Coopers engagements on

15              the [Sarbain's?] - the issues. With that, we do

16              not have any opposition to the order, and haven't

17              been entered, we merely want to make sure that

18              our concerns were on the record.

19   Judge:     Thank you.

20   Morton:    Thank you.

21   Counsel:   Good afternoon, Your Honor, William Burnett,

22              BlancRone on behalf of Magten Asset Corporation.

1          I have here with me today, I have a co-counsel,

2          Bonnie Steingart and Garg Kaplan from the Fried

3          Frank firm and we'll be addressing items number

4          five and number seven on Your Honor's agenda.

5   Steingart:    Good afternoon, Your Honor. I'm Bonnie

6          Steingart from Fried Frank, and I would like to

7          address both of Magten's issues. If it's

8          acceptable to the Court, I'd like to first

9          address the list stay motion so that Magten could

10         proceed with an adversary against the debtor in

11         connection with its claim that the transfer of

12         the assets from Clarkfoot and Northwest LLC to

13         the debtor constituted a fraudulent conveyance

14         under Montana Law.

15  Counsel:  Your Honor, I'd like to provide just a moment to

16         at least make --- (pause).. I'm asking counsel

17         were there - evidentiary show in this why part of

18         this will recriminate was other - parties.

19  Steingart:    Well, I think that the Court does have a

20         number of documents that have been attached to

21         the pleadings and that in light of that, and in

22         light of the other factual material that's

17

1          already before the court, I believe that we can

2          go directly to argument.


3  Counsel:  -- Your Honor is that case law doesn't seem

4          controlling here, and we can - the court's

5          attention to the cases of Son and Industries [?]

6          at 907F2nd 1280 as well as the cases of Pioneer

7          Commercial Funding Corporation with his 114

8          bankruptcy -45 simply require that a movement

9          seeking relief in a stay for a cause has the -

10         showing that and they must make a prima facae

11         case for moving forward, and I think that well

12         require some - level of evidentiary presentation.


13  Judge:  Well, why I don't decide that after I hear the

14         presentation of counsel, and if I agree, then we

15         may not get it resolved today.


16  Counsel:  Thank you, Your Honor.


17  Ms. Steingart:     As official matter, Your Honor, the

18         debtors did put in an objection to the motion and

19         did not indicate that they thought there was any

20         lack of batch or foundation for our request that

21         the State, they listed for cause.

1    Judge:    That doesn't relieve you of your burden.

2    Ms. Steingart:    Yes, Your Honor.

3    Judge:    Your burden is what it is..

4    Ms. Steingart:    It is.. Your Honor.

5    Judge:    And I'd like to know how you think you meet your
6              burden and then we'll decide whether or not if an
7              initial instant addition is necessary.

8    Ms. Steingart:    Thank you Your Honor.

9    Judge:    Okay?

10   Ms. Steingart:    Well, I'd like to say that as an
11             initial matter, we believe that to the extent
12             that we are seeking to have an adversary
13             proceeding against the debtor in this court that
14             to a large extent ,there really is not an
15             necessary for a list stay motion. There was
16             authority for the composition that to the extent
17             that this is a matter for this court and it
18             involves assets that are purportedly part of the
19             debtor's estate and we'd made a claim and the

19

1              debtor has included these assets as part of the

2              estate that it's distributing in its plan, that

3              an adversary proceeding against the debtor here,

4              where it's convenient, where these issues will be

5              resolved at some point in this case is entirely

6              appropriate and not subject to the stay. Indeed,

7              in the response of papers filed by the debtor

8              here, the response was, well, you know, this is a

9              claim issue, we should be looking at this issue,

10             later in this case, at the time of distribution

11             because what you're saying is that the assets get

12             distributed to you and not to the others. Well,

13             you know, that on its face, is...

