1    conveyance here is not an asset of the estate, it

2    is a claim that exists to help creditors of a

3    non-bankrupt entity.  And the allegation should

4    be I think that those creditors have claims

5    against Clarkfolk and Blackfoot.  Clarkfolk and

6    Blackfoot cannot satisfy those claims, there was

7    fraudulent conveyance, and property needs to come

8    back, or a claim needs to be asserted against the

9    debtor's estate, in order to satisfy those

10    creditors.  I think the Magten issue as I've

11    stated is a question of whether or not under the

12    indentures they retain a claim against Clarkfolk

13    and Blackfoot, and if they do, the amount of that

14    claim I think would be quite relevant.  I think

15    that's the same issue with respect to the

16    indentured trustee under those documents.  I

17    think the McGreevey class is completely

18    different, McGreevey as you've heard was in

19    litigation, there are stipulations, and whatnot,

20    and court orders, I haven't reviewed them.  But I

21    think McGreevey you have a different issue, and

22    that is, do they actually have an enforceable

23    valid claim against Clarkfork and Blackfoot, and

24    how much is it?  And I think that issue has to be

41

1          addressed in some way before you talk about

2          fraudulent conveyance claims to help them satisfy

3          that claim.  I know those claims are hotly

4          contested, I'm certainly not the expert on them,

5          but I think Your Honor is absolutely correct, I

6          raises a completely different series of questions

7          to be asked.  But I think committee's view as to

8          the narrow issue, as to Magten, because I'm

9          really not prepared today to tell you the

10         committee's position with respect to the

11         McGreevey Class, as to Magten.  We'd like to see

12         the standing issue resolved, we do agree with

13         Magten that to the extend this fraudulent

14         conveyance issue is going to be raised on any

15         number, with respect to any number of issues.

16  Jud:   Confirmation issue, for example?

17  M2:    Exactly, a classification issue, the issue that

18         you're going to hear about with respect to CSF

19         Feelings.  Let's get that issue behind us, let's

20         deal with the standing issue.  We think that

21         again the overarching need here for creditors is

22         to get this case to confirmation, and to resolve

23         the issues stand in it's way.

42

1    Ht:       Charlestown?  For the record, Your Honor, I do

2              immediately point I made earlier on, that to the

3              extent that Magten, and also to the extent that

4              McGreevey were seeking relief form the state they

5              bared the burden of proof, and the burden of

6              showing extraordinary, especially as to Magten,

7              as I noted in the citation of Planure Commercial

8              Funding, the an unliquidated unsecured creditor

9              certainly has an extraordinary burden, or show an

10             extraordinary circumstances justifying lifting

11             the stay, so I just wanted to make sure that I

12             renewed that point for the time.


13   M2:       Well Magten is not unliquidated.


14   Ht:       Magten is in escarole, it's not

15             unliqidated...


16   M2:       I mean Magten has a liquidated claim, the

17             question is who's it against?


18   Ht:       That's correct, and we certainly take issue...


19   M2:       And the question with McGreevey is, they may have

20             an unliquidated claim, but they appear to have a

21             claim that's more directly against, at least,

43

1           they don't have the indenture program, as far as

2           making the claim against Clarkfolk.

3  Ht:     I can see they do not have the indenture problem,

4           we certainly take issue whether they have a claim

5           at all, and we certainly also have take the

6           position that to the extent that they have a

7           claim that if unliquidated what becomes

8           liquidated at Clarkfork, and Clarkfork cannot

9           satisfy it, that at least our reading of one of

10          the orders which they tend to relay on, and won't

11          say on was that Northwestern should ultimately be

12          responsible for any judgment in which might be

13          entered, to the extent that Northwestern Energy,

14          which was the former Clarkfolk and Blackfoot,

15          didn't have sufficient assets to satisfy the

16          judgment.  So our ultimate position on a

17          substantive basis, on a substantive standing

18          issue, with respect to McGreevey, is and will be

19          that even if you are a creditor of Clarkfolk,

20          that to extent Clarkfork can't satisfy any

21          judgment which is rendered then we have agreed

22          that you have a claim directly against

23          Northwestern Corporation, so from that standpoint

44

1           it's almost as if you have a deficiency guarantee

2           if you will back against Northwestern that says

3           that something that then does away with

4           ultimately the trust argument.

5    M2:    Well, I mean except the problem is if they had a

6           constructive trust, they would, they would have a

7           claim to a hundred percent of those assets,

8           whereas you could classify them if a way that

9           they would end up getting treatment under a plan

10          that would be materially less, and that's all

11          they would get.

12   Ht:    That is accurate Your Honor and that's why...

13   M2:    So there is a big difference between, in effect

14          it's almost whether they are secured or they're

15          unsecured creditor.

