1       with respect to the Magten motion, I think at

2       bottom what we're dealing with is a motion to

3       extend time to investigate claims by a party that

4       does not have the power or authority to bring

5       those claims and so Your Honor I think that to

6       grant Magten an extension of time to review

7       claims when Magten doesn't have a right to bring

8       those claims, based upon the fact that the exide

9       court was completely clear, that creditors don't

10      have that right, and that was a case in this

11      district in Delaware.

12  Judge:   I think Magten's counsel sounds if what she's

13          saying is we want the extra time so we can bring

14          the committee on  board.

15  Bentley: That right, and that was a case in this district

16          in Delaware.

17  Judge:   I think Magten's counsel sounds as if what she's

18          saying, we want the extra time so we can bring

19          the committee on board. We know it's the

20          committee that has to do this, and so you know we

21          think if we really job on the committee a little

1           bit more, they'll understand the seriousness of

2           this situation.

3  Bentley:  Agreed, Your Honor, and I think we heard Mr.

4           Kornberg saying they have in the committee that

5           not only does the committee believe that the

6           prime period has passed with respect to the

7           investigation n the fraudulent conveyance issue,

8           staying away from the pru--- issue for the

9           moment. Not only does the creditor's committee

10          believe that time period passed, not only does

11          the creditors committee believe that it not

12          request an extension of that time period, but the

13          creditor's committee is on record saying that

14          they have reviewed the issues, the specific

15          issues, referred to Magten in their pleadings and

16          they believe that there's no merit to them, and

17          therefore Your Donor, to grant an extension of

18          time for Magten, I think we'd be - A) it would a

19          fundamental waste of estate resources, I think

20          that we would have Magten and the creditor's

21          committee and the debtor and CSFB spending estate

22          assets, reviewing issues that the creditor's

23          committee who has the fiduciary duty to creditors

1                    of Northwestern has already reviewed and passed

2                    upon, Your Honor, and I think the other thing it

3                    would do, it would call into question the

4                    durability the reliability of - orders in this

5                    district, both of which I think would be very bad

6                    results. And Your Honor, with respect to the

7                    PUHCA issue, I can only say...


8    Judge:          Certainly if the Committee brought a motion

9                    clearly before the time of the expiration and

10                   sought a 45 or 90 degree extension and showed

11                   cause for that, then that wouldn't undermine the

12                   durability or reliability.


13   Bentley:        Not at all, Your Honor, in that..


14   Judge:          IF that's what the order says.


15   Bentley:        In fact, Your Honor, they would not have had to

16                   make that motion, because I think Mr. Kornberg

17                   has told you and will tell you that CSFB and

18                   CSFB's counsel was always 100% cooperative in

19                   terms of sharing information and the like, and if

20                   we had gotten to the 120th day and Mr. Kornberg

21                   had called me and said, I have not had enough

1   time to review these issues, I need another 45

2   days, there is no question that CSFB would have

3   granted that extension. And cooperated with the

4   committee with respect to their investigation. We

5   have no problem with the fact that the creditor's

6   committee has the right to review these issues.

7   When the dip order was entered CSFB understood

8   and the members of the bank group understood that

9   while that their financing order provided that

10  the liens and claims of CSFB were valid and

11  enforceable as Your Honor said, that there would

12  be an investigation period and that we would have

13  to cooperate with the creditor's committee so

14  that they can investigate and get comfortable

15  with those claims and liens were good. There was

16  no question that the creditor's committee needed

17  more time if they felt that we hadn't been

18  cooperative, whereas for whatever reason they

19  felt they needed more time to look at it, we

20  would have given an extension, but Your Honor,

21  they had gone that investigation with full

22  support and cooperation from us and had reviewed

23  the issues and had concluded that there were no

24  claims. I would also note that counsel for

1               Harbard not only knew of these issues related to

2               PUHCA and this issue, but they actually objected

3               to their financing order, we're in court for that

4               very long hearing, Your Honor, on the final

5               order, and Your Honor overruled their objection

6               and approved their financing order, and therefore

7               to suggest that they weren't aware of these

8               issues is just not...

