IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>Debtor. | Chapter 11<br><br>Case No. 03-12872 (CGC) |

**OBJECTION OF MAGTEN ASSET MANAGEMENT TO THE DEBTOR'S MOTION PURSUANT TO SECTION 105(A), 363(B) AND 502(C) OF THE BANKRUPTCY CODE FOR ESTIMATION OF MAGTEN'S CLAIM AND TO ESTABLISH A DISPUTED CLAIM RESERVE [DKT. NO. 1951]**

Magten Asset Management Corporation ("*Magten*"), by and through its undersigned counsel, submits this Objection (the "*Objection*") to the Debtor's motion (the "*Motion*") Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code for Estimation of Magten's Claim and to Establish a Disputed Claim Reserve, and respectfully states as follows:

## INTRODUCTION

On August 20, 2004, the Debtor filed the Motion purportedly seeking to estimate Magten's claim at $0 and establish a disputed claim reserve. Simultaneously, the Debtor commenced an adversary proceeding (the "*Adversary Proceeding*") against Magten and its chairman, Talton Embry, seeking to subordinate Magten's Claim, which would result in Magten receiving no distribution. Both the Motion and the Adversary Proceeding are unfounded and lack a reasonable basis for disputing Magten's claim. Moreover, because the Motion and the Adversary Proceeding are seeking the same result – to subordinate Magten's claim – the Motion is simply an attempt by the Debtor to procure swift relief through a summary procedure rather

120087.01600/40144691v1

than obtain that same relief through the adversary proceeding process outlined in the Bankruptcy Code. By filing the Motion in the main bankruptcy case, the Debtor is seeking to deprive Magten of the procedural protections afforded by the adversary proceeding process. As a result, the Motion should be denied.

In addition, while the Motion is procedurally defective and therefore should be denied, the substance of the allegations set forth in both the Motion and the complaint (the *"Complaint"*) initiating the Adversary Proceeding are wholly without merit and are simply an attempt to exact punishment on Magten for opposing the Debtor's Plan. The Complaint and the Motion both allege that Magten breached its fiduciary duty by trading on material, non-public information provided to Magten as a member of the Official Committee of Unsecured Creditors (the *"Committee"*), however, neither the Complaint nor the Motion point to a single piece of material, non-public information upon which it is alleging that Magten has traded. As will be set forth more fully in Magten's motion to dismiss the Complaint, Magten's trades that are the subject of the Complaint – which represent less than 10% of Magten's total holdings of QUIPS – either occurred prior to Magten's receipt of any material, non-public information concerning the Debtor (a fact that was corroborated by the testimony of the Debtor's Chief Restructuring Officer during the confirmation hearing), or after Magten was no longer a member of the Committee and after all information concerning the Debtor was made public in the Debtor's plan and disclosure statement filed with the Court.

Furthermore, in light of fact that the Debtor's Plan will not be confirmed before October 6, 2004 nor will the Plan become effective prior to mid October, and given that Magten's claim represents approximately $30 million of more than $2 billion in claims filed against the Debtor,

it is premature and unnecessary to estimate Magten's claim prior to the resolution of the grave, but knowingly baseless, allegations asserted in the Complaint. Moreover, under Section 502(c) of the Bankruptcy Code, a claim may be estimated if it can be shown that the fixing or liquidating of the claim would unduly delay administration of the Debtor's case. The Debtor has failed to demonstrate that these statutory requirements for estimating Magten's claim have been met. As such, for the foregoing reasons, the Motion should be denied.

## BACKGROUND

The Debtor owns and operates utility companies in the United States. The Debtor and its direct and indirect nondebtor energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 598,000 customers throughout Montana, South Dakota and Nebraska.

Magten holds in excess of 40% of the QUIPS issued by Montana Capital I (the *"Trust"*). The Trust is a business trust established pursuant to the Delaware Business Trust Act. The Trust was established by The Montana Power Company (*"Montana Power"*), predecessor in interest to Clark Fork (f/k/a NorthWestern Energy, LLC), as a financing vehicle. The only assets of the Trust are the 8.45% Junior Subordinated Debentures due 2036 issued by Montana Power.

On November 15, 2002, Clark Fork, a wholly owned subsidiary of the Debtor, transferred the Montana utility assets to the Debtor.

On September 14, 2003, the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its businesses and manage its properties as a debtor in possession.

