The third factor, concerning the effect of the requested relief upon third parties, also clearly weighs in favor of dismissal. In this case, just as in the *Circle K* decision, the relief requested by Plaintiffs would cause significant harm to a vast number of third parties who have relied upon the Confirmation Order and the ensuing implementation of the Plan, which has already taken place. This includes not only lenders from whom the Debtor obtained exit financing and creditors who have already received distributions under the Plan, but also public investors -- who were never involved in the bankruptcy proceedings -- who have purchased and sold NorthWestern's publicly traded stock on the open market since the Plan became effective last year. The absurdity of "reversing" the already-consummated Plan in this case is particularly striking when considering the effect upon such public investors. Even if it could be done, the impact would be draconian and unjustified. *See Zenith*, 250 B.R. at 214 ("reversal" of already-completed exchanges in publicly traded bonds would "impact the rights of investors that were not involved in the bankruptcy proceedings."). Revoking the Confirmation Order at this time would cause incalculable harm to such innocent third parties without any justification, and dismissal on the basis of equitable mootness is clearly warranted under this factor.

The fourth factor -- the effect on the success of the plan -- also weighs in favor of dismissal. Revoking the Confirmation Order would likely land NorthWestern "back into bankruptcy," *Continental*, 91 F.3d at 561, by requiring it to "unscramble" the complex transactions that transpired on and after the Effective Date. *Zenith*, 258 F.3d at 185. Despite Plaintiffs' allegations that the Debtor may have underestimated the value of certain disputed claims, there is no allegation or evidence that the Plan has not been successful to date. Indeed, following the Effective Date the complex transactions contemplated by the Plan were all effectuated. The Disputed Claims Reserve, in actuality, is sufficiently funded; and no holders of

27

allowed claims have failed to receive distributions to which they are entitled under the Plan from the Disputed Claims Reserve.

Lastly, the fifth factor -- the public policy of finality in bankruptcy cases – also weighs in favor of rejecting Plaintiffs' belated attempt at revocation. This factor, "better described as the lens through which the other equitable mootness factors should be viewed," *Zenith*, 250 B.R. at 219, will only be served by denying the relief Plaintiffs have requested. Their attempt to unravel NorthWestern's Plan of Reorganization months after it was implemented and substantially consummated would wreak havoc upon the interests of innumerable third parties who have relied upon the Confirmation Order and would destroy NorthWestern's successful emergence from Chapter 11. Revocation is wholly unjustified and must not be permitted.[10]

Clearly, every equitable and prudential factor identified by the Third Circuit weighs in favor of applying the doctrine of equitable mootness in this case. *Continental*, 91 F.3d at 567. Accordingly, the Adversary Proceeding must be dismissed.

## III.

### THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER SECTION 1144 OF THE BANKRUPTCY CODE

In addition to the jurisdictional and prudential considerations which prohibit this action from going forward, the Complaint must be dismissed as a matter of law because Plaintiffs have failed to state a claim under Section 1144. The express provisions of Section 1144 authorize a court to take the extraordinary action of revoking an order confirming a Chapter

---

[10]  Plaintiffs' request that, as an "alternative" to revocation and discharge, this Court should require NorthWestern "to adequately fund the Disputed Claims Reserve" must also be rejected. *See Innovative Clinical*, 302 B.R. at 143 (declining to fashion alternative remedy other than revocation, which is the sole relief contemplated by Section 1144).

11 plan in only one specific and limited circumstance: that is, *"if and only if such order was procured by fraud."[11]* 11 U.S.C. § 1144 (emphasis added). This requires "actual" as opposed to constructive fraud; thus, the debtor must have committed *actual, intentional fraud upon the Bankruptcy Court* in procuring the Confirmation Order. *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 461 (7th Cir. 1998). *See also* 8 *Collier on Bankruptcy*, ¶1144.05[3] at p. 1144-10.

Plaintiffs have not alleged and cannot allege facts which would sustain a claim under Section 1144. Northwestern did not defraud the Bankruptcy Court in procuring the Confirmation Order. This court is well aware of the history in these bankruptcy proceedings, in which the Plaintiffs have filed every imaginable objection, opposition and accusation against the Debtor. Frustrated once again, this time at the Court's March 2005 Order denying their 9019 Motion to "enforce" the Proposed Settlement negotiated with the Debtor, Plaintiffs have now brought this action to keep up the pressure on NorthWestern until they obtain a recovery on their disputed claim against the estate. The allegations are both baseless and insufficient to warrant revocation.

It is well settled that dismissal should be granted if the plaintiff's allegations, taken as true, along with any inferences that reasonably flow from them, are insufficient as a matter of law to establish grounds for relief. *Official Comm. of Unsecured Creditors v. Credit Swiss First Boston (In re Exide Technologies, Inc.)*, 299 B.R. 732, 739-40 (Bankr. D. Del. 2003). Although the allegations are to be taken as true, the Court "[n]eed not 'credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss." *Exide*, 299 B.R. at 740.

---

[11]   Even if actual fraud with intent is found to have occurred, the Court is <u>not mandated</u> to revoke the Confirmation Order. Section 1144 expressly provides that the court "may" revoke the order, which will depend upon the totality of circumstances, including the question of mootness after substantial consummation, as discussed in Point II, above. *Collier on Bankruptcy*, at ¶ 1144.03[4] at p. 1144-5.

In order to state a claim under Section 1144 for revocation of a Confirmation Order, the Plaintiffs must satisfy the following five-part test:

> 1. The debtor made a false representation that was material regarding its compliance with Section 1129 (which lists the elements that must be established to confirm a plan);
>
> 2. The debtor knew the representation was false, or lacked a belief in the truth of the statement, or made the statement with reckless disregard for its truth;
>
> 3. The false statement was made for the purpose of inducing the court to rely on it;
>
> 4. The court did in fact rely on it; and
>
> 5. The court confirmed the plan as a consequence of such reliance.