14    Judge:    Why we don't back up a little bit ..

15    Ms. Steingart:    Sure.

16    Judge:    .. and make sure we're all on the same page.

17    Ms. Steingart:    Uhm hum.

18    Judge:    And explain to me the relationship of your client

19             to Clark fort and to the debtor, and explain to

20             me, I read the papers, I just want to hear this

21             again. What it is you're seeking to accomplish

1          here, on behalf of your client. I understand you

2          want to file a fraudulent conveyance. What would

3          be the result of a fraudulent conveyance lawsuit

4          for it to be successful?

5  Ms. Steingart:    Well, our view is that one of the

6          results the fraudulent conveyance lawsuit if

7          we were successful would be that these assets

8          that were transferred from Clarkfort to the

9          debtor.

10  Judge:   This is an unusual case in the case that you're

11          not talking about a fraudulent conveyance where

12          the debtor has fraudulently conveyed to a third

13          party and you're seeking to bring something back

14          into the state. What you want to do here is you

15          believe that the fraudulent conveyance went to

16          the debtor.

17  Ms. Steingart:    Right.

18  Judge:   And that it ought to come back out of the estate,

19          for the benefit of ...

20  Ms. Steingart:    A creditor.

1   Judge:     For the — of the creditors, although the debtor's

2                 argument is, is that you're no longer a credit at

3                 that level, you're a creditor at the debtor

4                 level, so your claim to the extent that you have

5                 one is against the debtor because under the

6                 indenture, that's where the claim went and

7                 Clarkfort was relieved of the obligation, so I'm

8                 just trying to get the lay of the land.

9   Ms. Steingart:     Sure.

10  Judge:     If I just had the lay of the land here, you think

11                you're still the credit at the Clarkfork level,

12                in effect.

13  Ms. Steingart:     Right.

14  Judge:     And that you now look at Clarkfork and say, it no

15                longer has these assets, that out of which we

16                want to collect our debt. That those assets now

17                are in the debtor so ... (pause)... the

18                fraudulent conveyance was made by Clarkfort to

19                the debtor. We want to get those assets back so

20                that they could be used to pay our claim.

1  Ms. Steingart:      Right, well, yeah, with two things. One

2                      is indeed we still think that we are a creditor

3                      of Clarkfork and we believe that we are a

4                      creditor of Clarkfork because it remains jointly

5                      and severally liable on our guarantees, that

6                      distributions will be made from x account to the

7                      holders of these – or to the debentures. And

8                      Clarkfork is still a guarantee, and so jointly

9                      and severally liable on making payments from

10                     account, and it's our view that that account is

11                     emptying and has nothing in it to distribute

12                     because of the fraudulent conveyance. But Your

13                     Honor there is a second ground here.

14  Judge:     So it was the economic impact of what you're

15                     talking about here is you want it to be a

16                     creditor with a claim against a pool as to which

17                     other creditors don't have a claim thereby

18                     increasing your return against that pool rather

19                     than if you're treated as a creditor of

20                     Northwestern where these assets then up and up

21                     and your claim gets diluted. Is that what

22                     happened. Am I right about that or wrong?

1  Ms. Steingart:        So the extent that a successful result

2              of our litigation would be that we would be a

3              member of the classes that receive distribution

4              from this debtor, we would receive less than 100

5              cents on the dollar. To the extent that, so as

6              the debtor puts in its papers, well, look if they

7              win, they're just going to be part of Class 7,

8              Class 9, whatever and get a distribution, so we

9              should, you know, do this later, so to the extent

10             that we were named creditors and our position was

11             improved vis a vie the debtor, yes, that's true.

12             To the extent that these assets will become

13             assets of Clarkfork, then what we would get 100

14             cents on the dollar would really depend on what

15             the other competing claimants were, who the other

16             competing complaints were, but our view is that

17             we would probably get a full recovery. Our

18             argument here though is not that, gee, somehow we

19             should get a 100 cents on (pause) dollar rather

20             than 75. Our claim here is that we are utterly

21             out of the money because of the way in which

22             these conveyances occurred and it's that

23             conveyance that was what we consider to be the

24             fraud.

1  Judge:    But how are you out of the money if in fact

2            you're a creditor of Northwestern? --- and like

3            all creditors who are similarly situated are out

4            of the money.