16   Ht:    And we don't take issue with that Your Honor, and

17          we think at this point, that frankly we thought

18          our papers, we think that to the extent that the,

19          there's not been cause shown, that there's not a

20          basis by which any of these, any of the Magten is

21          direct movement, or the McGreevey plaintiffs, or

45

1            the Comangy Park has basically made the burden

2            showing that cause exists for carrying or

3            proceeding with an adversary case.  I will note

4            that all three of these parties have indeed filed

5            (inaud) claims in our case, and have asserted the

6            claims which they are attempting to assert right

7            now.    That's why raised the point that we believe

8            ultimately that the appropriate resolution of

9            this is the claims resolution process, because

10           whether we abject to it, whether they move,

11           estimate the claim for voting purpose, however

12           they want to bring on the issue, that the

13           stranding issue will indeed be addressed upfront,

14           and also, ultimately the question of whether or

15           not anyone here is entitled to some level of a

16           constructive trust, either in general, or whether

17           Section 544 absolutely does away with, ultimately

18           the ability to establish a constructive trust.

19           These are issues which frankly we have heard

20           about in this case, from the day that we started

21           this case.  These are issues that we have been

22           prepared ultimately to defend and address, but in

23           this particular case, none of these parties that

24           are arguing that they should be entitled to seek

46

1        relief from the state, have been, effectively

2        been in a position to say, as we would say, put

3        the money where their mouth is, and actually come

4        on and bring on the matter.  I think part of it

5        goes to, if I could venture to guess, part of it

6        goes to the question of what, who has ultimately

7        the burden of proof, and I...

8    Jud:  Although now they're saying, "We want to do

9        that."  And you're saying, "No, you should not be

10        able to."

11   Ht:   Ah, they're saying it from the standpoint that,

12        "Yeah, we might like to, put joint end the point

13        that Mr. Kornberg makes is if they want to go

14        ahead, and establish this, and okay, we're going

15        to follow this adversary complaint by date

16        certain so we can join the issue, that may well

17        be a different coarse of action, because then we

18        say, "Fine, you guys go ahead, you have the

19        burden proof, let's t-up the particular issues.

20        Heretofore, we have not received any indication

21        that they are, as one would say, "Willing to

22        actually move forward in the process."

47

1  Jud:    Are you talking about the McGreevey Class, or

2          about Magten?


3  Ht:     I'm talking about all of them Your Honor. (pause)

4          Ah, for the record Your Honor, I do renew the

5          point I made earlier on that to the extent that

6          Magten and also to the extent that McGreevey

7          we're seeking relief from the stay, they bare the

8          burden of proof, and the burden of showing the

9          extraordinary, especially as to Magten, as I

10         noted in the citation of Planure Commercial

11         Funding, that an unliquidated unsecured creditor,

12         certainly has an extraordinary burden, or showing

13         extraordinary circumstances justifying lifting

14         the stay, so I just wanted to make sure that I

15         renewed that point for the court at this time.


16  Jud:   Well Magten's not unliquidated?


17  Ht:    Magnet's in escarole, it's not unliquidated.


18  Jud:   I mean Magten has a liquidated claim, the

19         question is "Who's it against?"


20  Ht:    That's correct, and we certainly take issue...


48

1  Jud:    And the question with McGreevey is they have an

2          unliquidated claim, but they appear to have a

3          claim that's more directly against, or at least,

4          they don't have the indenture problem as far as

5          making the claim against Clarkfork.


6  Ht:     I can see, they do not have indenture problem, we

7          certainly take issue whether they have a claim at

8          all.  And we certainly also have to take the

9          position that to extent that they have a claim

10         that is unliquidated, what becomes liquidated

11         that Clarkfork, and Clarkfork cannot satisfy it,

12         that at least our reading of one of the orders

13         which they tend to relay on, and one say on was

14         that Northwestern should ultimately be

15         responsible for any judgment in which might be

16         entered, to the extent that Northwestern Energy,

17         which is former Clarkfork and Blackfoot, didn't

18         have sufficient assets to satisfy the judgment.

19         So our ultimate position, on substantive basis,

20         on a substantive standing issue, with respect to

21         McGreevey, is and will be that even if you are a

22         creditor of Clarkfork, that to the extent

23         Clarkfork can't satisfy any judgment which is

49

1              rendered then we have agreed that you have a

2              claim directly against Northwestern Corporation,

3              so from that standpoint it's almost as if you

4              have a deficiency guarantee, if you, back against

5              Northwestern that says, that's something that

6              then does away with ultimately the constructive

7              trust argument.

8  Jud:        Well, I mean except the problem is if they had a

9              constructed trust, they would, they would have a

10             claim to a hundred percent of those assets,

11             whereas, you could classify them in a way that

12             they would end up getting treatment under a plan

13             that would be materially less, and that's all

14             they would get.

15  Ht:        That is accurate Your Honor, and that's why...

16  Jud:        So there is a big difference between, in effect

17             it's almost whether there secured or they're

18             unsecured creditor.

19  Ht:        And we don't take issue with that Your Honor, and

20             we think that this point that frankly, we filed

21             our papers, we think that to the extent the,

1       there's not been caution, that there's not a

2       basis by which any of these, any of the Magten

3       has the direct movement, or the McGreevey

4       plaintiffs, or the Comangy Park has basically

5       made the burden of showing that cause exists, or

6       pairing, or proceeding with an adversary case.  I

7       will note that all three of these parties have

8       indeed filed proofs of claims in our case, and

9       have asserted the claims which they are tempting

10      to assert right now.  That's why we raised the

11      point, and that we believe ultimately the

12      appropriate resolution of this is the claims

13      resolution process, because whether we abject to

14      it, whether they move estimate the claim for

15      voting purpose, however they want to bring on the

16      issue, that the standing issue will indeed be

17      addressed upfront, and also the ultimately the

18      question of whether or not anyone here is

19      entitled to some level of a constructive trust,

20      either in general, or whether Section 544

21      absolutely does away with, ultimately the ability

22      to establish a constructive trust.  These are

23      issues which frankly we have heard about in this

24      case from the day that we started this case.