9  Judge:      Now, he didn't say he was unaware. Counsel for

10              Harbard I thought was very candid with me which

11              said, we've known, and to the extent we've known

12              about issues like this you know, decided for

13              various strategic and we think appropriate valid

14              reasons not necessarily to raise them and in

15              fact, Mr. Kornberg made clear that they really

16              weren't raised directly with the committee. It's

17              not as if they came to the committee and said,

18              please do this, the committee just happened to

19              find out because of the discussions that were

20              going on elsewhere.

21  Bentley:    I understand Your Honor, I may have

22              misunderstood.

1   Judge:    So I don't think there's, I think Harbard's been

2             pretty upfront about it that to the extent they

3             knew about it, they didn't raise.

4   Bentley:  I understand.

5   Judge:    And consciously so.

6   Bentley:  And finally with respect to the PUHCA issue

7             again, I don't believe that there's been a motion

8             brought, I don't believe that's properly before

9             the court. Again I will tell you that CSFB, when

10            this issue was raised with us, my firm, on behalf

11            of CSFB, did look at this issue and concluded

12            that there was no valid claim here, but Your

13            Honor, I guess people want to bring a  motion on,

14            if the credit committee wants to bring a motion

15            on, we'll respond to it, and explain why an

16            extension of time in connection with the PUHCA

17            issue is not relevant and would also be a waste

18            of estate assets, but I don't even think that's

19            proper before the court. With respect to the

20            comments made by counsel on the phone, without

21            belaboring the point too much and we'd be happy

22            to share the information with that counsel if he

91

1          would get in contact with me, and I'm not sure I

2          completely understood what he was saying but it

3          was 390 million dollars of debt    on the filing

4          date, the CSFB date, and the agent, as agent for

5          the bank group. There was 390 million due today,

6          280 million is subject to liens at the Montana

7          level, and 110 is subject to liens at the South

8          Dakota level. That has not changed, that amount

9          has not gone up, We don't have a revolving, the

10         financing approved, we had a term loan approved,

11         Your Honor, remember that the big issue that the

12         financing would have – that we arguably not

13         extending "new credit" in connection with the

14         financing, although we believe we did extend

15         value by extending it into an exit financing.

16         But, if counsel would like me to work with them

17         to clarify that, I can certainly do that. The

18         only other point I want to make Your Honor, and I

19         think this also goes to the heart of Magten's

20         motion, I noticed that counsel for Magten said at

21         one point in discussing the motion for release in

22         the stay. CSFB, we believe that if we conclude

23         that CSFB had knowledge, which they did, of the

24         fact that this was a fraudulent conveyance, I

92

1          think that's pretty much the words that she used,

2          then there's a claim against CSFB. It's

3          interesting to note that counsel for Magten is

4          asking for an extension of time to investigate

5          these issues, but is standing up in court and

6          saying, CSFB did have knowledge, as if they've

7          already performed an investigation and actually

8          have evidence that they could submit to the court

9          showing that there's a valid fraudulent

10         conveyance to them, which I don't believe is the

11         case, because I think if it were they wouldn't be

12         asking for more time to investigate the issue,

13         which I think goes to the heart of this. I think

14         what this is really about, Your Honor, and I

15         think I said this in connection with the motion

16         from the relief from the state, this is really a

17         question of allocation of value between the

18         unsecured creditors, the general unsecureds, and

19         the holders of the --- not over and over and

20         above the value that goes to CSFB as a secured

21         creditor. This really has nothing to do with CSFB

22         at the end of the day. I believe that this is

23         pure equity allocation issue between two creditor

24         parties and ultimately hopefully they'll make a

1          deal and this company will come out of

2          bankruptcy. I think that people are focused on

3          CSFB because it's a convenient way to extend the

4          process and give it attention, but Your Honor, I

5          think that's really what this is about. I think

6          the creditors came and reviewed this and

7          concluded there are no claims and therefore

8          having continued to view does nothing other than

9          give a party hold-up value with a process that it

10         really shouldn't have. Thank you, Your Honor.