On January 13, 2004 Magten filed a proof of claim (the *"Proof of Claim"*) for damages associated with the fraudulent conveyance with respect to the going flat transaction. The Proof of Claim was designated claim number 842 by the Debtor's claim agent.

On August 20, 2004, the Debtor filed the Motion. Simultaneously, the Debtor filed the Complaint thereby initiating the Adversary Proceeding, seeking the same relief requested in the Motion.

By order dated September 1, 2004, the Court has set September 29, 2004 as the deadline for submitting ballots containing acceptances or rejections of the Second Amended Plan. Although the Debtor has objected to Magten's claim by filing the Motion and commencing the Adversary Proceeding, the Debtor has agreed to allow Magten's claim for voting purposes only.

## OBJECTION

I.   The Motion is Duplicative of the Debtor's Adversary Proceeding

The Debtor, through the Motion, purportedly seeks to estimate Magten's claim at $0. Although the Debtor has attempted to couch the Motion as a motion seeking to estimate Magten's claim, in actuality, the Motion is a thinly veiled attempt to obtain immediate summary judgment subordinating Magten's claim.

The Motion does not dispute the amount or validity of Magten's claim. Rather, the only issue raised therein is whether Magten's claim should be subordinated because Magten allegedly misused information that it may have received while a member of the Committee. Rule 7001 of the Federal Rules of Bankruptcy Procedure (the *"Bankruptcy Rules"*) requires that an attempt to subordinate a claim pursuant to Section 510 of the Bankruptcy Code must be made by initiating an adversary proceeding. Fed. R. Bankr. P. 7001. Thus, there is no basis under Rule 7001 for

- 4 -

the Debtor to use the Motion as a means to seek the same relief it is seeking through the Adversary Proceeding.

Moreover, by seeking to subordinate Magten's claim, the Motion is, in essence, an objection to Magten' claim under Bankruptcy Rule 3007. Pursuant to Bankruptcy Rule 3007, when an objection to a claim is joined with a request for affirmative relief - i.e. a request for subordination – the objection is automatically converted to an adversary proceeding. Indeed, the Debtor acknowledged that because the Motion is both an objection and an effort to subordinate Magten's claim, the Motion is automatically converted to an adversary proceeding. Motion at ¶ 29. As a result, the Debtor has commenced two identical adversary proceedings seeking duplicative relief; one by filing the Complaint and one by filing the Motion.

Furthermore, by seeking to subordinate Magten's claim through the filing of the Motion, the Debtor has deprived Magten of the procedural protections afforded to litigants through the adversary proceeding process – protections that are not afforded by filing a motion seeking the same relief. For instance, the adversary proceeding process provides the defendant with thirty days to respond to a complaint, however, by bringing the instant Motion, the Debtor has limited Magten to significantly less than thirty days to respond to the Debtor's serious, but knowingly unfounded, allegations.[1] In addition, an adversary proceeding, by incorporating the Federal Rules of Civil Procedure, requires the plaintiff to assert detailed allegations – which the Motion clearly lacks – and allows the defendant the right to bring a motion to have the complaint dismissed, obtain summary judgment, and/or commence discovery. By bringing the Motion,

---

[1] As noted above, the Motion is, in essence, an objection to Magten's claim pursuant to Bankruptcy Rule 3007 and the Debtor has failed to provide Magten with thirty days notice of the objection as required by Bankruptcy Rule 3007.

- 5 -

none of these procedural options are available to Magten and Magten is forced to file this Objection as its only means of obtaining relief.

Because the Motion is nothing more than a redundant adversary proceeding and because the Complaint is itself incorporated by reference in the Motion, the Motion is wholly duplicative of the Complaint, is a misuse of the estimation process and should be denied.

II.     The Debtor Lacks a Reasonable Basis Upon Which Relief Can Be Granted

The allegations raised in the Complaint and, likewise, the allegations raised in the Motion, are erroneous and are a further attempt by the Debtor to harass Magten. Magten will be filing shortly a motion to dismiss the Complaint that will illustrate why each and every allegation set forth in the Complaint is wholly without merit. Moreover, the Debtor's allegations regarding Magten's purchases of the QUIPS -- although meritless -- are extremely serious in nature and, as previously noted, should not be decided on summary procedures as suggested by the Debtor in its Motion.