*Tenn-Fla Partners v. First Union Nat'l Bank of Florida (In re Tenn-Fla Partners)*, 226 F.3d 746, 750 (6th Cir. 2000) (intentional scheme to defraud the court found where the debtor concealed a higher bidder for its sole asset, instructed the bidder to postpone making its bid until after confirmation, and then sold the asset to the higher bidder). Although Section 1144 does not define "fraud," the courts require a showing of "actual fraudulent intent" on the part of the debtor in order to sustain a claim under this provision. *Longardner*, 855 F.2d at 461-62 (employing five part test for fraud in Section 1144 action, stating: "to support a complaint for revocation, the plaintiff must prove each of the elements of a traditional cause of action for deceit.").[12]

Merely showing inaccuracies or mistake on the part of the debtor is not sufficient to show "fraud" within the meaning of Section 1144. The point is well illustrated in *Longardner*, in which the court specifically declined to order revocation under Section 1144 where a creditor alleged that the debtor's "disclosure statements are grossly inaccurate and inconsistent and that

---

[12] There is no reported decision by the Third Circuit which has considered the requirements of a claim under Section 1144 of the Bankruptcy Code. However, the lower courts in this circuit have followed the Seventh Circuit's decision in *Longardner*, including the requirement of actual fraud. *See Z.A.K. Constr. v. Port Liberte Partners (In re Port Liberte Partners)*, 1995 WL 11186 (D.N.J. 1995).

2354514v8

they require explanation" but did not offer any evidence of "the debtor's intent to defraud the court." 855 F.2d at 462. The court described the creditor's allegations in that case as follows:

> The creditor states broadly that the debtor filed false or fraudulent financial statements and invites the bankruptcy court to examine its objections to the amended disclosure statement and its objections to the reorganization plan to determine for itself 'whether the debtor has engaged in fraud.'...In those objections, the creditor complains that the debtor incorrectly stated facts, and it seeks explanations for changes or inconsistencies in numbers. The creditor alleges that 'gross and serious inconsistencies' between the disclosure statement and the debtor's financial records raise 'insurmountable questions concerning the accuracy of the disclosure statements and the plans submitted to the court.'

*Longardner*, 855 F.2d at 462. On those facts, the Seventh Circuit held that Section 1144 was not satisfied, and revocation was not justified, affirming the rulings of both the district court and the bankruptcy court, since the creditor had failed "to show specific acts involving fraudulent intent" on the part of the debtor. *Id.  See also Chicago Truck Drivers v. Zolner (In re Zolner)*, 249 B.R. 287, 294 (N.D. Ill. 2000) (dismissing Section 1144 revocation action where creditor accused debtor of fraudulently obtaining its consent to vote in favor of plan by making an assignment of malpractice claim that was void under state law and was subsequently retracted, where the debtor "had never given a definitive specific statement" that was false).

The Complaint herein simply presents no circumstances reflecting intentional fraud upon the Bankruptcy Court by NorthWestern in procuring the Confirmation Order. In order to state a claim under Section 1144, Plaintiffs must show that NorthWestern:  (1) made a specific false representation to the Court that was material concerning its compliance with Section 1129; (2) that NorthWestern knew such representation was false or lacked a belief in it or made the statement with reckless disregard for the truth; (3) that the statement was made for the purpose of inducing the Bankruptcy Court to rely on it; (4) that the Bankruptcy Court did in

31

fact rely upon such statement; and (5) that as a consequence of such reliance, the Bankruptcy Court confirmed the plan.

The crux of Plaintiffs' Complaint herein is that the Debtor did not adequately fund the Disputed Claims Reserve after Confirmation in an amount sufficient to cover a hypothetical recovery of 100% of the amount of all disputed claims which were being asserted against the estate, at the rate of recovery afforded to allowed Class 9 claims, after "promising" to the Bankruptcy Court that it would do so.[13]  At best, this is an accusation that, *after confirmation,* the Debtor did not live up to its obligations under the Plan, or that the assumptions used by the Debtor in arriving at its calculations were incorrect.   To conclude that the Debtor acted with actual intent to deceive the Bankruptcy Court at the outset, or pursued a fraudulent scheme throughout the course of the confirmation proceedings, requires an inference of malfeasance that is wholly unjustified.

By definition, in order to "procure" a Confirmation Order by fraud, the specific misrepresentation at issue must have been made **before** the Confirmation Order was obtained. Thus, only statements prior to the Confirmation Order, which was entered on October 19, 2004, could be relevant in determining whether the order was "procured" by fraud.

In fact, Plaintiffs do not identify a single misrepresentation made by the Debtor to the Bankruptcy Court; rather, Plaintiffs charge that at the time the Debtor proposed that 13.5% of its New Common Stock would be set aside for the Disputed Claims Reserve, its estimate of the amount which the estate could reasonably expect to distribute on the disputed claims was incorrect.

---

[13]    Defendants dispute Plaintiffs' characterization of both the requirements regarding estimation of disputed claims under the Plan, as well as the purported representations made to the Bankruptcy Court.

It must be remembered that the total amount of the disputed claims had not been determined as of the date of the Confirmation Order. The Plan itself acknowledged that the amounts of the disputed claims were subject to being estimated and fixed, either by an Order of the Bankruptcy Court or by agreement of the parties. (Exhibit D at § 7.5.) Throughout the period before and after the Confirmation Order was entered, the Debtor was actively engaged in negotiations with the holders of disputed claims to fix such amounts, as well as in filing Motions with the Bankruptcy Court to obtain estimation orders fixing the amount of such claims.[14] In fact, the Debtor filed two Motions for Estimation of the Plaintiff's claims against the estate in August and September 2004, which were not resolved until they entered into the Stipulation on October 29, 2004, just one day prior to the Effective Date of the Plan.

The Debtor's Notice of Establishment of Claim Reserve, which was filed on October 25, 2004, reflects that the estimation process was still ongoing, and specifically refers to negotiations concerning the estimation of Plaintiffs' claims, stating: "the Debtor and Law Debenture have conducted settlement discussions which have resulted in the circulation of a draft stipulation..." (Exhibit K.) The Notice of Reserve further stated that the Debtor had "included in the initial reserve of 13.5% of New Common Stock a claim of $25 million to address the claims of the QUIPS Litigation Claims holders." (Exhibit K, p. 2.) True to form, Magten filed an Objection to the Notice of Reserve; three days later, a Stipulation was executed between the Debtor and Law Debenture (on behalf of all QUIPs claims holders), which -- consistent with the Notice of Reserve – provided for a specific, segregated reserve of shares of New Common Stock sufficient to cover a Class 9 allowed claim of $25 million, which was specifically earmarked within the Disputed Claims Reserve for Plaintiffs' claims. (Exhibit M.)

---

[14]  The debtor recently reached a settlement in principle with PPL, which had asserted a $140 million disputed claim against the estate, whose claim will be entirely extinguished once the settlement is finalized and approved by the Bankruptcy Court. The PPL segregated reserve will be released into the balance of the general Disputed

2354514v8

Clearly, the entire period prior to and just after the Confirmation Order was marked by fast-paced, constantly-evolving circumstances – not the least of which included Plaintiffs' constant stream of objections, motions and threats to obstruct confirmation of the Debtor's plan. In calculating the value of disputed claims, and the corresponding amount to be placed in the Disputed Claims Reserve, the Debtor was dealing with a situation in flux, with ongoing negotiations to estimate and fix the amount of the claims by stipulation or court order. In that context, the Debtor made its best efforts to arrive at a reasonable and accurate calculation of the likely amount of the disputed claims on which the estate would be required to make distributions out of the Disputed Claims Reserve.