5  Ms. Steingart:    Yes, they are. We're out of the money

6            because when these assets were transferred to

7            Northwestern, Northwestern's creditors stood on

8            line before us, when tehse assets were

9            transferred to Northwest, these assets

10           unfortunately did not succeed in making Northwest

11           an entity that could pay the claims, that could

12           pay the creditors that had before the transfer

13           and certainly not the creditors that it acquired

14           as part of the transfer, and that's why in some

15           way the argument that somehow we are not a

16           creditor of Clarkfork is circular and proves too

17           much because what the debtor is saying is all you

18           have to do when you do a fraudulent conveyance

19           and we, you know and we should with a mind that

20           this was a conveyance between entities that were

21           affiliated, that the debtor controlled the entity

22           from which it received the conveyance, and all

23           the debtor need do, if it wants to - is the

1       bringing of any fraudulent conveyance claim is

2       convey the creditor along with the asset and

3       poof, it's gone, and that seems to me you're on

4       it to prove too much. Here, because of the kind

5       of conveyance we have, that once we bring the

6       claim, if we are, if we can show that it was a

7       fraudulent conveyance and the transaction is

8       unwound, we are also on that ground as well a

9       creditor of Clarkfork and if the debtor indeed

10      engaged in a fraudulent conveyance here, it

11      should not be able to hide behind the fact that

12      it also conveyed the liability. When it conveyed

13      a liability to a company that no ability to pay

14      it, from a company that had every ability to pay

15      it, and that's why we think we should be entitled

16      to bring that claim, and indeed, bringing it in

17      the context of this proceeding is certainly

18      convenient for the debtor. There are other

19      claimants through our claiming around this claim

20      so that it will eventually have to be decided,

21      and if we list all our complaints and then in the

22      court get this matter before it and decide it so

23      that if and when a plan is confirmed, the issues

24      with respect to these assets are resolved. It's

1          in everybody's interest, so that one, we don't

2          think that there is a real standing argument, but

3          even there is, Your Honor, let's file the

4          adversary and let them make the motion to

5          dismiss. You know, it's not a frivolous claim on

6          any stretch of the imagination and as a technical

7          matter, the trustee has indicated that it would

8          join the adversary as a plaintiff so that it's

9          not only Magten but the trustee under the

10         indenture, who will be a plaintiff in that

11         lawsuit. And the last thing that I would just

12         like to bring to the Court's attention. There's

13         some argument in the papers filed by the debtor

14         that constructive trusts are somehow vulnerable

15         to the strong arm powers of the debtor or the

16         trustee. There was a case decided by Judge

17         Walrath in February 2004 which differentiated in

18         terms of the reach of this strong-arm property

19         and real estate and we believe that the divisions

20         between personal property and real estate and we

21         believe that to the extent that a number of the

22         assets are subject, may be personal property

23         other than real estate that the avoidance claims

24         do not pre-empt the constructive trusts and that

27

1          was Judge Walrath's holding, the name of that

2          case is Inri DBI Inc. and I only have the Westlaw

3          version which was 2004 Westlaw 415293 if I could

4          provide it to the Court I'd be happy to do so.

5  Judge:   Tell me, the cite again.

6  Ms. Steingart:    Okay, it's 2004 WL 415293.

7  Kortanek:    Good afternoon Your Honor. My name is Steve

8          Kortanek, and I'm with Klechic Harrison. We are

9          co-counsel for two creditor constituencies, one

10          is the McGreevey Class Action Claimants and

11          appearing with me on the telephone today is Allan

12          McGarvy who is Class Counsel for that

13          constituency. Also we represent Commanchy Park

14          (?0 who is a member of the committee. We filed

15          joinders to the Magten list stay motion and so

16          those - speak for themselves. I don't want to put

17          Mr. McGarvey on the spot but in connection with

18          McGreevey litigation and which seeks the

19          fraudulent transfer relief effectively in

20          Montana, he wishes to address the Court for this

21          motion or the related Magten motion. We'd now

28

1          believe for him to do so, we did know the ---.