1          These are issues that we have prepared ultimately

2          to defend and address, but in this particular

3          case, none of these parties that are arguing that

4          they should be entitled to seek relief from the

5          state, have been effectively been in a position

6          to say, as we would, "Put the money where their

7          mouth is," and actually come on, and bring on the

8          matter.  I think part of it goes to, if I could

9          venture to guess, part of it goes to the question

10         of what, who has ultimately the burden of proof,

11         and I join...

12   Jud:  Although now they're say, "We want to do that."

13         And you're saying, "No, you should not be able

14         to."

15   Ht:   Ah, they're saying it from the standpoint that,

16         "Yeah, we might like to, put joined of the point

17         that Mr. Kornberg makes if they want to go ahead

18         and establish this, and say, "Okay, we're going

19         to follow this adversary complain by date certain

20         so we can join the issue."  That may well be a

21         different course of action, because then we say,

22         "Fine, you guys go ahead, you have the burden of

23         proof, let's t-up the particular issues.

52

```
1              Heretofore we have not received any indication

2              that they are as one would say, willing to

3              actually move forward and...


4    Jud:      Are you talking about the McGreevey Class or

5              about Magten?


6    Ht:       I'm talking about all of them Your Honor? (pause)


7    Jud:      Well Magten has to complaint attached to their

8              motion saying this a complaint we want to file.


9    Ht:       Yes, you're, you're correct Your Honor, but I

10             would venture to...


11   Jud:      And they're saying...


12   Ht:       I had not had the direct communication with the

13             information of which I have is that if you bring

14             up the issue to them that okay fine file your

15             complaint by date certain, and let's join the

16             issue, the response to them has been, "We're not

17             quite ready for that."  I can't speak to...


18   Jud:      But they're here asking me for, you know...


19   Ht:       Understand Your Honor...
```

53

1  Jud:    I mean what they're here asking me for is an

2          order saying, "Allow us to do this." So that we

3          won't run into an argument later on being make

4          that we are violating the automatic stay, by

5          seeking to exercise authority over property of

6          the estate, or commencing litigation that could

7          have been convince, or whatever. And so, frankly

8          I have to take them at their word, I mean if

9          they're here saying, "We want relief from stay,

10         and here's the complaint we're going to file,

11         then, you know, I could, if what you want, if

12         what you're suggesting is that if I enter an

13         order lifting this stay, I should say "Not only

14         is the stay lifted that you're directed to file

15         this complaint within ten days." You know, maybe

16         that's the way to deal with that problem. And,

17         but I don't want to get off... I guess I really

18         don't want to get off the point here, because one

19         of Magten's council's points was look, this issue

20         is lurking around, I mean you've said you'd been

21         prepared to deal with it. One of the arguments

22         being by you, and Mr. Kornberg is, you know the

23         issue is around their but we don't think Magten,

24         or the invention trustee have standing to raise

54

1          it, maybe there's somebody else out there who
2          does, but we don't think so.  So why not let them
3          file the complaint and thrash it out on the
4          motion to dismiss.  Why not dispose of the issue,
5          yes, or no, on whether or not they have that in a
6          litigation context, rather then saying,

7   Judge:    This issue is lurking around, I mean, you've said
8          you've been prepared to deal with. One of the
9          arguments being made by you and by Mr. Kornberg
10         is, now the issue is around there, but we don't
11         think Magten or the indentured trustee have
12         standing to raise it. Maybe there's somebody else
13         out there who does, but we don't think so, so why
14         not let them file the complaint and thrash it out
15         on a motion to dismiss, why not dispose of the
16         issue, yes or no, on whether or not they have
17         that in the litigation context rather than saying
18         because we think we're going to win that, we're
19         going to keep the door closed, and not let it get
20         resolved.

21   M:       I understand that, Your Honor, I think under the
22         circumstances we presented the papers that saying
23         that we didn't think they had established cause

55

1          for proceeding, but if there was indeed a time

2          limit by which if they're going to bring this

3          issue, let's bring it on, and as someone who said

4          recently, then I think that may well be

5          appropriate, because we are ready to deal with

6          this.

7    Judge:    Well, would you agree that this is something that

8          until it's resolved to the satisfaction of

9          various parties, certainly looms as a

10         confirmation issue.

11   M:        It looms but I don't think it's a, we do not

12         agree with their perspective that it is a death

13         knell to the confirmation. And McGreevy may

14         present a different issue because of the size of

15         its claim. I will say at least that at Magten, we

16         don't believe that's ultimately a death knell

17         from the standpoint of...