11   Judge:   Mr. Rosten do you want to weight on this?

12   Rosten:  Interesting after - Your Honor. I think to follow

13         on a comment, kind of a point Mr. Drak was making

14         I think as we're starting to find ourselves is

15         that with the debtor having now filed its point

16         of reorganization and disclosure statement that

17         we are indeed getting into the usual normal

18         confirmation process and creditors are starting

19         to jockey a little bit for position to deal where

20         ultimate recoveries are. That said, as it relates

21         to the Magten motion, I think that the court's

22         got to decide this in two issues. One is relates

23         specifically to the point that Magten has brought

94

1    this motion relative to looking at all of the

2    claims and liens and encumbrances relative to

3    CSFB, we as the debtor certainly acknowledge the

4    validity and enforceability of the CSFB debt when

5    we entered the interim order on the modification

6    of the CSFB financing and indeed I think that the

7    debtor, the committee has looked at that issue

8    and believes, concluded that there's nothing

9    untoward as it relates to those when you look at

10   perfection, when you look at the question of was

11   there consideration given for the granting of the

12   liens and what have you. So I think on that basis

13   Your Honor I would say no more time. It's been

14   almost six months from the time when the case

15   first started to the point that there was an

16   actual investigation because the court may

17   remember we were a couple months into the case

18   when we brought CSFB motion for amendment on an

19   issue. This issue that is a later issue that's

20   resonant relates to PUHCA and for the purposes of

21   the court reporter that is the acronym is PUHCA

22   which is acronym for the Public Utility Holding

23   Act of 1935. Did only indeed come up raised by

24   Harbor to the debtor where we then advised the

95

1    committee that this issue had arisen. And it has

2    only come up close to the expiration of one would

3    say the investigation period provided in the

4    final, the _____ financing order. I think to the

5    extent that this court is going to entertain any

6    extra time on behalf of the committee as related

7    to the CSFB financing. We certainly believe that

8    time has passed, but that to the extent there is

9    any additional time granted it should be for

10   purposes at looking at that limited issue

11   relative to the debtors compliance with PUHCA and

12   the impact of whether we have perfectly complied

13   or did not comply as Harbard is prone to suggest.

14

96

```
1   M:      Whether we had partly complied or did not comply

2           as Harbard is a firm to suggest. And what that

3           may do, not only with CSFB financing as been the

4           center today but whether it indeed it relates the

5           whole $750 million senior unsecured bonds,

6           because the guts of the Harbard's argument is the

7           extent that there was a bad faith filing, that

8           happened to the debtor with an exception with the

9           SEC or compliance with the CUKA, that any debt

10          issue after that filing may well be void abonicio

11          if there was an appropriate to be made that the

12          holders of the debt, CSFB, or the individuals

13          holder the senior unsecured debt indeed had

14          knowledge and actually was aware that there was a

15          bad faith filing. We as a debtor certainly take

16          issue with the Harbard's assertions and we're to

17          address if and whenever they come on a formal

18          basis, but I think it should be clear that this

19          issue relates not just to CSFB. It does relate to

20          the whole senior debt structure of the debtor. My

21          last comment, Your Honor, is that I wanted to

22          make sure to the extent that there issues being

23          raised that this court was being clear. We have

24          given on behalf of this debtor everybody noticed
```

97

1          that we know we have to give notice on major

2          matters, we have given that notice to Mr.

3          McGarvey on behalf of the McGreevy plaintiffs,

4          we've given notice to the SEC. So I didn't want

5          this court to come away with any perspective that

6          is related to matters that are going in case

7          beyond this hearing, finances, whatsoever, is

8          that there had been any Thayer [?] on the service

9          list provided appropriate notes, and with that

10         Your Honor I will close.

11    Judge:    On that final point, I hope I've made it clear

12         that to the extent of any individual party thinks

13         that it has grounds for relief from any order for

14         lack of notice or any other due process or

15         mistake, burdens, fraud, whatever, as governed in

16         my rule by Rule 60 and you have to bring on an

17         appropriate motion with a factual background and

18         I'm not going to really address those things in

19         the abstract, to the extent that somebody thinks

20         they have that, they can bring that and it will

21         be fully aired and we'll hear that. You look like

22         you want to say something else. Right.