As noted above, the Complaint seeks to subordinate Magten's claim based upon allegations that Magten traded on material, non-public information and, thus, Magten breached its fiduciary duty to the Debtor's creditors.[2] Despite the gravity of these accusations, the Complaint does not point to one single piece of material, non-public information upon which Magten might have traded. In fact, the vast majority of purchases being challenged -- involving 95,000 shares -- were completed on or after May 14, 2004, *after Magten was removed from the Committee and following the filing of the Debtor's plan and disclosure statement*. Thus, all

---

[2]   Through the Complaint and the Motion, the Debtor attempts to mislead the Court as to the volume of Magten's trades. In fact, the trades in question represent less than 10% of Magten's total holdings in the QUIPS

material information concerning the Debtor was made public by the Debtor prior to these trades. The approximately 25,000 remaining shares of QUIPS that are the subject of the Complaint were purchased at times when *Magten had not yet received any information whatsoever from the Committee and had not yet attended any Committee meetings.* Those few transactions that occurred before the December 18, 2004 Committee meeting, which as the Debtor's Chief Restructuring Officer testified during the confirmation hearing, was the first time the Debtor's business plan was shared with the Committee. The Debtor's own actions –distributing its business plan for the first time at the December 18 Committee meeting and the filing of its plan and disclosure statement – clearly indicate that Magten was not in possession of any material, non-public information at the time the various trades were executed and, therefore, did not violate its fiduciary duty. Indeed, all the allegations in the Complaint, which is attached to and incorporated by reference in the Motion, are asserted upon information and belief even though the Debtor could easily have verified what, if any, confidential information the Committee provided to Magten and when such information was provided.

The Complaint is the Debtor's outrageous and potentially libelous attempt to retaliate against Magten because Magten has asserted a viable fraudulent transfer claim against the Debtor. This transparent effort to wrongly deprive Magten of its claim adds insult to the injury caused by the Debtor filing the meritless Complaint. Therefore, because the Complaint does not set forth a basis upon which relief can properly be granted, the duplicative Motion should also be denied.

III.  **Estimation of Magten's Claim Is Not Necessary To Avoid Undue Delay Of The Administration Of The Debtor's Estate**

Section 502(c) of the Bankruptcy Code requires the court to estimate "for purpose of allowance . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Here, the Debtor seeks to estimate Magten's claim at $0, but has not asserted that the failure to estimate Magten's claim at this time will in any way delay the administration of the Debtor's estate. Therefore, the Debtor has failed to satisfy the statutory requirements for estimating Magten's claim.

The hearing with respect to the confirmation of the Debtor's Plan is currently set for October 6, 2004 and, accordingly, the Debtor's Plan will only go effective, at the earliest, in the middle October. Hence, in light of the fact that Magten's motion to dismiss will be filed on or before September 20, 2004 and, as noted earlier, in light of the Debtor's inability to point to a single piece of material, non-public information which Magten may have utilized to trade, the Complaint will undoubtedly be dismissed. In addition, given that the Debtor expects to have in excess of $2.0 billion in allowed claims and, presumably, has hundreds of millions (if not billions) of dollars in filed claims that will be disputed, there is no reason for this Court to address the possible subordination of Magten's claim in a summary estimation proceeding at this time.[3] This is particularly true in view of the fact that Magten holds approximately 40% of the QUIPS, which means Magten's claim is approximately $30 million – only a little more than 1%

---

[3] Although the Motion is styled as a motion to establish a claim reserve, the Debtor does not provide any discussion concerning the amount to be reserved or the currency to be reserved. Moreover, in light of the fact that Magten has brought the fraudulent conveyance action on behalf of all of the QUIPS holders, to the extent that the Debtor seeks to establish a reserve to satisfy the fraudulent conveyance action, the motion must be on notice to all QUIPS holders – not just Magten.

percent of the total dollar amount of claims that the Debtor anticipates will be allowed. Therefore, the Debtor's attempt to estimate Magten's claim is not necessary at this time.

## CONCLUSION

**WHEREFORE**, Magten respectfully requests that the Court deny the Motion and grant such other relief as the Court deems just and proper.

Dated: September 9, 2004

**BLANK ROME LLP**

_____
Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
One New York Plaza
New York, NY 10004
Telephone:   (212) 859-8000
Facsimile:   (212) 859-4000

Counsel for Magten Asset Management Corporation