Thus, even if the allegations of the Complaint were true -- i.e., that the Debtor incorrectly estimated the amount of the disputed claims when it calculated the amount of New Common Stock that should be placed into the Disputed Claims Reserve – that would not rise to the level of intentional fraud on the Bankruptcy Court, and would not warrant revocation of the Confirmation Order. Plaintiffs' allegations of "fraud" are mere second-guessing of the Debtor's best estimates of disputed claims at a certain point in time. In reality, the appropriateness of the estimates underlying the initial funding of the Disputed Claims Reserve have been borne out by subsequent events, as shown by the continued resolution of disputed claims since confirmation, and have not negatively impacted or caused harm to any parties. No claims holder has been denied a distribution to which it is entitled; the continued settlement and resolution of disputed claims has resulted in a decrease in the total amount asserted against the estate (as the Debtor expected); and the total amount in the Disputed Claims Reserve is sufficient to cover all disputed claims which are currently pending against the estate.

---

Claims Reserve for the benefit of other claims holders, and PPL will be paying approximately $9 million to NorthWestern.

Accordingly, Plaintiffs have failed to allege facts sufficient to sustain a claim for revocation under Section 1144. The Complaint must be dismissed.

## IV.

### PLAINTIFFS HAVE WAIVED ANY CLAIMS REGARDING THE FUNDING OF THE DISPUTED CLAIMS RESERVE AND ARE ESTOPPED FROM ALLEGING "FRAUD" IN THIS ACTION

As noted above, in order to facilitate the process of establishing the Disputed Claims Reserve, the Debtor filed several Estimation Motions seeking orders of the Bankruptcy Court to fix the amount of the disputed claims. At the same time, the Debtor engaged in negotiations to resolve the estimation motions by agreement. The Debtor filed an Estimation Motion with respect to Magten and one with respect to Law Debenture, seeking a determination by the Bankruptcy Court as to the amount of the QUIPs claims which should be included in the Disputed Claims Reserve. (Exhibits I, J.) On October 29, 2004, Law Debenture entered into a Stipulation with the Debtor, in which Law Debenture agreed that the Debtor would "set aside a portion of its initial reserve of 13.5% of New Common Stock solely to satisfy in full a $25 million Class 9 claim of the QUIPS Litigation Claims holders (the "QUIPS Litigation Claims Reserve")." (Exhibit M, Stipulation at ¶ 1.) Magten did not object to the Stipulation, and it was "So-Ordered" by the Bankruptcy Court on November 3, 2004.

While the Stipulation did not preclude the QUIPs claims holders from obtaining a recovery in excess of the $25 million segregated reserve in the event they obtained judgment in their favor in a higher amount, the Stipulation did not guarantee that the Disputed Claims Reserve would be funded with any additional amount to ensure recovery on such larger judgment. To the contrary, the Stipulation expressly states that the QUIPS holders would "be

2354514v8

entitled to draw on any assets remaining in the Disputed Claim Reserve," but "[t]he Debtor has no obligation to replenish the Disputed Claim Reserve." (Exhibit M, Stipulation at ¶ 3.)

In accordance with the Stipulation, it is undisputed that the Debtor did in fact set aside in the Disputed Claims Reserve a segregated reserve of shares of New Common Stock sufficient to cover a Class 9 allowed claim of $25 million, which was specifically earmarked for distribution to the QUIPs claims holders in the event they obtained judgment in their favor. Neither Law Debenture, which executed the Stipulation, nor Magten, which did not object to it, can complain now of any fraud on the part of the Debtor in funding the Disputed Claims Reserve, since the Debtor fully complied with the terms of this Stipulation.

The intent and purpose of the Stipulation was to fix the amount of the QUIPs claim for purposes of establishing the Disputed Claims Reserve. Plaintiffs fully understood the purpose of the Stipulation, having been active participants throughout the confirmation proceedings. The Stipulation fixed the amount of the QUIPs claim at $25 million, and required the Debtor to set aside a reserve to cover an allowed Class 9 claim in this amount. The Debtor complied with its obligations pursuant to the terms of the Stipulation. There was no fraud, no mistake, and no malfeasance on the part of the Debtor in this regard. Having agreed to the terms of Stipulation, and the establishment of a $25 million reserve for the QUIPs holders, Law Debenture is estopped from asserting that the Debtor should have reserved more to cover the QUIPS claims in the Disputed Claims Reserve. Having failed to object to the Stipulation, which controlled the treatment of its claims against the estate, Magten is also bound by its terms.

Accordingly, Plaintiffs' claims against the Defendants should be dismissed in their entirety on the grounds of waiver and estoppel.

2354514v8

## V.

## ALL CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS
## NAMED IN THIS PROCEEDING MUST BE DISMISSED

The Complaint names five individual defendants in this Adversary Proceeding,

Gary G. Drook, Michael J. Hanson, Brian B. Bird, Thomas J. Knapp, and Roger P. Schrum, who

have served as officers or in other management positions at NorthWestern at some time in the

last two years. It is clear that these individuals are named for sheer *in terrorem* effect, because

the Complaint fails to allege a single fact concerning the specific role, actions, or inaction taken

by any of these individuals.

First, it should be noted that Plaintiffs do not seek relief against the Individual

Defendants with respect to the "First Cause of Action," for revocation under Section 1144.

(Exhibit A, Complaint at ¶¶ 51-60.) Nor could they, since the sole relief provided under Section

1144 is limited to revocation of a Confirmation Order, and this provision does not provide

grounds for any claim or relief against the Individual Defendants. *See e.g., Circle K*, 242 F.3d

380 (affirming dismissal of action to revoke confirmation order under Section 1144 on the

grounds of equitable mootness, and rejecting alternative request for damages under Section 105

of the Bankruptcy Code, which pertains to the Bankruptcy Court's general power to issue orders

to carry out purposes of the Bankruptcy Code, as that section "does not create a private remedy

for damages arising out of fraud alleged in connection with the confirmation of a reorganization

plan.").