2          Thank you Your Honor.

3  McGarvey:      This is Allan McGarvey.

4  Judge:    Alright.

5  McGarvey:      Your Honor, we represent --- Class

6          settlement shareholders of the former Montana

7          Power Company. Our claim against the Montana

8          Power Company was it breached its duty in selling

9          all or substantially all of its assets with the

10          result that the shareholders lost 3 billion

11          dollars. During the - of our action, Montana

12          Power Company was merged into Northwestern Energy

13          Oil - which entity was purchased as a fully owned

14          subsidiary of Northwestern corporation is now

15          known as Clarkfork in Black--- The Montana Court

16          held that Northwestern Energy is the successor to

17          the Montana Power liabilities, and issued an

18          order enjoining Northwest Energy not to transfer

19          the Montana utility assets. The newer (?) company

20          moved to add the parent corporation Northwestern

21          as an additional party, but the Court sustained

22          our objection that the assets should remain with

1          the subsidiary, in North --- represented to the

2          McGreevy Class Counsel into the Montana Court

3          that the Montana Utility assets would be held by

4          North, so that any extradition of judgment in our

5          action against - would not be served in North.

6          Further stipulated Northwest further stipulated

7          it be subject to the jurisdiction of the Montana,

8          heretofore any judgment against the Montana Power

9          Company in its successive Northwestern Energy and

10         applying that representation the Court admitted

11         the upstraining (?) transaction. We have two

12         claims towards the claim to have Northwestern on

13         their stipulation to be --- or any judgment

14         against the subsidiary, but second we have

15         submitted a constructive cause (?) claim and that

16         claim includes several bases including that the -

17         -- transaction was a fraudulent transfer which

18         left Northwestern Energy in - and second, the

19         representation to the McGreevey tie-up into the

20         Montana Court that the assets would be as

21         available for imposition created a constructive -

22         for that interest. We joined in the motion for

23         list (?) today in order to address whether the -

1               screens are properly part of the debtor estate,

2               that's the fundamental - of reorganization.