18   Judge:    I don't know if it's a death knell. But it seems

19         to me whether or not these assets are or are not

20         part of the estate deals with less interest

21         analysis and liquidation analyses and disclosure

22         issues in terms of what, predators butting on the

56

1          plan think.. you know, when I am going to do

2          that, and what assets are available for me versus

3          somebody else, and all of those kinds of

4          questions are teed up by this question of whether

5          or not this chunk of assets belongs or does not

6          belong in the asset. For confirmation purposes it

7          may not kill it, but it would certainly change

8          the way it would come out, it could change it one

9          way or the other.


10    M:     And we think the way at least with Magten, Your

11          Honor, is we hold back distributions, but I

12          understand the Court's issue in that regard and I

13          will say that relative to the disclosure

14          statement we are in the process of probably

15          making amendments that will address the

16          particular issue of relative disclosure

17          statement, although that's on hearing today,

18          that's on for May 17th.


19    Judge:  Let's talk a little more specifically about your

20          cause issue. Specify for me more precisely how it

21          is you think that they either haven't shown cause

22          or that they cannot cause in the absence of

23          evidence.

1  M:        Well, I thin they need to show cause relative to

2            how are they currently being harmed by not being

3            able to obtain relief from the estate, from the

4            adversary case, say thought of proof of claim,

5            until we file an objection to such proof of

6            claim, frankly that claim is being de-allowed. If

7            they have an issue relative to the and that goes

8            all three is what I call the joint movements in

9            the circumstance, and that to the extent they

10           somehow believe they're being harmed in the

11           process they can bring on a motion to terminal

12           allowance of the claim, so I don't believe it's

13           necessarily an adversary procedure that

14           necessarily has to resolve the dispute. There are

15           other mechanisms which they have, I think,

16           partaken in as it relates to filing a proof of

17           claim within the bankruptcy context.

18  Judge:   No, but the real issue here it seems to me,

19           unless I'm missing something is how whatever

20           claim they have gets treated and it may well be

21           that they have a claim, the amount of which can

22           be easily dealt with in the claims allowance

23           process with Magten in the holder of these quits,

1    that may not be so easy in the context of the
2    McGreevy class if they have an unliquidated
3    claim. But they claim to be $3 billion. But it's
4    not so much what their claim is and what it's
5    allowed as but how it's going to be treated. It's
6    almost, it's the same kind of issue, to repeat
7    myself, as whether or not they're a secured or
8    unsecured claim, in the sense that do they have a
9    claim against specific assets or are they a
10   member of an unsecured pool of whatever priority
11   may be appropriate based upon their contractual
12   rights and remedies. That's a big difference.

13   M:      We concur on that concept.

14   Judge:  And so, just like if you're going to avoid a
15           lien, you need to bring in an adversary
16           proceeding, if you're going to get a declaratory
17           judgment, you need to bring in adversary
18           proceeding, if you need a, you want to undo a
19           fraudulent transfer, you need to bring an
20           adversary procedure. I guess I don't see where
21           the claims resolution process gets to the point
22           of making that determination of what the pool of
23           assets is they may have a claim against.

1  M:       Cause at least in each one, their proofs of

2           claims from a, I know Magten and from McGreevy is

3           they made a claim on constructive trust as it

4           relates to specific assets, that actually raise

5           that issue in the claims resolution process, this

6           is why we suggested, that may well be the

7           appropriate remedy. But Your Honor, as I said, we

8           had no problem defending this and addressing this

9           issue if the court does indeed either say that

10          cause has been shown or allow them to proceed or

11          can follow along suggestion Mr. Kornberg was

12          bringing up, it's like, it's bringing on within

13          the – of time and get this thing teed up and put

14          it on a schedule and see if we can get it

15          resolved, cause we certainly, we too the debtor

16          are playing on and we are going to be working

17          towards seeking approval for disclosure statement

18          on the 17th and then asking the court to set

19          confirmation hearing sometime in the July/August

20          timeframe so that we recognize that if we got a

21          schedule in order, let's get the issues resolved

22          when we have to. Thank you. Ms. Steingart. Oh, we

23          have another counsel who wants to be here.

1    M:        Your Honor Mark Joe Akin of Morrison & Foster, on

2              behalf of Credit Suisse First Boston as agent.

3              While I have much more to say as to the Magten's

4              motion in respect to the extension of time and

5              the requested extension of time, I have very

6              limited remarks in connection with this motion.

7              Because Your Honor from Credit Suisse's first

8              perspective, we believe that this is really a

9              non-issue because at the end of the day, we

10             believe that the case law is absolutely clear

11             that if assets are ultimately moved out of the

12             estate as part of a constructive trust, those

13             assets will move subject to whatever liens are on

14             them, so that at the end of the day this is

15             really a question between, as you pointed Your

16             Honor, a question between the general once good

17             creditors of Northwestern and the creditors that

18             claim to be creditors of Clarkfork and Blackfoot,

19             as to whether or not after the claims of the

20             proper lien holders are satisfied, who has first

21             rights to those claims, whether it's all of the

22             general unsecured creditors to those assets,

23             whether it's all of the general unsecured

24             creditors of Northwestern or whether it's the

1      purported creditors of Clarkfork and Blackfoot,

2      but from the perspective of Credit Suisse First

3      Boston and other holders of proper claims against

4      those assets, we really believe that this is a

5      non-issue, so from our perspective that's really

6      all we have to say after this motion, Your Honor.