1  F:        I think that what we're learned today is that the
2            committee Mr. Kornberg got lucky because we filed
3            a motion so that the official committee could
4            continue it's investigation and low and behold,
5            it came to the attention of the official
6            committee, that they didn't do a complete
7            investigation and issue came up. Mr. Kornberg,
8            even he didn't think of it, other people admit
9            they didn't think of it, the committee had
10           regulatory counsel, they didn't think of it, but
11           low and behold, t here is an issue that has a
12           reason, we did make a motion within the time that
13           was specified and before the expiration of the
14           120 day period so that the committee could
15           investigate and there was no reason if the PUHCA
16           issue or other issues exist that the creditors on
17           the committee should be deprived of the benefit
18           of having looked at that motion because people
19           admit that they didn't think of it in time when a
20           member of the committee didn't move this court
21           for the committee itself to have additional time
22           within the required timeframe. The fact that...

1   Judge:    But of course your motion had nothing to do with

2             PUHCA?

3   F:        My motion had nothing to do with PUHCA, that's

4             right, that's why Mr. Kornberg and

5             parenthetically the committee got lucky because

6             we did believe that there were claims that have

7             to be looked at and the PUHCA is one of them and

8             we get to do it in the limited time that's

9             allotted by this court so that the investigation

10            is complete, I think that protects the interest

11            of all involved and indeed, protects the

12            fiduciary obligations that the committee has to

13            creditors. And I do agree with Mr. Gerack on

14            that, CSFB indeed did not make any new financing

15            available and I --- the pre-petition amounts that

16            they had already lent in a --- thank you.

17  Judge:    I think I'm going to be able to rule on this

18            today, but I want to think about it, five or ten

19            minute break, I know it's almost 6 o'clock, but

20            we'll be back no later than 6 o'clock and wrap

21            this up. And adjournment until then.

22  Judge:    Please be seated.

100

1   M:      Can I say one thing real quick. I swear it's not

2           argument or anything, just, I just wanted to give

3           you a little more background. I just wanted the

4           court to be aware that I was not aware of this

5           PUHCA issue from Day One or anything. We're

6           operating on our own nickel in this case right

7           now. I only got the PUHCA lawyer involved in the

8           context of the reorganization and whether that

9           was subject to PUHCA etc. For all of the lawyers

10          here, I don't think any of us knew about it early

11          on in the case. I just want to let you know.

12  Judge:  Well, we have our two related motions, one motion

13          for relief from the automatic stay, it was filed

14          by Magten, it's the holder of certain instruments

15          called quits that were initiated issues, as I

16          understand it, at the Montana Power level and

17          through various, went up through a company called

18          Clarkfork and Blackfoot which then was eventually

19          merged into the debtor. One of the issues there

20          is whether or not Magten is a creditor of the

21          entity at the Clarkfork and Blackfoot level. Or,

22          simply a creditor at the Northwestern level. The

23          motion for the - stay is somewhat unusual because

101

1          it seeks to file a fraudulent conveyance case

2          against the debtor as the recipient of a

3          fraudulent conveyance rather than what we

4          typically see which is the debtor in its capacity

5          as debtor in possession filing a fraudulent

6          conveyance against the three party to bring an

7          asset into the estate, this is an effort a part

8          to file a lawsuit to remove an asset from the

9          estate in effect, or to impose a constructive

10        trust upon that. That motion was joined in a

11        group known as the McGreevy Class which is a

12        certified class in pending litigation which

13        claims to have certain rights under court order

14        stipulations and other proceedings that have

15        taken place in the class action litigation.