Plaintiffs do assert claims against the Individual Defendants in the Complaint's

"Second Cause of Action," which alleges breach of fiduciary duty. (Exhibit A, Complaint at ¶¶

61-65.) Yet here again, the Complaint does nothing more than make the barest, passing

reference to the Individual Defendants. There are absolutely no factual allegations concerning

any specific conduct or actions on the part of the Individual Defendants, much less a showing of

2354514v8

how they possibly breached a "fiduciary duty" to Plaintiffs. There is no allegation of how Plaintiffs were damaged. Under even the most liberal pleading standards, the Complaint simply fails to state a claim for relief against the Individual Defendants. *See Yonkers Contracting Co. v. General Star Nat. Ins.*, 14 F. Supp.2d 365 (S.D.N.Y. 1998) (complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of the rule governing motions to dismiss for failure to state a claim).

Reading the general allegations in the Complaint concerning the funding of the Disputed Claims Reserve, it is hard to fathom how the Individual Defendants breached any fiduciary duty to the Plaintiffs. Under Delaware law, the fiduciary duty of a corporation's officers and directors "runs not directly to the creditors but to the 'community of interest,' which "requires the board to maximize the corporation's long-term wealth creating capacity." *Official Comm. of Hechinger Inv. Co. of Del. v. Fleet Retail Finance Group (In re Hechinger Inv. Co. of Del.)*, 274 B.R. 71, 89-90 (Bankr.D.Del. 2002). This will require the officers and directors to chose among competing interests, including those of shareholders and creditors, and "choose a course of action that best serves the entire corporate enterprise rather than any single group..." *Geyer v. Ingersoll Publ. Co.*, 621 A.2d 784, 789 (Del. Ch. 1992). *See also Prod. Res. Group, L.L.C. v NCT Group, Inc.*, 863 A.2d 772, 791-92 (Del. Ch. 2004) ("the mere fact that directors of an insolvent firm favor certain creditors over others of similar priority does not constitute a breach of fiduciary duty, absent self-dealing). Cases involving breach of fiduciary duty to creditors generally involve situations of self-dealing, conflict of interest, or unjust enrichment on the part of the officer or director to the detriment of the creditor. *See Official Comm. Of Unsecured Creditors v. Forman (In re Forman Enters.)*, 273 B.R. 408, 413-14 (Bankr. D. Pa. 2002) ("[Directors] may not exercise their powers for their own benefit and to the detriment of

38

the corporation's creditors...The test of liability for breach of fiduciary duty is whether a director was unjustly enriched by his or [her] actions"). No such circumstances exist in this case.

In the absence of any factual allegations pertaining to the Individual Defendants and no showing of circumstances that would support a claim for breach of fiduciary duty, Plaintiffs have failed to state a claim as to these five individuals, and the Complaint must be dismissed against them in its entirety.

39

## CONCLUSION

For the reasons set forth above, this Adversary Proceeding must be stayed pending the District Court's decision on Magten's Appeal of the Confirmation Order, or, in the alternative, the Complaint must be dismissed in its entirety, with prejudice.

Dated:  Wilmington, Delaware
        June 13, 2005

                                        Respectfully submitted,
                                        CURTIS, MALLET-PREVOST,
                                          COLT & MOSLE LLP
                                        Joseph D. Pizzurro
                                        Steven J. Reisman
                                        Nancy E. Delaney
                                        Miriam K. Harwood
                                        101 Park Avenue
                                        New York, New York  10178
                                        Telephone:  (212) 696-6000
                                        Facsimile:  (212) 697-1559

                                        - and -

                                        GREENBERG TRAURIG, LLP

                                        By: _____
                                        Scott D. Cousins (No. 3079)
                                        William E. Chipman, Jr. (No. 3818)
                                        Dennis A. Meloro (No. 4435)
                                        The Brandywine Building
                                        1000 West Street, Suite 1540
                                        Wilmington, Delaware  19801
                                        Telephone:  (302) 661-7000
                                        Facsimile:  (302) 661-7360

                                        *Co-Counsel for Defendants*

2354514v8

# EXHIBIT "C"

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (JLP) |
| | ) | |
| Reorganized Debtor. | ) | **Objection deadline: Not Applicable** |
| | ) | **Haring date: Not Applicable** |

**PLAN COMMITTEE'S MOTION FOR LEAVE TO FILE A REPLY TO
OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION TO
NORTHWESTERN'S MOTIONS PURSUANT TO BANKRUPTCY
RULE 9019 AUTHORIZING AND APPROVING STIPULATIONS
OF SETTLEMENT [Re: Docket Nos. 3117, 3119, 3120, 3121 and 3161]**

The Plan Committee (the "Plan Committee") appointed in the

above-captioned chapter 11 case of NorthWestern Corporation ("NOR" or the

"Reorganized Debtor") pursuant to Section 7.9 of NOR's Second Amended and Restated

Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan"),[1] by and

through its undersigned counsel, hereby requests, pursuant to Del. Bankr. L.R. 9006-1(d),

authority to file a reply (the "Reply")[2] to the Objection (the "Objection") [Docket No.

3161], dated June 30, 2005, of Magten Asset Management Corporation ("Magten") to

certain of NOR's Motions Pursuant to Bankruptcy Rule 9019 Authorizing and Approving

Stipulations of Settlement (the "9019 Motions") [Docket Nos. 3117, 3119, 3120, 3121].

In support of this motion, the Plan Committee respectfully represents as follows:

---

[1]    Capitalized terms not otherwise defined herein shall have such meaning as ascribed to them in the
Plan.

[2]    A copy of the Reply is attached hereto as Exhibit A.

593955v1

## Background

1.      On September 14, 2003, NOR filed with the Bankruptcy Court a voluntary petition for relief under chapter 11 of title 11 of the Unites States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code").

2.      The Creditors' Committee was appointed by the Office of the United States Trustee on September 30, 2003.

3.      The Creditors' Committee was the body specifically charged with representing the interests and protecting the rights of NOR's unsecured creditors, including the holders of both its senior and subordinated unsecured public debt instruments having a total face amount in excess of $1.2 billion.

4.      After two full days of testimony and argument on August 25, 2004 and October 6, 2004, the Bankruptcy Court issued a decision confirming the Plan on October 8, 2004 (the "Confirmation Decision") [Docket No. 2276].  Subsequently, by order dated October 19, 2004, the Bankruptcy Court confirmed the Plan (the "Confirmation Order") [Docket No. 2238].

5.      The Plan became effective on November 1, 2004 (the "Effective Date"), and was substantially consummated by December 29, 2004, as evidenced by the Notice of Substantial Consummation of the Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed on December 29, 2004 [Docket No. 2519].