3  Judge:     Are we talking about the same assets?

4  McGarvey:     The same assets which are the Montana

5               utility, the purpose of the proposed adversarial

6               action which we wish to participate in is to

7               establish what is the property of the state and

8               if objection to our joinder, Northwestern argues

9               that a fraudulent transfer claim must be

10              prosecuted by the debtor, but, and of course that

11              would be true in a claim to recover assets

12              fraudulently transferred by the debtor, but it is

13              clearly wrong with respect to a claim that assets

14              were fraudulent transferred to the debtor. Every

15              credit - that has addressed this issue and there

16              are at least seven such cases, Your Honor, has

17              held that if a debtor holds property which is

18              subject to constructive trust, the equitable

19              interest of such trust is excluded from the

20              estate. Northwestern next argued that our

21              fraudulent transfer claim is really a general

22              unsecured credit --- because the only matter to

23              be addressed is the classification and treatment

1    under the claim's sponsor. The – argues that the

2    constructive trust are imposition of the

3    constructive trust is fundamentally at odds with

4    the bankruptcy policy of – redistribution (?) and

5    cites the  Inray Nabeth case (?) decision of the

6    Delaware District Court in Inray called --- and I

7    think the Inray Paul Paradine Inc. (?) is very

8    instructive, Your Honor because it does hold that

9    a constructive trust does exclude the property

10   from the estate, the Delaware Court further held

11   that the excuse that the Omages (?) Court held

12   that a constructive trust does not --- that

13   previously exists in a judicial proceeding. It

14   was an error and that the policy of graduable

15   distribution does not prompt the equitable trust

16   law. Then that court went on to hold that not

17   withstanding constructive trust is the assets out

18   of the estate, the assts could be got back in

19   under the --- mark – in the case of a bonified

20   purchaser of real property, but that is not the

21   issue here because the vast majority of these

22   equally traceable assets are not real property,

23   and so we then turn to what happens with the

24   strong arm powers in the case of non real

32

| | | |
|---|---|---|
| 1 | | property and that issue was resolved by Judge |
| 2 | | Walrath in his decision that cancels the --- the |
| 3 | | last point I'd like to make has to suggest that |
| 4 | | the cause and that's the suggestion that we don't |
| 5 | | have need to bring adversary proceedings, and I |
| 6 | | would like to site the Court to the holding of |
| 7 | | the Fifth Circuit Court of Appeals in the case of |
| 8 | | Enray Abar Oil vs. Lionheart (?). The cite is 12 |
| 9 | | - 3rd 426, so that's - opinion in 1994, to which |
| 10 | | the Court - that if such a claim, the circuit |
| 11 | | trust claim was to be got it was and according to |
| 12 | | and incumbent on the debtor to file an adversary |
| 13 | | procedure use of bankruptcy court. That's what |
| 14 | | we're required to do and that's what we set to do |
| 15 | | by this motion to ---. |
| 16 | Judge: | Well, you don't seek to do that. You don't seem |
| 17 | | to have the debtor file the case. Right, I mean |
| 18 | | you seek to file the case yourself. |
| 19 | McGarvey: | That's right, we seek a list stay so that |
| 20 | | the adversary proceedings can be brought this |
| 21 | | week --- we - to intervene and enjoin with the |
| 22 | | case. |

1   Judge:    With the result being that with the attendant

2             result would be the return of the Montana Power

3             Assets, is that what you're looking for?


4   McGarvey:    Yes, it's so the assets, if we prevail in

5             our contention that those assets were

6             fraudulently transferred or otherwise or – they

7             are not property of the estate.


8   Judge:    Now, If it were to turn out the other way, that

9             is to say that the assets stay at the

10            Northwestern Corporation level, at the debtor

11            level, what then happens to your litigation?


12  McGarvey:    Well, assuming we lost in our adversarial

13            actions, Inde would be left with a claim against

14            Northwestern based upon Northwestern's

15            stipulation to be bound for any liability in our

16            favor against the subsidiary. So our claim would

17            be enforcement of that stipulation.


18  Judge:    Well, given the litigation that's gone on and the

19            protection that you say you've been given by the

20            Montana Court in terms of the, as a condition to

21            upstraining the assets, why haven't you brought

1              this case? Why aren't you the prime plaintiff

2              rather the Magten?


3    McGarvey:    Well, Your Honor, I particularly respond

4              that they beat us to the punch. Pulling - brings

5              us - and it could not be a greater - in a way.


6    Judge:    And your action may be somewhat different from

7              their action, there may be additional issues,

8              because you have these prior rulings in the

9              Montana case upon which you say you can rely that

10             give you rights in terms of a constructive trust

11             against this property that Magten may not have.

12             Magten's argument may be simply, look, we're a

13             creditor who is damaged because this transfer

14             took place without adequate consideration.


15   McGarvey:    That's it, Your Honor. We hear the argument

16             that the transfer was fraudulent in that it

17             rendered the subsidiary insolvent and was without

18             consideration, but we have additional argument

19             imposed on the -

1  Judge:      Alright, thank you. Anybody else on the pro side

2              want to be heard before we hear from the con

3              side? What side are you on Mr. Kornberg?


4  Mr. Kornberg:   I'm a little puzzled. But I think I'm kind

5              of in the middle. Alan Kornberg for the official

6              creditor's committee. Your honor, the, first of

7              all we filed a limited response that the credit

8              committee did, and that limited response was in

9              response to the motion that was filed by Magten

10             and I think we agreed completely with Your

11             Honor's observation which is that to the extent

12             that there may be other creditors of Clarkfork

13             and Blackfoot, they have different kinds of

14             claims and I think they have to be looked at

15             individually and I can say that the creditor's

16             committee has just begun the process of

17             considering claims that the McGreevey Class may

18             have and their effect on this estate, but from

19             what I've what I've heard to date, I think they

20             are quite different from Magten. The committee's

21             position with respect to Magten is that Magten's

22             - command's allegations really are at the heard

23             of the relief that seeks in this Court today, not


36

1          only with respect frankly to this motion for

2          relief from the stay, but also the motion that

3          you'll hear next which relates to issues

4          involving the validity of the claims and liens of

5          Credit Suisse First Boston. The Committee's view

6          is that we should get to the heart of that issue.