7 Judge:  And the name, briefly here count.

8 Ms Steingert: -- Your Honor. We agree with you that the

9      issue here is whether these assets are part of

10      the estate and that's what the constructive trust

11      is about, if the constructive trust came through

12      this before the debtor files, these assets are

13      not part of the estate. I think that the McGreevy

14      claim is the same. The committee's comments are

15      somewhat worth hearing. The majority of creditors

16      on the committee are creditors unfortunately

17      whose recovery would be diminished by the

18      imposition of the constructive trust, and I don't

19      think that Mr. Kornberg's position could be

20      different than it is because of that and that

21      really does impair the committee's ability to

22      advocate this position and also to pursue with

23      vigor the liens with respect to Credit Suisse

1  Judge:    Unless you all want to come to Phoenix in July.

2  F:    We might need less than a day.

3  Judge:    Well, if we started four or five o'clock after
4    the air conditioning goes out, you may see how -
5    things settle.

6  M:    This is Mr. Meehan again. We will between us,
7    counsel will follow up and try to work backwards
8    and submit an agreed order. If by any chance we
9    are not able to agree upon a schedule to get us
10    to July 14th, would there be a time where we
11    might be able to have a very brief telephone
12    conversation with Your Honor to resolve any
13    issue, Your Honor.

14  Judge:    Assuming that occurs, you just need to contact
15    Courtroom deputy here and we'll set something up.

16  Meehan:    Thank you very much now.

17  F:    Your Honor, there are two housekeeping details,
18    as we've reached the end of the agenda. The first
19    one is the stipulation that we previewed for the
20    court at the last hearing. This involves the

1                agreement of the debtor to mediate what has been

2                called the McGreevey litigation and we have done

3                a limited stipulation to list that and – states

4                to allow that mediation to continue or to

5                proceed. This arises out of certain litigation

6                pending Montana and the Federal District Court

7                out there has requested that we have our order

8                listing the automatic stay for the purpose of

9                mediation entered first so that mediation can

10               proceed. I'd like to hand up an order if that's

11               appropriate.

12  Judge:    I've signed the order.

13  F:      Thank you Your Honor. Another, I have two other

14               small housekeeping matters. The debtor has

15               requested or has filed on regular notice a motion

16               to retain the Pearl Myer firm to deal with

17               executive compensation and board of direction

18               compensation issues and had requested a special

19               setting on that, the issue there being that it's

20               the debtor's request that that work begin and the

21               request of Pearl Myer that an order be entered

22               before work actually starts given the timing of

23               the case as we move toward the disclosure

1          statement, the need for the information, we'd

2          like to be able to get a special setting if the

3          court could accommodate that.

4   Judge:    Tell what time you're looking.

5   F:       We would be more than willing Your Honor to come

6          to Phoenix. We don't anticipate it would take

7          long at this point, we haven't gotten any

8          indication they'll be any objection to the

9          application so something... I understand the

10          committee has comments to the application. We

11          would work through those as we have in the past.

12          I hope we'd be able to resolve them but we were

13          looking for something either at the end of this

14          month or the first part, first week in May.

15  Judge:    I don't think I can do anything at the end of

16          this month but the first week in May, either

17          Tuesday or Wednesday of that week, we can set

18          something. I think Tuesday, we kind of filled up

19          yesterday, didn't we? Maybe we'll set something

20          on Wednesday, we can get you a specific date and

21          time, after I consult with my courtroom deputy in

22          Phoenix.

66

1  F:        Thank you Your Honor.

2  Judge:     If that's sufficient, then you can notice that

3            out.

4  F:        Yes we will, thank Your Honor we appreciate the

5            Court's accommodation. The last housekeeping

6            matter is a stipulation...

7  Judge:     And depending on how contested that is, we could

8            do the whole thing by telephone if that's what

9            parties want to do.

10  F:        Thank you, Your Honor.

11  Judge:     I'll leave it to the parties to decide if it's

12            matter that they want to be heard in person,

13            whether they travel to Phoenix.

14  F:        Thank you. The last (tape blip)

15  M:        Involving PUHCA and there were issues involving

16            the application of PUHCA to the debtor's

17            exemption from the Public Utility Holding Company

18            Act, and whether those issues affected the bona

19            fides of CSFB's debt. That was the first time

67

1    certainly, we as committee counsel had ever heard
2    that issue raised by any party and interest, and
3    we do have regulatory counsel that is fully up to
4    speed on those issues and will be in a position
5    to report very promptly to the committee whether
6    there is any traction to those points.

7  Judge:    Did you have regulatory counsel beforehand or is
8            that, did you just engage them in order to
9            investigate

10  those...

11  M:    No, Your Honor, we recognize the need for
12        regulatory counsel at the very outset of this
13        case, and Your Honor approved their retention you
14        know, if not at the very beginning of the case,
15        shortly thereafter. In fact, regulatory counsel
16        had been lined up, a pre-petition for those
17        purposes so this is an issue which again,
18        although all the creditors, all the parties and
19        interests of course have long had notice of the
20        deadline to investigate the CSFB claims, a
21        particular creditor or a small group identified
22        this issue for the first time, and we think it

1    would be prudent to take a look at that, but that

2    is what the committee would like to do because we

3    do think it's an issue that is a fiduciary,

4    should be examined in this case. The Magten

5    issues I think again arise not as creditors of

6    this estate, and to the extent to which Magten

7    suggesting that the committee should undertake

8    that effort, I don't think it's a proper request.