16        McGreevy has indicated that it would intervene in

17        the Magten lawsuit where it would file, or

18        perhaps it would file its own litigation. The

19        McGreevy joinder in this has come during the

20        course of the proceeding and therefore is not

21        fully flushed out to the same extent as the

22        Magten issue. The debtor and others take the

23        position that the position for relief should be

24        denied because Magten is not a creditor of

102

1   Clarkfork therefore would not have standing to

2   pursue the fraudulent conveyance on the grounds

3   that it did not show that it was harmed by the

4   fact that there were assets that were transferred

5   away from Clarkfork to, eventually upstream to

6   Northwestern. At the same time most parties

7   acknowledged that these are issues that have been

8   lurking around in this case, and need to be

9   redressed and resolved at some level In order to

10  move the process of the reorganization along.

11  With regard to the motion for release of stay,

12  the debtor also made the point that it did not

13  think that cause had been shown that this matter

14  could in fact be resolved through the claims

15  process and was concerned also that there had

16  been no evidence presented under the written

17  materials that were filed by Magten. It seems to

18  me that it's in the best interest of all parties

19  here to flush these issues out and to allow them

20  to be resolved. So I'm going to grant the motion

21  of Magten to file for a lawsuit under the

22  condition I'm also going to direct them to file

23  the lawsuit within 10 days. Then I think the

24  issues of standing, availability of the remedy

1        and everything else can be resolved in the

2        context of the litigation, through a motion to

3        dismiss, a summary for summary judgment or

4        whatever is appropriate. CSFB has taken the

5        position that it doesn't really matter because

6        their liens are past these assets in any event to

7        the extent that Magten is seeking any relief

8        against CSFB, it needs so to state to the extent

9        that that would be relief that CSFB would be

10       precluded under the zip order than that could be

11       a defense that it would raise in that lawsuit. I

12       think these things are better resolved in the

13       context of that kind of litigation environment

14       where all parties have, know what their rights

15       and remedies are under the rules of civil

16       procedure then through this motion practice. So,

17       I'm going to grant that motion. With regard to

18       McGreevy, frankly I think the McGreevy situation

19       is sufficiently different that if McGreevy wishes

20       to file its own lawsuit or intervene it needs to

21       do that through its own motion and get that on

22       immediately so that it can be heard at the next

23       omnibus hearing which is in May 17th, then for

24       example, I think it was clear and reasonably so

1    that the committee was not really prepared to

2    address the question of how McGreevy, what it's

3    position would be vis a vie McGreevy because

4    there are different factors that – the standing

5    issue does not come directly up, but whether or

6    not they have a sufficiently liquidated claim to

7    be able to show cause that they should be able,

8    pursue such a litigation and there's also an

9    issue. ON the other hand, they claim to have

10   certain rights and remedies as a result of

11   stipulations by the debtor and/or orders of the

12   other court, so I don't think that was

13   sufficiently well developed to have a motion to

14   rule out – the order today in the estate relief

15   will be granted, you have 10 days to file, if

16   they don't file within 10 days then they're

17   barred by it. That's at the Magten level with

18   regard to the so-called Clarkfork fraudulent

19   conveyance. The second motion that was filed is a

20   motion, it's quite an odd motion so I'll try to

21   see if I can specify what I understand it to be,

22   it's a motion by Magten, who is a member of the

23   committee, to give the committee additional time

24   to investigate something that the committee has

1 already investigated and doesn't want additional

2 time to investigate. And that really when you

3 state it, kind of presents the conundrum of the

4 motion. That this order is quite clear that the

5 right to investigate the validity and

6 enforceability, not avoidabiltiy, perfection

7 amount of the CSFB facility lies with the

8 committee. The committee has undertaken that job

9 with the cooperation of CSFB. That committee has

10 concluded that it is not going to file an action

11 and indeed committee counsel has advised the

12 court today that it thinks that it would not be

13 in the interest of its constituency to file such

14 an action because in fact it's, it would be an

15 action on behalf of the creditors of another

16 entity as opposed to the unsecured creditors of

17 the particular entity that the committee

18 represents. I don't think under those

19 circumstances that with regard to the extension

20 the time that cause has been shown so that motion

21 will be denied. The second part of that is

22 whether or not the committee's subsequent request

23 for 45 days should be granted because it has been

24 aware of certain PUHCA issues, that it believes

1           from a fiduciary standpoint then it least has to

2           investigate and it was not a ...