6.    Upon the Effective Date, as provided by section 7.9 of the Plan, the Plan Committee was formed.  See Plan at § 7.9.[3]

7.    The Plan Committee is charged with protecting the interests of NOR's unsecured creditors during the final stages of NOR's chapter 11 case.  The primary purpose of the Plan Committee is to oversee the "[C]laims reconciliation and settlement process."  Plan at § 7.9.  One of its key interests is to ensure that all unsecured creditors receive their rightful recoveries in a timely manner.  Magten's Objection seeks to prevent both the allowance of the Proposed Allowed Claims (as defined below) as well as any further distributions from the Disputed Claims Reserve; matters which both fall within the Plan Committee's purview.  As such, the Plan Committee has a direct interest in being heard in this matter.

**The 9019 Motions**

8.    On or about June 10, 2005, the Reorganized Debtor filed the 9019 Motions seeking this Court's authorization and approval of various settlement stipulations between NOR and claimants holding claims arising from various retirement and incentive payment programs established by NOR or its predecessors.  Each of the 9019 Motions provides that upon entry of an order approving such motion, the claimant would be deemed to have an Allowed Claim (collectively, the "Proposed Allowed Claims") in the amount set forth in the stipulations and would receive its pro rata share of

---

[3]    The Plan Committee consists of three members who are either former members of the Creditors' Committee or entities who hold unsecured Allowed Class 7 Claims.  Such members are Avenue Capital Group, Fortress Investment Group LLC, and Harbert Distressed Investment Master Fund Ltd.

New Common Stock from the Disputed Claims Reserve. Objections to the 9019 Motions were due on June 30, 2005.

9.    On June 30, 2005, Magten filed its Objection by which it objects to the allowance the Proposed Allowed Claims based on its belief that the Disputed Claims Reserve was not sufficiently funded. In addition, the Objection requests that the Court enter an order prohibiting any further distributions from the Disputed Claims Reserve, until such time as the 1144 Proceeding (defined below) is fully and finally resolved. Objection, at ¶17.[4]

10.    The Plan Committee understands that concurrent with its Motion for Leave to Reply, NOR will also be filing a similar motion with this Court.

### The 1144 Complaint

11.    On April 15, 2005, Magten and Law Debenture Trust Company of New York (collectively, the "Plaintiffs") filed a complaint pursuant to section 1144 of the Bankruptcy Code (the "1144 Complaint") commencing an adversary proceeding in this Court against NOR and certain of its officers and directors (the "1144 Proceeding").[5] Specifically, in the 1144 Complaint, Plaintiffs allege that NOR knowingly and willfully underfunded the Disputed Claims Reserve and that such actions constituted a fraud upon the Bankruptcy Court in connection with the procurement of the Confirmation Order.

---

[4]    Notably, Magten failed on two prior occasions to obtain a stay of the Confirmation Order pending its appeal of the Confirmation Order. Both the Bankruptcy Court, by order dated October 25, 2004 [Docket No. 2274], and the District Court, by order dated October 29, 2004 [Case No. 04-1389, Docket No. 16], denied Magten's request for a stay. Magten is now, once again, attempting to achieve that which this Court and the District Court have found to be unwarranted relief.

[5]    The 1144 Proceeding is currently pending under the caption Magten Asset Management Corporation and Law Debenture Trust Company of New York v. NorthWestern Corporation, Gary G. Drook, Michael J. Hanson, Brian B. Bird, Thomas J. Knapp and Roger P. Schrum, [Adv. Proc. No. 05-50866].

The Plaintiffs are seeking no less than, *inter alia*, (a) revocation of the Confirmation

Order and NOR's discharge or (b) an order that requires that NOR make a post-Effective

Date supplemental contribution of common stock of the Reorganized Debtor into the

Disputed Claims Reserve and reverse all releases granted in accordance with the Plan to

the "Exculpated Parties." By the 1144 Proceeding, the Plaintiffs are once again

attempting to undo NOR's successful reorganization.

12.     On June 9, 2005, NOR filed a Motion to Stay the 1144 Proceeding

Pending Resolution of Appeal of Confirmation Order or, In the Alternative, to Dismiss

Complaint (the "Motion to Stay") [05-50866 Adv. Docket No. 7].

13.     On June 21, 2005, the Plan Committee filed its Motion to Intervene (the

"Motion to Intervene") [05-50866 Adv. Docket No. 8] in the 1144 Proceeding on the

grounds that the outcome of the 1144 Proceeding would materially impact the interests of

the Plan Committee and as such, the Plan Committee, as a party in interest, has the right

to be heard on such matters. This Court granted the Motion to Intervene by order dated

July 1, 2005 [05-50866 Adv. Docket No. 11].

14.     On or about June 30, 2005, Magten filed its Response and Memorandum

of Law to NOR's Motion to Stay [05-50866 Adv. Docket No. 9].

## Request for Relief

15.     For the reasons more fully set forth in the Reply, the Plan Committee

states that ample cause exists to allow it to file a Reply to the Objection. Specifically,

Magten's request that this Court prohibit the allowance of any Disputed Claims and

distributions from the Disputed Claims Reserve effectively seeks a stay of the claims

reconciliation and settlement process for an indefinite amount of time. Such a wholesale

stay of the claims reconciliation process would directly and adversely impact the

recovery due to numerous unsecured creditors of NOR who, to date, have yet to receive any distribution under the Plan. In addition, Magten misconstrues this Court's authority to hear the 9019 Motions.

16.    Furthermore, the Plan Committee submits that no undue prejudice or delay would result from granting leave to file the Reply.

WHEREFORE, the Plan Committee respectfully requests that this Court enter an Order[6] granting the Plan Committee leave to file the Reply and such other and further relief as this Court deems just and appropriate.

Dated: July 8, 2005

THE BAYARD FIRM

By: _____
Neil B. Glassman (No. 2087)
Charlene Davis (No. 2336)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
Telephone No.: (302) 655-5000

-and-

PAUL, WEISS, RIFKIND, WHARTON &
    GARRISON LLP
Alan W. Kornberg
Margaret A. Phillips
Ephraim I. Diamond
1285 Avenue of the Americas
New York, New York 10019
Telephone No.: (212) 373-3000
Facsimile No.: (212) 757-3990

Attorneys for the Plan Committee

---

[6]    A proposed form of order is attached hereto as Exhibit B.