7          The committee has investigated substantially the

8          claims that Magten has made and we disagree that

9          Magten is a creditor of Clarkfork and Blackfoot

10         We read the indentures that govern those

11         instruments to provide that upon the transaction

12         that took place that resulted in Northwestern

13         assuming the liabilities of what is now known as

14         Clarkfork and Blackfoot and in return getting the

15         assets of that entity, that by the terms of the

16         indentures with no further action required that

17         the Northwestern, the debtor became the obligor

18         and Clarkfork and Blackfoot was released from

19         liability. I think that word in the indenture is

20         the structural liability. So what the committee

21         would like to see.. helpful argument that...

22

1  M:           Continuing guarantee.

2  M2:          Your honor, the continuing guarantee I think even

3               Magten's Council would admit that the guarantee

4               claim, if one exists, and that's debatable, but

5               let's assume, for purposes of today, that the

6               guarantee remained extant, because the language I

7               think is a little less clear, that guarantee

8               claim is for zero, because it guaranteed only

9               that the debtor would cause certain funds that

10              were a particular account to be paid over, as

11              council for both the debtor and Magten stated,

12              there was a zero in that account.  The way the

13              committee looks at this issue is as follows, even

14              if there was a guarantee claim that was extant

15              against Clarkfork and Blackfoot, the claim amount

16              is at zero.  A fraudulent conveyance claim would

17              only be in aid of satisfying an unsatisfied

18              creditor, if that claim, if the creditor had to

19              claim a zero, you don't need a fraudulence

20              conveyance claim, a relieve to satisfy the claim,

21              'cause it's obviously, it doesn't warrant

22              satisfaction.  We believe, the creditors can be

23              as a very simple objective, we want to see this

1            company emerge from Chapter 11 as soon as

2            possible.  The general insecure creditors of this

3            estate are the owners of this company, which is

4            grossly insolvent and we want to see a

5            reorganization promptly, and we want to address

6            the issues that need to be solved.  We think that

7            the relieve from the stay, if say relief is

8            granted, if say relief is needed should be

9            granted, we would like address on expedited

10           bases, a threshold question, "Is Magten a

11           creditor of Clarkfolk and Blackfoot or not?"  And

12           if it's not, and they don't have standing as a

13           creditor of that entity, they don't have

14           fraudulent conveyance claim.


15  M:       Well if ah, would it make difference if the

16           indentured trustee was a creditor, excuse me, was

17           a plaintiff, or does the fact the indentured

18           trustee would be treated the same way?


19  M2:      Ah, Your Honor, I believe they would be treated

20           exactly the same way...


21  M:       Then what about McGreevey...?

1  M2:       Now McGreevey I think is a whole different...

2  M:        I mean the McGreevey plaintiffs said they want to
3            join in, and they said they want to seek to
4            intervene in this, I asked them the question
5            point blank, "Why aren't you the prime
6            plaintiff?"  And the suggestion from council was,
7            "Well, we thought we were going to be, but it
8            turns out somebody else was punished."  Now that
9            threshold issue you're talking about with regard
10           to Magten, would not exist with regard to
11           McGreevey, because you don't have the terms of
12           the indenture that are actually governing the
13           status of that particular creditor.  There may be
14           other issues that are wholly separate, but at
15           least that issue would not be a threshold.

16 M2:       You're exactly right Your Honor, I think the
17           joiners is very poorly taken, because I think
18           it's a completely different case.  I think when
19           you get to McGreevey, again I think when we talk
20           about these fraudulent conveyance claims, in a
21           sense we're putting the cart before the horse,
22           and the reason I say that is, as Your Honor
23           pointed out at the beginning, the fraudulent

40