9    In fact, it's opposed to the interests of the

10   general creditor body whom we serve.

11   Judge:    What was the order precisely say with regards to

12             the - factor. I'm looking forward here. Not

13             surprisingly, CSFB's counsel as already...

14   M:        I just managed to find it Your Honor.

15   M:        And Your Honor has also quoted I think, so it's

16             been through..

17   Judge:    I just wanted to see the actual order, I don't

18             know whether that was attached to any of these, I

19             don't remember seeing it.

20   M:        Your Honor, I have a copy of the order in my -

1  Judge:      Alright, I have one here. This is the interim
2              order, what I've been handed is the one.

3  M:          I believe it's Paragraph 7, Your Honor, and I
4              believe it's also the same paragraph as was cited
5              in the final order as well.

6  Judge:      Right, Paragraph 7 of the interim order though is
7              the same as Paragraph, as the operative paragraph
8              of the final order. Alright, so it does provide
9              for an extension of the date by further order
10             following notice in a hearing. I mean, that was
11             the language is, either by consent or by further
12             order following those in a hearing. Now, so tell
13             me again Mr. Kornberg what, when your motion was
14             in fact or your joinder or whatever, was that
15             filed before the expiration of 120 days with
16             regard to the PUHCA issues?

17 Kornberg:     No, it wasn't, Your Honor, cause we really
18             learned of them after the deadline and as I said,
19             it was, they were raised, just a few days before
20             we filed our joinder.

70

1   Judge:      You think that has relevance to what's happening
2               here? There's nothing in this, the language of
3               this order that says that any extension of the
4               date needs to be, motion needs to be filed prior
5               to the expiration at any time, but that's the
6               normal rule with regard to most dates under the
7               bankruptcy code, although this an operation under
8               the order.

9   Kornberg:      Your Honor, I don't think it, I'm sure, CSFB
10              will be unhappy with this. I really don't think
11              that that should govern what happens here, if
12              there is an issue that goes to a substantive
13              point, even though it was raised in my view
14              belatedly by various parties and interests, and
15              not that I believe the issue has any great merit,
16              I think that as fiduciaries would be remiss even
17              at that late date, not coming into the court and
18              asking for a brief period of time. I see
19              absolutely no harm whatsoever to the lender that
20              that request came a bit late, and it certainly
21              came almost immediately after the issue was
22              raised.

1  Judge:      Now, can you tell me where the issue came from?

2              You say it was raised by "certain parties and

3              interests".

4  Kornberg:      Yes, Your Honor, it was raised by parties

5              representing certain subordinated note holders,

6              it's not raised by Magten, but as Your Honor

7              knows the capital structure includes other

8              instruments called Toppers, they're structurally

9              very similar to the quits that we were talking

10             about today. They however were not issued by

11             Montana Power, so they don't have the fraudulent

12             conveyance issues that we were talking about

13             earlier, these subordinated note holders

14             suggested, and they have been participants of the

15             case.

16 Judge:      Harbard?

17 Kornberg:      Okay, I wasn't going to identify him, but he

18             is self-identified, so, yes, Harbard did identify

19             this and we immediately reached that the CSFB

20             asked for a request and I'm just advised with

21             debtor (?) counsel, also Your Honor, that you

22             should consider that we have a local rule that

72

1    says there's an automatic extension when a motion

2    is made so in response to your direct question to

3    me, Magten's filing of the motion and our joinder

4    probably bridges the gap on the expiration of

5    that period of time. But in any event, this is an

6    issue that was raised by a party and interest, we

7    do think it should be looked at and we'll do so

8    promptly.

9    M:    Your Honor, Mark Achin of Marson & Forster,

10    before I respond to the Magten motion, I think

11    it's important to respond to one thing, with

12    respect to the Harbard issue. The order does

13    require either consent of CSFB and the debtor, or

14    further order after notice in a hearing, and I

15    believe that notice in a hearing connotes a

16    motion, and I think a local rule that was just

17    cited by Delaware is correct either consent of

18    CSFB and the debtor, or further order after

19    notice in a hearing and I believe that notice in

20    a hearing connotes a motion, and I think the

21    local rule that was just cited by Delaware

22    counsel is correct. There's a motion pending that

23    may stay the period of time. But remember, there

1                  is no motion pending as to the Harbard issue.

2                  There is only a motion pending as to the Magten

3                  issue. The issue on Harbard was only raised in a

4                  joinder that was filed after the expiration of

5                  the time period. There is currently no motion

6                  pending.


7    Judge:        I understand, the question is whether or not he

8                  gets to tag along on the Magten motion even

9                  though it was based upon a different theory.