3    M:     Litigation claimant from a debtor's perspective

4           is an unliquidated claim.

5    Judge: I think they fall in the same category as

6           McGreevy.

7    M:     I just wanted a clarification of that. That's

8           where I think it would fall Judge but I wanted

9           the record to be clear in that business.

10   Judge: And again if McGreevy and/or Cananchey come

11          forward and make a straight forward case that is

12          consistent with the ruling I made today that this

13          is an issue that needs to be teed up and resolved

14          that is different from the Magten issue because

15          it may not raise the same preliminary standard

16          issues or other kinds of things or it may be

17          based upon other rights or remedies that MagTen

18          doesn't have, or Magten may have rights and

19          remedies that they don't have that would play out

20          either way. I think they should file their own

21          motion. We'll get it heard next time. My overall

107

1              concern is I think that other consensually or by

2              litigation these kinds of issues need to be

3              resolved because they impact very directly upon

4              confirmation issues. I don't mean by that there

5              are deaf now necessarily but they do have an

6              impact upon what stands for the creditors and who

7              gets carved up and what kind of a condition in

8              that seems to me to be essential. That could be

9              put off and litigated as part of the contested

10             confirmation trial, which sounds to me like quite

11             a bad idea.

12   M:       We would concur Your Honor.

13   Judge:    And I think by teeing them up in the litigation

14             mode at this point, that either if they had to be

15             resolved by litigation, though because farther

16             down the line and we'll be in a position to do

17             that at that point or the litigation process

18             mainly to a resolution of the issues in the

19             context of  how the  issues developed in the

20             litigation, so either way it's better to get

21             started sooner rather than later with those and

22             that's why I'm planning that motion and why

23             frankly I'd be inclined to go with the McGreevy

1    and the Camanchey motions if once they've been

2    specified and once the parties have had the

3    opportunity to respond, so long as they're not

4    duplicative or so long as by virtue of the fact

5    that they are liquidated claims, they really

6    wouldn't have any right to bring those actions or

7    whatever those threshold issues are. I don't want

8    to decide what is basically I think correctly

9    stated by counsel for Magten is basically a

10    motion to dismiss issue as a preliminary

11    gatekeeper as we say, where you don't get to file

12    the lawsuit because it appears that maybe you're

13    going to lose a motion to dismiss, well let's

14    file a lawsuit and then a motion to dismiss and

15    that we'll actually resolve it on the merits

16    rather than on some preliminary fashion. We also

17    know that the standard is for that decision and

18    I'm not quite sure we all know what the standard

19    is to be applied when you say you can't do

20    something because you're likely to lose. And just

21    by the win or lose, and then we're dealing with

22    the rules of civil procedure and everybody knows

23    how that game is played. Okay? Is that clear

24    enough.

## Certified Transcript

I, Etta Barmann, am president of Compu-Craft Business Services, a professional transcription agency. I do hereby certify that the foregoing is a true and accurate transcription of a tape given to our transcription agency by _Document Technologies Inc._

I further certify that I was hired by _Morrison & Foerster LLP_ for the sole purpose of preparing this transcript, and that other than this assignment, I am not employed by nor related to _Morrison & Foerster LLP_

_Etta R. Barmann_

Etta R. Barmann, President, Compu-Craft Business Services, Inc.

1

<u>Certified Transcript</u>

I, Etta Barmann, am president of Compu-Craft Business Services, a professional transcription agency. I do hereby certify that the foregoing is a true and accurate transcription of a tape given to our transcription agency by Morrison & Foerster LLP.

I further certify that I was hired by Morrison & Foerster LLP for the sole purpose of preparing this transcript, and that other than this assignment, I am not employed by nor related to Morrison & Foerster LLP.

Etta R. Barmann, President, Compu-Craft Business Services, Inc.

1