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

In re:                     )      Chapter 11

                               )

NORTHWESTERN CORPORATION,    )      Case No. 03-12872 (JLP)

                               )

          Reorganized Debtor.  )      **Objection deadline: June 30, 2005 at 4:00 p.m.**

                               )      **Hearing date: July 12, 2005 at 10:30 a.m. (ET)**

## PLAN COMMITTEE'S REPLY TO OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION TO NORTHWESTERN'S MOTIONS PURSUANT TO BANKRUPTCY RULE 9019 AUTHORIZING AND APPROVING STIPULATIONS OF <u>SETTLEMENT [Re: Docket Nos. 3117, 3119, 3120, 3121 and 3161]</u>

The Plan Committee (the "<u>Plan Committee</u>") appointed in the

above-captioned chapter 11 case of NorthWestern Corporation ("<u>NOR</u>" or the

"<u>Reorganized Debtor</u>") pursuant to Section 7.9 of NOR's Second Amended and Restated

Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "<u>Plan</u>"),[1] by and

through its undersigned counsel, hereby files this reply (the "<u>Reply</u>") to the Objection

(the "<u>Objection</u>") [Docket No. 3161], dated June 30, 2005, of Magten Asset Management

Corporation ("<u>Magten</u>") to certain of NOR's Motions Pursuant to Bankruptcy Rule 9019

Authorizing and Approving Stipulations of Settlement (the "<u>9019 Motions</u>") [Docket

Nos. 3117, 3119, 3120, 3121]. In support of its Reply, the Plan Committee respectfully

represents as follows:

---

[1]    Capitalized terms not otherwise defined herein shall have such meaning as ascribed to them in the Plan.

## Background

1.      On September 14, 2003, NOR filed with the Bankruptcy Court a voluntary petition for relief under chapter 11 of title 11 of the Unites States Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code").

2.      The Creditors' Committee was appointed by the Office of the United States Trustee on September 30, 2003.

3.      The Creditors' Committee was the body specifically charged with representing the interests and protecting the rights of NOR's unsecured creditors, including the holders of both its senior and subordinated unsecured public debt instruments having a total face amount in excess of $1.2 billion.

4.      After two full days of testimony and argument on August 25, 2004 and October 6, 2004, the Bankruptcy Court issued a decision confirming the Plan on October 8, 2004 (the "Confirmation Decision") [Docket No. 2276].  Subsequently, by order dated October 19, 2004, the Bankruptcy Court confirmed the Plan (the "Confirmation Order") [Docket No. 2238].

5.      The Plan became effective on November 1, 2004 (the "Effective Date"), and was substantially consummated by December 29, 2004, as evidenced by the Notice of Substantial Consummation of the Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed on December 29, 2004 [Docket No. 2519].

6.      Upon the Effective Date, as provided by section 7.9 of the Plan, the Plan Committee was formed.  See Plan at § 7.9.[2]

7.      The Plan Committee is charged with protecting the interests of NOR's unsecured creditors during the final stages of NOR's chapter 11 case.  The primary purpose of the Plan Committee is to oversee the "[C]laims reconciliation and settlement process."  Plan at § 7.9.  One of its key interests is to ensure that all unsecured creditors receive their rightful recoveries in a timely manner.  Magten's Objection seeks to prevent both the allowance of the Proposed Allowed Claims (as defined below) as well as any further distributions from the Disputed Claims Reserve; matters which both fall squarely within the Plan Committee's purview.  As such, the Plan Committee has a direct interest in being heard in this matter.

### The 9019 Motions

8.      On or about June 10, 2005, the Reorganized Debtor filed the 9019 Motions seeking this Court's authorization and approval of various settlement stipulations between NOR and claimants holding claims arising from various retirement and incentive payment programs established by NOR or its predecessors.  Each of the 9019 Motions provides that upon entry of an order approving such motion, the claimant would be deemed to have an Allowed Claim (collectively, the "Proposed Allowed Claims") in the amount set forth in the stipulations and would receive its pro rata share of New Common Stock from the Disputed Claims Reserve.  Objections to the 9019 Motions were due on June 30, 2005.

---

[2]    The Plan Committee consists of three members who are either former members of the Creditors' Committee or entities who hold unsecured Allowed Class 7 Claims.  Such members are Avenue Capital Group, Fortress Investment Group LLC, and Harbert Distressed Investment Master Fund Ltd.

9.     Prior to filing the 9019 Motions, the Debtor, as required under the terms of the Plan and the Plan Committee's Amended By-laws, sent the Plan Committee notices of the proposed settlements which are the subject of the 9019 Motions.  The Plan Committee had ten days from receipt of such notices to review the terms of the proposed settlements and, if necessary, object.  During this review period, the Plan Committee reviewed the proposed settlements and made inquiries into their reasonableness, including reviewing the relevant underlying pleadings and contacting NOR's counsel with questions.  Upon completing its review, the Plan Committee did not—and still does not—have any objection to the proposed settlements.

10.     On or about June 30, 2005, Magten filed its Objection by which it objects to the allowance of the Proposed Allowed Claims based on its belief that the Disputed Claims Reserve was insufficiently funded.  In addition, the Objection requests that the Court enter an order prohibiting any distributions from the Disputed Claims Reserve on account of any other Claims that may be resolved, until such time as the 1144 Proceeding (defined below) is fully and finally resolved.  Objection, at ¶17.[3]

### The 1144 Complaint

11.     On April 15, 2005, Magten and Law Debenture Trust Company of New York (collectively, the "Plaintiffs") filed a complaint pursuant to section 1144 of the Bankruptcy Code (the "1144 Complaint") commencing an adversary proceeding in this

---

[3]     Notably, Magten failed on two prior occasions to obtain a stay of the Confirmation Order pending its appeal of the Confirmation Order.  Both the Bankruptcy Court, by order dated October 25, 2004 [Docket No. 2274], and the District Court, by order dated October 29, 2004 [Case No. 04-1389, Docket No. 16], denied Magten's request for a stay.  Magten is now, once again, attempting to achieve that which this Court and the District Court have found to be unwarranted relief.

Court against NOR and certain of its officers and directors (the "1144 Proceeding").[4] Specifically, in the 1144 Complaint, Plaintiffs allege that NOR knowingly and willfully underfunded the Disputed Claims Reserve, and that such actions constituted a fraud upon the Bankruptcy Court in connection with the procurement of the Confirmation Order. The Plaintiffs are seeking no less than, *inter alia*, (a) revocation of the Confirmation Order and NOR's discharge or (b) an order that requires that NOR make a post-Effective Date supplemental contribution of common stock of the Reorganized Debtor into the Disputed Claims Reserve and reverse all releases granted in accordance with the Plan to the "Exculpated Parties". By the 1144 Proceeding, the Plaintiffs are once again attempting to undo NOR's successful reorganization.