10                 Okay, before we get to the merits of it, I do,

11                 we're jumping around here and we're not taking

12                 evidence, at least not yet, but I want, as

13                 Harbard's counsel advised, which is don't take

14                 this as harsh, I just want to know what the

15                 answer is. You've  been very involved in this

16                 case from the beginning, and you've raised a lot

17                 of issues and you've been a lone wolf saying

18                 everybody else agrees but I disagree, why is it

19                 that this could be a critical issue if it turns

20                 out to be well founded, with regard to the

21                 validity of the CSFB loan, liens under the PUHCA

22                 issue, was not raised with the committee until

1          after the time that everybody knew the

2          investigation period ran.

3    M:     The main reason Your Honor is that our issue

4          deals with really all of the senior debt that was

5          issued. WE have a subordination agreement like

6          Magten, we have a subordination agreement in our

7          indenture, separate indenture, but it's our view

8          that all of the senior debt that was issued in

9          reliance on an exemption was improperly issued,

10         so that our subordination as to those claims is

11         ineffective.

12   Judge:  But we have an order under this, under the dip

13         order, that basically says everybody is bound by

14         the fact that these are valid, terrific,

15         wonderful, clean washed claims, unless the

16         committee brings an action within a 120 days from

17         the date of the interim order, and if in fact and

18         that would include you, presumably.

19   M:     Yes.

20   Judge:  Because you have notice of that, so that seemed

21         to me well, that would be critical. I guess I

75

1              just, it doesn't seem consistent with everything
2              else that's happened in this case, that you
3              didn't bring this is to the committee's attention
4              until after the time it ran.

5    M:        The silent dog so to speak. But you know,
6              honestly Your Honor.

7    Judge:    The dog that didn't bark.

8    M:        The dog didn't bark. But, really.

9    Judge:    And again, I'm not trying to put you on the spot,
10             but to me it's a relevant fact.

11   M:        Yeah.

12   Judge:    I really want to understand that.

13   M:        Well, let me give the answer, as best as I can
14             tell you, is that first of all the dollar volumes
15             at sake, the senior unsecured piece that our
16             issue involves is 720 million dollars, the CSFB
17             piece is only 390 (blip in tape) so that's one
18             issue, is that really our issue goes more to the
19             senior unsecured group which is the major

1           constituency of the committee as opposed to CSFB,

2           so that's one issue.

3   Judge:  390 million, you're talking real money.

4   M:      There's another litigation issue as well. The

5           second point, really Your Honor is that you know

6           I think it's our position that third parties

7           aren't necessarily bound by the deadline. Now, I

8           don't think that's an issue yet, but it's like a

9           day, and obviously all third parties are at their

10          risk if they are bound then this order will be

11          Res Judicata.

12  Judge:  If such action is not filed on or before the

13          investigation termination date, the stipulations

14          contained in DC and D above, and the validity

15          perfection, enforceability and not avoidability

16          of the obligations under the CSFB facility and

17          such obligations should be irrevocably binding on

18          all creditors of the debtor's estate, and all

19          other parties and interests, that's what the

20          language says. Now, you could take a position

21          that you know you're not one of those or that you

22          somehow didn't know about it, but the fact of the

77

1          matter is you've been here every hearing from the

2          very beginning complaining about something. I

3          don't mean complaining, raising issues about

4          something, which has indicated to me, you know,

5          you have a substantial economic interest in this

6          case that you've been trying to protect, and I

7          guess I just don't understand why it is after the

8          deadline ran was when the issue was raised with

9          regard to 390 million dollars is a lot of money.

10   M:    yes.

11   Judge: That would prime your folks, and you know,

12          certain prime the senior secured debt too, but

13          then you'd have 390 million dollars less to get

14          through before the money starts flowing through

15          to you.

16   M:    I think that's right, I mean, there's all kinds

17          of issues that you know, if we succeed in re-

18          characterizing the 720 million dollars, maybe

19          that's enough, maybe it's a pig becomes a hog

20          type issue that you know CSFB is purportedly

21          secured, we are purportedly subordinated to them,

22          so to the extent that their position were

78

1          subordinated for different reasons, maybe our

2          subordination is still in effect so..

3   Judge:  Is it fair to say that you knew about the issue

4          but you decided for whatever tactical or

5          strategic reasons not to raise it with the

6          committee.

7   M:     That's correct Your Honor.

8   Judge:  Until such time it was after the date of the 120

9          days.

10  M:     This is not our issue today, Your Honor, we are

11         not asking for an extension with respect to CSFB.

12         Our issue is with the debtor and..

13  Judge:  Well, my issue is with whether or not the

14         committee's request, assuming we get over the

15         procedural issue of whether or not a motion is

16         pending and it's filed too late and so on, should

17         be granted because the committee did not raise it

18         until such a late date, and the committee said we

19         didn't raise it until such a late date because it

20         wasn't brought to our attention to afterwards,

21         and it was brought, and you're now explaining to

79

1        me why it was brought to the attention, to their

2        attention so late, and I understand that. And I

3        understand that you don't necessarily share all

4        objectives with the committee, or with the

5        members of the committee. It sounds like, one of

6        the things you want to do is re-characterize the

7        senior secured debt to your benefit as a junior

8        holder.

9   M:     That's correct, Your Honor.

10  Judge:   Okay, I think I understand that.

11  M:     And so our meeting was with the debtor and we're

12        still in silent [?] talks with the debtor and

13        hope that we can resolve all this.