12.    On June 9, 2005, NOR filed a Motion to Stay the 1144 Proceeding Pending Resolution of Appeal of Confirmation Order or, In the Alternative, to Dismiss Complaint (the "Motion to Stay") [05-50866 Adv. Docket No. 7]. In the Motion to Stay, NOR argues, in the alternative, that the 1144 Proceeding should be (i) stayed because, in light of the pending appeal of the Confirmation Order, this Court is divested of jurisdiction given the similar question facing both this Court and the District Court for the District of Delaware with respect to the Confirmation Order or (ii) dismissed as equitably moot given that, *inter alia*, the Plan has been substantially consummated.

13.    On June 21, 2005, the Plan Committee filed its Motion to Intervene (the "Motion to Intervene") [05-50866 Adv. Docket No. 8] in the 1144 Proceeding on the grounds that the outcome of the 1144 Proceeding would materially impact the interests of

---

[4]    The 1144 Proceeding is currently pending under the caption Magten Asset Management Corporation and Law Debenture Trust Company of New York v. NorthWestern Corporation, Gary G. Drook, Michael J. Hanson, Brian B. Bird, Thomas J. Knapp and Roger P. Schrum, [Adv. Proc. No. 05-50866].

the Plan Committee and as such, the Plan Committee, as a party in interest, has the right to be heard on such matters.  This Court granted the Motion to Intervene by order dated July 1, 2005 [05-50866 Adv. Docket No. 11].

14.    On or about June 30, 2005, Magten filed its Response and Memorandum of Law to NOR's Motion to Stay [05-50866 Adv. Docket No. 9].

**Argument**

15.    In its Objection, Magten raises two equally disingenuous arguments. *First*, Magten argues that the mere existence of the 1144 Complaint along with various parties' "admissions" *vis-à-vis* the inadequacy of the Disputed Claims Reserve should effectively halt the Reorganized Debtor's ongoing efforts to consensually resolve outstanding Disputed Claims.  Specifically, Magten asserts that the "only way to ensure that the rights of the holders of the remaining Disputed Claims are not further prejudiced [by NOR's alleged inadequate funding of the Disputed Claims Reserve is] to deny allowance of the Claims described in the 9019 Motion and to prohibit any further distributions on account of any other Claims from the Disputed Claims Reserve." Objection at ¶10.  However, what can be more prejudicial than denying the allowance of the Proposed Allowed Claims?

16.    Tellingly, in laying the foundation for its argument, Magten relies on a series of misquotes and half-truths to devise so called "admissions" that the Disputed Claims Reserve was insufficiently funded.[5]  Turning to counsels' arguments at a hearing

---

[5]    On February 22, 2005, Magten filed its Joint Motion to Approve Settlement Between NorthWestern Corporation, Magten Asset Management Corporation and Law Debenture Trust Company of New York [Docket No. 2832] seeking this Court's approval of a proposed settlement agreement between Magten, Law Debenture and NOR (the "QUIPs Settlement").  Upon review, the Plan Committee objected to the QUIPs Settlement because its terms expressly violated the Plan.  Accordingly, each of

held before this Court on March 8, 2005 (the "QUIPs Settlement Hearing") on the merits of the QUIPs Settlement, Magten attempts to show that all parties present recognized this deficiency. Id at ¶¶ 6-8. Nothing could be further from the truth.[6]

17.     The arguments put forth at the QUIPs Settlement Hearing did not address the sufficiency of the Disputed Claims Reserve *per se*. Rather, they addressed NOR's ability to invade the Disputed Claims Reserve to enhance Magten's recovery to the detriment of other Disputed Claims holders. Transcript of QUIPs Settlement Hearing [Docket No. 2936] at pp.44-45 (NOR's counsel noting that the settlement was specifically structured to avoid dipping into the Disputed Claims Reserve and that such a consideration was not "on the table" because "the Debtor still has approximately 200 claims" subject to payout from the Disputed Claims Reserve); pp. 55-56 (Plan Committee's counsel noting the due process issues confronting the Court if it were to approve an alternative, unnoticed form of settlement and permit Magten to invade the Disputed Claims Reserve without first notifying competing creditors).

18.     While this is not the appropriate forum in which to litigate the merits of the 1144 Proceeding, it should be obvious to this Court that Magten's unsupported

---

the Plan Committee, the Ad Hoc Committee of Class 7 Debtholders and NOR (retracting its earlier support) filed objections to the QUIPs Settlement [Docket Nos. 2866, 2867, 2868].

[6]     Indeed, Magten wholly misconstrues this Court's denial of the QUIPs Settlement as somehow lending support to its assertions that the Disputed Claims Reserve was underfunded. In denying the QUIPs Settlement, this Court correctly found that the terms of the QUIPs Settlement expressly violated the terms of the Plan and that Magten's alternative proposal to "dip" into the Disputed Claims Reserve was an untenable solution at this point in time. Decision on Order Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York [Docket No. 2911], at pp.5, 6. This Court's reference to a "financial dilemma" was mere dicta and not a finding that the Disputed Claims Reserve was insufficient to satisfy legitimate claims.

assertions are insufficient to halt NOR's claims resolution and settlement process—a process which, to date, has been successful in settling numerous contested claims.

19.     Magten's true motivation emerges from the next few lines in its Objection. Objection at ¶10. Betting that its ability to extort a settlement likely turns on the availability of excess remaining stock in the Disputed Claims Reserve, Magten is seeking to halt the expansion of the "pot of claims that share in the Disputed Claims Reserve." Id. This Court should not countenance Magten's request, so that it may, through its barrage of litigation, attempt to extort a settlement from NOR.

20.     The Plan provides a clear mechanism for resolving Disputed Claims. See Plan at §§ 7.4-7.6. Importantly, once resolved, the Plan requires the Debtor to make a distribution on account of such Allowed Claim "as soon as practical" following its allowance. Plan at § 7.6. Magten's request would prohibit compliance with the confirmed Plan indefinitely.[7]

21.     Magten's second argument is that this Court is divested of jurisdiction to consider the 9019 Motion because of the pendency of the appeal of the Confirmation Order. Relying on NOR's position in its Motion to Stay, Magten mischaracterizes NOR's argument that this Court is divested of jurisdiction to hear *"any matter"* relating to the Confirmation Order. Objection at ¶ 15. Such argument is a red herring.

22.     It is well settled that the filing of a notice of appeal is "an event of jurisdictional significance" divesting the lower court of those aspects of a case involved in the appeal. See Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982);

---

[7]     As noted above, Magten has already attempted to stay implementation of the Plan to no avail. This is Magten's third strike—it's out.