14  Judge:   Okay, and I guess before I, I know it's getting

15        late, but this is I apologize for all the planes

16        that are being missed if they are, but I think

17        it's important to try to work through this.

18  M:     This is Allan McGarvey. We filed an 11th hour

19        motion to join in this motion and our motion

20        contains some serious actual errors, and we have

21        time to discuss that error?

1   Judge:      Not quite yet, but just a minute. And I take it,

2               this is not something then that your regulatory

3               counsel Mr. Kornberg, independently came up with.

4   M:          Oh, absolutely not, Your Honor, he was quite

5               surprised by the allegation, I don't want to say

6               more at this point but he is not saying, In fact,

7               I should also point out that it was never even

8               really brought directly to the committee's

9               attention. This was revealed by Harbard in

10              discussions as our counsel just said with the

11              debtor, we learned of it, indirectly and I felt I

12              was duty bound to raise with the committee and to

13              seek relief from this Court.

14  Judge:      Alright, let me listen to Mr. McGarvey before I

15              hear substantively from CSFB's counsel.

16  McGarvey:     Thank you, Your Honor. Allan McGarvey again

17              for the McGreevey Class. Your Honor, we prepared

18              a hastily put together motion would be filed.

19  M:          Today, the time in this motion are very –

20              deadline, I want to apologize to the Court and to

21              counsel that that motion has significant stature

81

1       issue, there are errors in that I want to expose

2       a bit upon. The motion that we provide – estate

3       that counsel for the McGreevey Class first

4       learned of incumbent last night and in fact we

5       had actual notice that there was a 280 million

6       pledge that was made and we had notice of that in

7       December 2002. What we did not know was that it

8       was Credit – we're saying, it was later

9       identified as this facility and it was that

10      lender. Nor did we have any notice that it goes

11      beyond that 280 million. So our position is it's

12      our understanding based on the conversation I had

13      with counsel for – last night that this has grown

14      to a 500 million dollar indenture against the

15      assets of the Montana utility and my concern is

16      just one of basic due process. WE did not have

17      actual notice that it that are in possession

18      financing orders would have that effect and no

19      notice was given to us on that decision.

20      Notwithstanding that Northwestern clearly knew of

21      our interest in the property and granted us that

22      interest by way of that stipulation. So our

23      concern is really one of due process and we have

24      an opportunity to and --- present a basis for

82

1              challenging what we understand with this now is I

2              personally - indenture.

3   Judge:     Well, there are a lot of heads shaking in the

4              courtroom with regard to the mentioning of the

5              500 million number. Frankly, the question of

6              whether or not you should individually be

7              entitled to relief from the order strikes me as a

8              real sixty issue that you would have to bring on

9              separately and develop a factual basis for and if

10             you believe you have a real sixty basis to say

11             that order does not apply to me, because I wasn't

12             given notice or whatever, then you can certainly

13             bring that on, but it's not the sort of thing

14             that I'm going to consider on a spoken basis at

15             this hearing. Is that clear?

16  M:         That's fine, we can address it that way, and I

17             did want to make sure that the record would say

18             what our position was factually and I pose that

19             into the courtroom.

20  Judge:     Alright, thank you. Okay. Are we going to hear

21             from CSFB and then..

83

1  M:        Your Honor, may I be heard very brief before we

2            turn to the next ---?

3  Judge:    Okay. Who are you here for?

4  M:        Philip Bentley of Kramer Levin, Your Honor. On

5            behalf of Wilmington Trust, which the indenture

6            trustee for the Northwestern Toppers which is the

7            Class...

8  Judge:    The Harbard Class.

9  Bentley:  Harbard is part of. Yes, we were retained

10           recently and we have been working with Harbard,

11           and I though it might be helpful for the court to

12           add a few words, Your Honor, and inquire why was

13           this issue not brought to the committee's

14           attention sooner.

15  Judge:   I'm talking specifically about the PUHCA issue.

16  Bentley: Exactly Your Honor and that's what I wanted to

17           address. A brief word, Your Honor to give you the

18           context, I think is helpful. The PUHCA issue

19           relates to an application filed by the debtor

20           back in February 2002 and the essence of the

84

1          issue relates to whether the debtor adequately

2          disclosed a key fact relating to its application,

3          to the SEC, when it filed its application. WE

4          believe that certain key facts were not

5          disclosed, and that the SEC has not been aware of

6          them and is not aware of them and we believe that

7          the SEC, when it learns of these facts, has the

8          power, and we believe the obligation to address

9          the consequences of that non-disclosure and we

10         think the remedy that they could order could have

11         very substantial consequences for the priority of

12         the different classes of debt in this case. And

13         because he has that right, but Your Honor, to

14         suggest that this order is not binding on all

15         those who receive notice on it, of it, and all

16         creditors, I think that would suggest that the

17         financing orders could never been relied upon by

18         lenders in this district and I think that could

19         undermine the organizational process of any

20         regulated entity in this district. I think,

21         bottom line, with the Magten motion is about –

22         apart from the PUHCA issue, which I don't'

23         believe is properly before this court because I

24         don't believe there's been a motion made, but

85