In re Transtexas Gas Corp., 303 F.3d 571, 579 (5th Cir. 2002); Sheet Metal Workers'
Intern. Ass'n Local 19 v. Herre Bros., Inc., 198 F.3d 391, 394 (3rd Cir. 1999) (voiding
two orders because district court lacked jurisdiction once appeal was filed). Thus, there
is no question that by filing the appeal of the Confirmation Order, Magten divested this
Court of jurisdiction over those aspects of the Confirmation Order subject to the appeal.

23.    In the 1144 Proceeding Magten directly challenges the very same order—
the Confirmation Order—being challenged in its appeal of the Confirmation Order. See
Motion to Stay at p. 21. As other courts have noted, lower courts do not have the power
to vacate an underlying order that is the subject of an appeal. See e.g., In re Marino, 234
B.R. 767, 769 (9th Cir. BAP 1999); In re McLean Industries, Inc., 76 B.R. 291, 294
(Bankr. S.D.N.Y. 1987); In re Emergency Beacon Corp., 58 B.R. 399, 402 (Bankr.
S.D.N.Y. 1986) (citing Bennett v. Gemmill (In re Combined Metals Reduction Co.), 557
F.2d 179, 201 (9th Cir.1977)); In re Winstead, 33 B.R. 408, 409 (M.D.N.C. 1983). To
allow otherwise would call into question the "integrity of the appellate process." In re
Marino, 234 B.R. at 769 (citation omitted). Thus by appealing the Confirmation Order,
Magten—itself—divested this Court of jurisdiction to consider the 1144 Proceeding.

24.    On the other hand, an appeal does not divest a lower court of jurisdiction
to continue to hear and adjudicate issues different from but perhaps collateral to the
issues on appeal. See In re Bd. Of Dir. of Hopewell Int'l Ins. Ltd., 258 B.R. 580, 583
(Bankr. S.D.N.Y. 2001). Indeed, bankruptcy courts consistently entertain issues
unrelated to a pending appeal. However, because bankruptcy cases raise "myriad issues"
which oftentimes blur the lines between what is related and connected to a particular
appeal, this principle is sometimes difficult to apply. As a result, a lower court will need

to analyze whether a subsequent question relates to a pending appeal and whether a subsequent ruling would impair the appellate court's jurisdiction. See, e.g., In re Commodore Corp., 86 B.R. 564, 567 (N.D. Ind. 1988) (finding that bankruptcy court's subsequent confirmation order modifying certain plan of reorganization definitions did not interfere with the appeal of an earlier confirmation order). And when the subsequent question relates to the issue on appeal the lower court must refrain from entertaining the question.

25.     In this instance, allowance of the Proposed Allowed Claims would not interfere with the appeal process and, accordingly, the 9019 Motions should be approved and the claims resolution allowed to continue unimpeded. The allowance—and even distributions on account—of the Proposed Allowed Claims has no bearing on the questions raised by Magten's appeal of the Confirmation Order.[8]

26.     Like other Class 7 and 9 creditors who received their distributions on the Effective Date, creditors holding the Proposed Allowed Claims are entitled to a recovery, subject only to the resolution of the amount of their Claims. In furtherance of its reorganization goals, NOR should be permitted to implement the Plan by resolving

---

[8]     Demonstrably, a brief perusal of the issues raised by Magten in its appeal of the Confirmation Order clearly demonstrates the lack of any relationship between the appeal and the current 9019 Motions. See Appellant Designation of Contents For Inclusion in Record On Appeal [Docket No. 2328] at pp.13-15. Most of the issues presented deal exclusively with the QUIPs holders' treatment under the Plan and the Bankruptcy Court's rulings related thereto. The rest of the issues Magten raised in its appeal challenge the validity of a specific claim, the propriety of the treatment of certain equity holders and the scope of NOR's estate. None of these issues speak to NOR's ability to implement its Plan and resolve outstanding Claims. In fact, the appeal does not preclude—and has not precluded—this Court from ruling on issues related to NOR's implementation of the Plan, such as ruling on claim objection issues and professional compensation applications. Thus, this Court's consideration of the 9019 Motions, a process clearly provided for in the Plan, does not implicate or subvert the pending appeal.

outstanding Disputed Claims; there is no basis to deny affected creditors their rightful

recoveries.

   WHEREFORE, for the foregoing reasons, the Plan Committee

respectfully requests that this Court deny the Objection and enter an Order approving the

9019 Motions and such other and further relief as this Court deems just and appropriate.

Dated: July 8, 2005       THE BAYARD FIRM

         By: _____
         Neil B. Glassman (No. 2087)
         Charlene Davis (No. 2336)
         Eric M. Sutty (No. 4007)
         222 Delaware Avenue, Suite 900
         P.O. Box 25130
         Wilmington, DE  19899
         Telephone No.:  (302) 655-5000

           -and-

         PAUL, WEISS, RIFKIND, WHARTON &
           GARRISON LLP
         Alan W. Kornberg
         Margaret A. Phillips
         Ephraim I. Diamond
         1285 Avenue of the Americas
         New York, New York  10019
         Telephone No.:  (212) 373-3000
         Facsimile No.:  (212) 757-3990

         Attorneys for the Plan Committee

# **EXHIBIT B**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Case No. 03-12872 (JLP) |
| | ) | |
| Reorganized Debtor. | ) | Re: Docket No. _____ |
| | ) | |

## ORDER GRANTING PLAN COMMITTEE'S MOTION FOR LEAVE TO FILE A REPLY TO OBJECTION OF MAGTEN ASSET MANAGEMENT CORPORATION TO NORTHWESTERN'S MOTIONS PURSUANT TO BANKRUPTCY RULE 9019 AUTHORIZING AND APPROVING STIPULATIONS OF SETTLEMENT

The Court, having considered the Plan Committee's Motion for Leave[1] pursuant

to Del. Bankr. L.R. 9006-1(d), for leave to reply to Magten's Objection and any

objections thereto; and having determined that good and sufficient notice has been given

under the circumstances; and that good cause exists for the granting of the relief

requested; and that the relief sought in the Motion for Leave is just and proper, IT IS

HEREBY ORDERED as follows:

1.    This Motion for Leave to file a reply is granted.

2.    The Plan Committee may file the Reply attached to the Motion for Leave

as Exhibit A.

Dated: July ___, 2005

_____
HONORABLE JOHN L. PETERSON
UNITED STATES BANKRUPTCY JUDGE

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to the in the Motion for Leave.

593955v1