## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                   )

NORTHWESTERN CORPORATION,     )    Chapter 11

          Reorganized Debtor.   )    Case No. 03-12872 (JLP)

---

MAGTEN ASSET MANAGEMENT
CORPORATION AND LAW DEBENTURE
TRUST COMPANY OF NEW YORK

          Appellants,         )    Civil Action No. 05-209-JJF

            v.                )

                                  )    Re: Docket No. 13

NORTHWESTERN CORPORATION, *et al.*

          Appellees.          )

## <u>BRIEF OF APPELLEE, THE PLAN COMMITTEE</u>

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Alan W. Kornberg
Margaret A. Phillips
Ephraim I. Diamond
1285 Avenue of the Americas
New York, New York
Telephone: (212) 373-3000

Dated:  August 23, 2005

**THE BAYARD FIRM**
Neil B. Glassman (No. 2087)
Charlene Davis (No. 2336)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
Telephone: (212) 655-5000

Attorneys for the Plan
Committee

## TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ............................................................................2

II.  SUMMARY OF ARGUMENT ..............................................................................4

III. STATEMENT OF ISSUES ON APPEAL ..............................................................5

IV.  STANDARD OF APPELLATE REVIEW ..............................................................5

V.   STATEMENT OF FACTS ...................................................................................6

VI.  ARGUMENT.....................................................................................................12

  A.   **The Bankruptcy Court Correctly Held that
       the "Alleged Settlement" Was Not Binding
       on the Parties Absent Its Approval** .......................................................12

  B.   **The Bankruptcy Court Correctly Held that
       the "Alleged Settlement" Could Not Have
       Been Implemented By Means of a Plan Amendment** ...........................18

VII. CONCLUSION...................................................................................................20

598805v1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527 (3d Cir. 1999)..............................................................13

In re Continental Airlines, 91 F.3d 553 (3d Cir. 1996), cert. denied sub nom. Bank of New York v. Continental Airlines, Inc., 519 U.S. 1057 (1997)........................................................................................................19

General Datacomm Indus. v. Arcara (In re General Datacomm Indus.), 407 F.3d 616 (3d Cir. 2005) ....................................................................13

Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203 (3d Cir. 2000)..........................................................................................5

In re Glickman, Berkovitz, Levinson, & Weiner, 204 B.R. 450 (E.D. Pa. 1997) ...........................................................................................................2

Hannaford Brothers, Co. v. Ames Department Stores, Inc. (In re Ames Department Stores, Inc.), 316 B.R. 772 (Bankr. S.D.N.Y. 2004) ...............13

In re Huckabee Auto Co., 33 B.R. 141 (Bankr. M.D. Ga. 1981) ......................16

In re Innovative Clinical Solutions, Ltd., 302 B.R. 136 (Bankr. D. Del. 2003) ...........................................................................................................19

In re Leslie Fay Cos., Inc., 168 B.R. 294 (Bankr. S.D.N.Y. 1994) ...................17

Manus Corp., v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116 (3d Cir. 1999) ...........................................................................5

Mellon Bank, N.A. v. Metro. Communications, Inc., 945 F.2d 635 (3d Cir. 1991)................................................................................................5

Myers v. Martin (In re Martin), 91 F.3d 389 (3d Cir. 1996) .......................16, 17

In re Phoenix Petroleum Co., 278 B.R. 385 (Bankr. E.D. Pa. 2001).................19

In re Pugh, 167 B.R. 251 (Bankr. M.D. Fla. 1994) ...........................................17

Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc., 227 B.R. 788 (E.D. Tex. 1998)..............................................................................2

In re Sparks, 190 B.R. 842 (Bankr. N.D. Ill. 1996) ............................................................ 16

Stonington Partners v. Lernout & Hauspie Speech Products N.V., 310
    F.3d 118 (3d Cir. 2002) ......................................................................................... 5

In re Tidewater Group, Inc., 8 B.R. 930 (Bankr. N.D. Ga. 1981) ..................................... 17

Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d. Cir.
    1981) ....................................................................................................................... 5

In re W.R.M.J. Johnson Fruit Farm, Inc., 107 B.R. 19 (Bankr. W.D.N.Y.
    1989) ..................................................................................................................... 14

In re Wood, 47 B.R. 774 (Bankr. W.D.Wis. 1985) ........................................................... 14

## UNREPORTED CASES

In re Armstrong World Indus., Inc., 2005 U.S. Dist. LEXIS 2810 (D. Del.
    February 23, 2005) ........................................................................................... 16, 17

Ad Hoc Comm. of CTA Bondholders v. Continental Airlines, Inc. (In re
    Continental Airlines), 1994 U.S. Dist. LEXIS 20531 (D. Del. June 8,
    1994) ............................................................................................................ 14, 15, 19

## FEDERAL STATUTES

11 U.S.C. §§ 101 et seq. .................................................................................................... 6

11 U.S.C. §1109(b) ............................................................................................................ 2

11 U.S.C. §1127(b) ..................................................................................................... 12, 19

Fed. R. Bankr. P. 9019 ..................................................................................................... 17

Appellee, the Plan Committee (the "Plan Committee") appointed in the chapter 11 case of NorthWestern Corporation ("NOR" or the "Reorganized Debtor") pursuant to Section 7.9 of NOR's Second and Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated August 18, 2004 (as modified, the "Plan")[1] [App. Des. No. 138],[2] files this brief in response to the Opening Brief of Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture," together with Magten, "Appellants"), dated July 27, 2005 ("Appellants' Brief") [Docket No. 13]. Appellants seek reversal of the Bankruptcy Court's order, dated March 10, 2005 (the "Order") [App. Des. No. 264], denying Appellants' joint motion, dated February 22, 2005 (the "9019 Motion") [App. Des. No. 247], for an order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving an alleged settlement between Appellants and NOR.

The Plan Committee[3] is charged with protecting the interests of NOR's unsecured creditors during the final stages of NOR's chapter 11 case. See Transcript of Hearing Held Before Bankruptcy Court on August 10, 2005[4] at 13. The primary purpose

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

[2]   References to items identified in Appellants' Joint Designation of Items to be Included in the Record on Appeal and Statement of the Issues to be Presented on Appeal of Magten Asset Management Corporation and Law Debenture Trust Company of New York, as Trustee [Docket No. 2] are referred to as "App. Des. No. ___."

[3]   The Plan Committee members are Avenue Capital Group, Fortress Investment Group LLC, and Harbert Distressed Investment Master Fund Ltd.

[4]   A copy of the Transcript of Hearing Held Before Bankruptcy Court on August 10, 2005 has been attached hereto as Exhibit "A" to the Appendix.

of the Plan Committee is to oversee the "[c]laims reconciliation and settlement process." Plan at § 7.9. One of its key interests is to protect the Plan's integrity by ensuring that all unsecured creditors receive their rightful recoveries in a timely manner. Accordingly, the Plan Committee has the express right to object to the proposed settlement of any claim exceeding $100,001, including the Alleged Settlement proposed by Appellants below. See Plan at § 7.9 and Notice of Amendment to Plan Committee By-Laws, at §1.10 [App. Des. No. 258, Exhibit "A"]. In this case, the Plan Committee timely objected to the Alleged Settlement (as more fully described below) because it violated the express terms of the Plan and deprived creditors of their rightful entitlements.

As a party in interest who participated fully in the proceedings below to consider the 9019 Motion, the Plan Committee's standing derives from section 1109(b) of the Bankruptcy Code, which provides that parties in interest "may raise and may appear and be heard on any issue in a case under this chapter."[5]

For the reasons set forth below, the Plan Committee, respectfully requests this Court to affirm the Bankruptcy Court's Order.

## I.    PRELIMINARY STATEMENT

Settlements are the hallmark of a successful chapter 11 case. However, a settlement, no matter how beneficial it may seem, cannot violate the Bankruptcy Code or

---

[5]    See In re Glickman, Berkovitz, Levinson, & Weiner, 204 B.R. 450, 453 (E.D. Pa. 1997) (granting creditor the right to file an appellee reply brief based on court's conclusion that such creditor was a party in interest who was authorized pursuant to section 1109(b) of the Bankruptcy Code to raise and appear and be heard on any issue in a case under chapter 11 including an appeal); Southern Pacific Transp. Co. v. Voluntary Purchasing Groups, Inc., 227 B.R. 788, 792-793 (E.D. Tex. 1998) (finding that section 1109(b) authorized the creditors committee, as a party in interest "an expansive right of participation in the resolution of issues arising in bankruptcy cases" and that nothing in section 1109(b) prohibited a party in interest's broad right to appear and be heard before an appellate court).

the terms of a confirmed plan of reorganization. Unfortunately, Appellants presented a fatally flawed settlement to the Bankruptcy Court which properly rejected it. Appellants now seek to overturn the Bankruptcy Court's Order as part of their continuing efforts to in effect impose on NOR and its creditors an alternative chapter 11 plan more to their liking. The Bankruptcy Code does not permit such a result. Rather, this Court should affirm the Order and the Decision (as defined below) in which the Bankruptcy Court concluded that the terms of the proposed settlement agreement improperly and expressly violated Section 4.8(b)(ii) of NOR's substantially consummated Plan.

Appellants ultimate goal is to "knock the props" out of NOR's confirmed and consummated Plan. Indeed, Appellants, particularly Magten, have unleashed a wasteful barrage of litigation aimed at extracting value for highly debatable claims at the expense of other creditors. These tactics include the filing of objections to almost every substantive motion filed by NOR, the commencement of numerous adversary proceedings and lawsuits against NOR, certain of its officers and directors, its counsel, as well as against other third parties (including a proceeding to revoke the Confirmation Order). While utterly unsuccessful on the merits, Appellants have succeeded in causing substantial harm to NOR's estate and its creditors because of the enormous expenditure of time and resources required to respond to the ever-expanding list of contested matters initiated by Appellants in this and other courts. This appeal is just one example of Appellants' tactics.

A reasonable settlement with Appellants—albeit one that conforms to the terms of the Plan—may indeed benefit all parties. However, such a prospect does not—and cannot cure—the infirmities of the Alleged Settlement. As the Bankruptcy Court

correctly concluded, the Alleged Settlement cannot be approved because it violates the express terms of the Plan. The Alleged Settlement directly contravenes Section 4.8(b)(ii) of the Plan by giving QUIPs holders electing Option 2 (as defined below) securities which belong to other creditors. Specifically, the Alleged Settlement would redirect to Magten and other Class 8 creditors shares of NOR's New Common Stock which are to be distributed to Class 7 and Class 9 creditors.

Furthermore, Appellants' assertion that the Bankruptcy Court should have provided them with the "economic equivalent" of the Alleged Settlement is nothing more then a red herring. Aside from demanding an unspecified settlement that was neither before the court nor noticed to creditors that potentially would be affected by such alternative relief, Appellants merely argue that the Alleged Settlement would give them something less than the $50 million claim to which they believe they are entitled and thus is reasonable. However, Appellants' claims against NOR's estate are nothing more than vigorously disputed, unliquidated litigation claims. This Court should not countenance Appellants' illegitimate and unabashed attempt to secure for itself a very rich recovery at the expense of NOR's legitimate creditors.

## II.     SUMMARY OF ARGUMENT

The terms of the Alleged Settlement expressly require Bankruptcy Court approval and the Bankruptcy Court correctly held that the Alleged Settlement was not binding absent such approval. Further, Appellants' argument that the Bankruptcy Court erred in not awarding Appellants the "economic equivalent" of the Alleged Settlement must fail because the Alleged Settlement and any "equivalent" relief would violate the Plan.

598805v1

### III.    STATEMENT OF ISSUES ON APPEAL

Appellants have presented two issues on appeal both of which mischaracterize the Bankruptcy Court's Memorandum Opinion Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York, dated March 10, 2005 (the "Decision") [App. Des. No. 263] in conjunction with the Order denying the 9019 Motion.  The correct issue for this Court to decide is whether the Bankruptcy Court abused its discretion in denying approval of a proposed settlement the terms of which violate NOR's substantially consummated Plan.

### IV.    STANDARD OF APPELLATE REVIEW

When acting as an appellate court, the district court applies a clearly erroneous standard to a bankruptcy court's findings of fact and a plenary standard to its legal conclusions.  See Gillman v. Continental Airlines (In re Continental Airlines), 203 F.3d 203, 208 (3d Cir. 2000).  For mixed questions of law and fact, the district court must accept a bankruptcy court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'"  Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d. Cir. 1981)).  A bankruptcy court abuses its discretion when its ruling is founded on an error of law or misapplication of law to the facts.  Stonington Partners v. Lernout & Hauspie Speech Prods. N.V., 310 F.3d 118, 122 (3d Cir. 2002) (citing Manus Corp., v. NRG Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999)).

## V.    STATEMENT OF FACTS[6]

On September 14, 2003, NOR filed with the Bankruptcy Court a voluntary

petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101

et seq. (the "Bankruptcy Code").

Following entry of an order authorizing it to do so on May 26, 2004 [App.

Des. No. 54], NOR solicited votes in support of its First Amended Plan of

Reorganization.  Such plan was subsequently amended with approval of the Bankruptcy

Court, and NOR re-solicited creditor acceptances in accordance with a Bankruptcy Court

order dated September 2, 2004 [App. Des. No. 142].  Appellants filed numerous

objections to the various versions of the Plan (collectively, the "Plan Objections") [App.

Des. Nos. 92, 93, 94, 95, 152 and 153].

The Bankruptcy Court issued its decision confirming the Plan on

October 8, 2004 (the "Confirmation Decision") [App. Des. No. 182], and expressly

overruled each and every one of the Plan Objections.  Subsequently, by order dated

October 19, 2004, the Bankruptcy Court confirmed the Plan (the "Confirmation Order")

[App. Des. No. 172].

Magten filed its Notice of Appeal of the Confirmation Order [App. Des.

No. 178] and sought a stay pending its appeal, first, from the Bankruptcy Court, and then,

from this Court.  Both the Bankruptcy Court, by Order dated October 25, 2004 [App.

Des. No. 181] and this Court, by Order dated October 29, 2004 [PC Des. No. 20][7], denied

---

[6]    The facts are drawn from documents filed in NOR's chapter 11 case.

[7]    References to items identified in the Plan Committee's Designation of Additional
        Items to be Included in the Record on Appeal and Reformulation of Statement of the
        Issues to be Presented on Appeal of Magten Asset Management Corporation and Law

Magten's request for stay relief, finding, among other things, that Magten did not have a likelihood of success on the merits of its appeal. The appeal of the Confirmation Order remains pending in this Court with parties having briefed both a motion to dismiss on the grounds of equitable mootness as well as the substantive appellate issues.

The Plan became effective on November 1, 2004 (the "Effective Date"), and was substantially consummated by December 29, 2004, as evidenced by the Notice of Substantial Consummation of the Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code filed on December 29, 2004 [App. Des. No. 213].

Upon the Effective Date, as provided by Section 7.9 of the Plan, the Plan Committee was formed. See Plan at § 7.9.

**Fraudulent Transfer Proceeding**

On April 16, 2004, Appellants brought an adversary proceeding against NOR (the "Fraudulent Transfer Proceeding")[8] to unwind the prepetition transfer of substantially all of the assets of NOR's subsidiary, Clark Fork and Blackfoot, LLC ("Clark Fork"), to NOR in a transaction commonly referred to as the "Going Flat Transaction." On May 14, 2004, NOR filed a motion to dismiss such proceeding (the "Motion to Dismiss") [App. Des. No. 273], based on, among other things, Appellants' lack of standing. Long after the events complained of, Magten acquired certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPs") issued in connection with a

---

Debenture Trust Company of New York, as Trustee [Docket No. 4], are referred to as "PC Des. No. ___."

[8]   Magten Asset Management Corporation & Law Debenture Trust Company of New York, Plaintiffs v. Northwestern Corporation, Defendant, [Adv. Proc. No. 04-53324-JLP].

certain Indenture for Unsecured Subordinated Debt Securities (the "Indenture"). Law Debenture is the current Indenture Trustee under such Indenture.

On August 20, 2004, the Bankruptcy Court issued a decision granting in large part NOR's Motion to Dismiss, based on, among other things, Appellants' lack of standing to bring a fraudulent conveyance claim because Appellants are creditors of NOR, and not of Clark Fork ("Fraudulent Transfer Decision") [App. Des. No. 281]. However, the Bankruptcy Court ruled that Appellants may have standing if they can establish that a certain release provided in connection with the Going Flat Transaction was obtained through actual fraud or as part of a fraudulent scheme. To date, Appellants have not amended their complaint to include allegations of "actual fraud" or a "fraudulent scheme" as contemplated by the Fraudulent Transfer Decision.

The Fraudulent Transfer Proceeding is currently stayed by order dated December 7, 2004 [App. Des. No. 301] of the Bankruptcy Court pending resolution of the appeal of the Confirmation Order.

**Treatment of QUIPs Under the Plan**

As the Bankruptcy Court found in its Confirmation Decision, the Plan's distribution scheme provides subordinated creditors, including Magten, with distributions to which they are not entitled at the expense of senior creditors. Simply put, the value of the NOR estate was such that Magten and other junior creditors are "out of the money." See Confirmation Decision at p. 26.

Nonetheless, Section 4.8(b)(ii) of the Plan provides, in pertinent part, that "on the Effective Date . . . each holder of an Unsecured Subordinated Note Claim represented by the QUIPs Notes and related Claims and Causes of Action who accepts or

rejects the Plan may opt to receive in full satisfaction, settlement, release, extinguishment
and discharge of such Claims either, *but not both*:

>   (1)    a Pro Rata Share of 505,591 shares of New Common Stock . . . ,
>           plus Warrants exercisable for an additional 2.3% of New Common
>           Stock (collectively, "Option 1"); or
>
>   (2)    a Pro Rata Share of recoveries, if any, upon resolution of the
>           [Fraudulent Transfer Proceeding] ("Option 2").

Section 4.8(b)(ii) of the Plan further provides that if a Class 8(b) claimant
elected Option 2, "then: (i) such holder's claims shall be treated as a Class 9 General
Unsecured Claim, subject to estimation and reserves for Disputed Claims as provided for
by Section 7.5 of the Plan, with Distributions to holders of Class 8(b) Unsecured
Subordinated Note Claims which choose Option 2 being made, if at all, only upon entry
of a Final Order resolving the QUIPS Litigation (unless otherwise agreed to by the
Debtor and Committee); *and (ii) any New Common Stock which otherwise would have
been distributable to such holder if such holder had chosen Option 1, shall be distributed,
pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been
distributable will be cancelled*." (emphasis added).  Thus, in accordance with the Plan,
the stock that would have been distributed to those Class 8(b) claimants who elected
Option 2 had they elected Option 1, is re-distributed to creditors holding Class 7 and
Class 9 Claims, and the related Warrants would be cancelled.

QUIPs holders who elected Option 2 do not receive immediately any
securities, rather they have a contingent, unliquidated litigation claim, to be satisfied, if at
all, from the Disputed Claims Reserve established pursuant to Section 7.5 of the Plan.
Conversely, holders of Class 7 and Class 9 claims were to receive immediately the shares
of New Common Stock that those electing Option 2 rejected.

**The Alleged Settlement**

In addition to the Fraudulent Transfer Proceeding and the appeal of the Confirmation Order, Appellants have initiated numerous other lawsuits and litigation against NOR, its officers and directors and NOR's professionals. Sometime during January 2005, Magten and NOR entered into settlement negotiations, culminating in the execution of a letter dated January 27, 2005 [App. Des. No. 265, Exhibit "C"], setting forth the terms of a proposed settlement (the "Alleged Settlement").

As the Bankruptcy Court found, the Alleged Settlement provided that in exchange for a cessation of Magten's numerous litigations, the QUIPs holders electing Option 2 were to receive, among other things, the full amount of stock set aside for them in the Disputed Claims Reserve *and* the stock and warrants which they would have received if they had elected Option 1—the same shares of stock that were already promised to the holders of Class 7 and Class 9 Claims under Section 4.8(b)(ii) of the Plan. As the Bankruptcy Court noted:

> "The settlement proposal calls for termination of all litigation and provides allocation and payment of the following by [NOR] to [Appellants]: (1) distribution of 382,732 shares of common stock at the reorganization plan value of $20.00 per share, plus 710,449 warrants at a value of $4.50 each; and (2) distribution of those shares of common stock of [sic] set aside in a disputed claim reserve pursuant to a stipulation and court order establishing such reserve [Docket No. 2298, November 1, 2004], having a Plan value of $17.1 million, plus $300,000 of common stock from the general reserve set aside for Class 9 claimants."

See Decision at p. 4.

NOR did not inform the Plan Committee of the Alleged Settlement prior to executing the letter describing it. See Transcript of Hearing Held Before Bankruptcy

Court on February 10, 2005 at p. 11 [App. Des. No. 245].  Rather, the Plan Committee

first learned of the Alleged Settlement via a press release issued by NOR on

February 9, 2005, and subsequently was given formal notice and a copy.  Upon learning

of the Alleged Settlement, the Plan Committee promptly reviewed its terms and, finding

them violative of the Plan, objected to the Alleged Settlement by letter to NOR dated

February 16, 2005 [App. Des. No. 253.].

Realizing the futility and inequity in pursuing a settlement that violated

the terms of its already consummated Plan, NOR informed Magten that it would no

longer seek Bankruptcy Court approval of the Alleged Settlement—a condition precedent

to its implementation. With the Bankruptcy Court's permission, Appellants (rather than

NOR) filed the 9019 Motion and requested the Bankruptcy Court to approve the Alleged

Settlement.

Recognizing that the relief they were seeking violated the Plan, Appellants

surreptitiously included in the proposed order, attached to their 9019 Motion as

Exhibit "1", language requesting that the Bankruptcy Court ignore the terms of the

Alleged Settlement and instead order NOR to provide Appellants with the "economic

equivalent" of the proposed settlement.  See Proposed Order, attached as Exhibit "1" to

the 9019 Motion at pp. 4-5.  It is to this "economic equivalent" to which Appellants refer

in this Appeal.  See Appellants' Brief at p. 21.

On March 2, 2005, the Plan Committee filed its Objection (the

"Settlement Objection") [App. Des. No. 253] to the 9019 Motion, objecting to the

Alleged Settlement because, among other things, (i) the settlement could not be

implemented absent Bankruptcy Court approval and (ii) the relief sought by Appellants

violated the express terms of the Plan which, having been substantially consummated,

could no longer be amended pursuant to section 1127(b) of the Bankruptcy Code.

The Bankruptcy Court held a hearing on the 9019 Motion on

March 8, 2005 (the "9019 Hearing"), and on March 10, 2005, entered the Decision. In

denying the Alleged Settlement, the Bankruptcy Court correctly found that its terms

expressly violated the terms of the Plan and that Appellants' alternative proposal to "dip"

into the Disputed Claims Reserve was an untenable solution. See Decision at p. 6;

Transcript of Hearing Held Before the Bankruptcy Court on August 10, 2005 at pp. 15-16

(clarifying the Bankruptcy Court's Decision).

## VI.    ARGUMENT

### A.    The Bankruptcy Court Correctly Held that the "Alleged Settlement" Was Not Binding on the Parties Absent Its Approval

Appellants incorrectly argue the Alleged Settlement was binding on the

parties without Bankruptcy Court approval. Indeed, such argument is belied by

Appellants' own 9019 Motion *expressly* requesting the Bankruptcy Court to issue an

order approving the Alleged Settlement.

Appellants now argue that the letter describing the Alleged Settlement was

self-executing. However, a review of the *entire* letter reveals that, as the Bankruptcy

Court correctly concluded, "the settlement documents plainly state that the agreement

was indeed subject to Bankruptcy Court approval." See Decision at p. 2. Specifically,

such letter required the parties to implement the Alleged Settlement by way of a motion

pursuant to Bankruptcy Rule 9019 *after* the parties had agreed to the form of a stipulation

and order:

> "As discussed, this Settlement will be implemented by way
> of a motion pursuant to Rule 9019 of the Federal Rules of
> Bankruptcy Procedure seeking approval of an agreed upon
> stipulation and order (the "Stipulation and Order")
> approving the Settlement, the terms of which are to be
> mutually acceptable to all parties."

See Letter dated January 27, 2005 at p. 3.

Courts will not enforce a contract if a condition precedent has not been

satisfied.  See General Datacomm Indus. v. Arcara (In re General Datacomm Indus.), 407

F.3d 616, 630 (3d Cir. 2005) ("a contracting party's failure to fulfill a condition

[precedent] excuses performance by the other party whose performance is so

conditioned") (internal quotations omitted); Calpine Corp. v. O'Brien Envtl. Energy, Inc.

(In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 531 (3d Cir. 1999) (holding that none

of movant's rights were impaired by bankruptcy court's decision to deny approval of

unenforceable contract because the "condition precedent to its enforcement was never

secured"); Hannaford Bros., Co. v. Ames Dept. Stores, Inc. (In re Ames Dep't Stores,

Inc.), 316 B.R. 772, 786 (Bankr. S.D.N.Y. 2004) ("Of course it is true that if the

[conditions precedent] of the [plaintiff's agreement] were not satisfied, the [agreement]

could not be enforced…."").  Thus, because the express condition precedents here had not

been satisfied, the Alleged Settlement was unenforceable.

Moreover, NOR has admitted, and the Bankruptcy Court found, that,

because the Alleged Settlement violated Section 4.8(b)(ii) of the Plan there was a mutual

mistake, and thus no agreement to enforce.  See Decision at p. 6.  At the 9019 Hearing,

NOR's counsel stated that:

> "there is a mutual mistake at the time the settlement was
> struck, as to whether those shares could be distributed.
> And the real problem, your Honor, is that to the extent that

> there were shares left over from 8(b) those [QUIPS
> holders] that didn't elect to take the distribution, those
> shares were to be distributed to Class 7 and 9 on a pro rata
> sharing.  And that is also an expressed provision in the
> plan."

See Transcript of 9019 Hearing at p. 46.

Appellants also argue that section 363 of the Bankruptcy Code is

inapplicable and that NOR as a "reorganized debtor" is free to conduct business and enter

into contracts outside the ordinary course of business without Bankruptcy Court approval.

See Appellant Brief at p.18.  However, as the Bankruptcy Court correctly held,

section 363 of the Bankruptcy Code was "beside the point" because "the settlement

documents plainly state that the [Alleged Settlement] was subject to Bankruptcy Court

approval."  See Decision at p. 2.  Moreover, the cases cited by Appellants make clear,

although a reorganized debtor may enter into agreements after its plan has been

confirmed and become effective, the reorganized debtor is prohibited from entering into

contracts that violate the terms of its confirmed plan.  See In re W.R.M.J. Johnson Fruit

Farm, Inc., 107 B.R. 19, 20 (Bankr. W.D.N.Y. 1989) (denying debtor's request to order

creditor to release lien on real property the debtor had agreed to sell once the lien was

removed because both debtor and creditors were bound by the confirmed plan which

explicitly preserved the creditor's lien); In re Wood, 47 B.R. 774, 777 (Bankr. W.D.Wis.

1985) (holding that once debtor's plan was confirmed, reorganized debtor had right to

transfer interest in certain cattle interests, subject to the provisions in the confirmed plan).

Further, in a case with strikingly similar facts to those presented by this

Appeal, the District Court for this district in Ad Hoc Comm. of CTA Bondholders v.

Continental Airlines, Inc.(In re Continental Airlines) denied a creditor's request for

approval of a settlement agreement because the implementation of the proposed

settlement would violate the express terms of the plan.  1994 U.S. Dist. LEXIS 20531, at *19 (D. Del. June 8, 1994).  The settlement proposed to settle litigation and other disputed claims of an ad hoc committee of bondholders by transferring stock of the reorganized debtor earmarked pursuant to the confirmed plan to pay a different class of creditors.  Id.  As part of its holding, the District Court found that "[i]n the absence of [p]lan modification, there is no legal basis for such action and, consequently, no authority for judicial approval of the proposed settlement agreement."  Id.

In any event, because the Alleged Settlement purported to settle Appellants' Disputed Claims against NOR for an amount in excess of $100,001, Section 7.9 of the Plan provided that the settlement had to be implemented in accordance with procedures set forth in the Plan Committee By-Laws which require Bankruptcy Court approval.  Specifically, Section 7.9 of the Plan provides that:

> "Notwithstanding any other provision in this Plan, after the Effective Date, both the Debtor and the Reorganized Debtor shall settle and compromise Claims according to the following procedure  . . .(ii) <u>if the resulting settlement provides for an Allowed Claim in an amount greater than $100,001, Reorganized Debtor may settle the Claim, in accordance with the provisions and procedures set forth in the Plan Committee By-Laws, which provides the Plan Committee with, among other things, the right to object such claims.</u>" (emphasis supplied).

See Plan at §7.9.

Section 1.10 of both the original and amended version of the Plan Committee By-Laws provide that Bankruptcy Court approval is required for any settlement in excess of $100,001.  See Plan Committee By-Laws at § 1.10 [App. Des. No. 258, Exhibit "B"].  Further, the Bankruptcy Court explicitly retained jurisdiction to hear

and determine objections to the allowance of any Claims pursuant to Section 13.1(a) of the Plan and the Confirmation Order.

Furthermore, NOR's earlier statements in support of the Alleged Settlement did not bind NOR to continue to support the Alleged Settlement once NOR realized that it was defective. Pending approval by the bankruptcy court, absent bad faith, a debtor may withdraw its support for a proposed settlement. See Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996) (Court of Appeals rejected proposition that a trustee is required to champion a motion to approve a stipulation that is no longer in the best interests of the estate). Also, instructive is this Court's recent ruling in In re Armstrong World Indus., Inc., 2005 U.S.Dist. LEXIS 2810, at *29 n.24 (D. Del. February 23, 2005). In Armstrong, the creditors committee reversed course and objected to the debtor's proposed plan of reorganization on the basis that the plan's distribution scheme violated the "fair and equitable" requirement of section 1129(b)(2)(B)(iii) of the Bankruptcy Code even though the committee had originally endorsed the plan. The bankruptcy court approved the plan finding that the committee had waived its right to object by supporting a consensual plan. The District Court reversed finding that the committee did not waive its right to object solely because it participated in negotiations to create a "workable reorganization plan." Id. The District Court found that in the absence of bad faith, a party to a proposed settlement could "walk away from the table for a good or bad reason or no reason at all" and that to hold otherwise would limit the flexibility of counsel in representing a client during the chapter 11 process. In re Armstrong World Indus., Inc., 2005 U.S.Dist. LEXIS 2810, at *29 citing In re Huckabee Auto Co., 33 B.R. 141, 149 (Bankr. M.D. Ga. 1981). See also In re Sparks, 190 B.R. 842, 843 (Bankr. N.D.

Ill. 1996); <u>In re Pugh</u>, 167 B.R. 251 (Bankr. M.D. Fla. 1994); <u>In re Leslie Fay Cos., Inc.</u> 168 B.R. 294 (Bankr. S.D.N.Y. 1994).

As in <u>Martin</u> and <u>Armstrong</u>, pending Bankruptcy Court approval, NOR had the ability to "walk away" from the Alleged Settlement to fulfill its fiduciary obligations to *all* creditors. <u>See</u> <u>In re Martin</u>, 91 F.3d at 394 ("[t]he trustee may . . . opt not to argue in favor of the stipulation . . . if she no longer believes the settlement to be in the best interest of the estate."). NOR's right to repudiate the Alleged Settlement, especially where Bankruptcy Court approval was a condition precedent and the Alleged Settlement violated the Plan, was unaffected by NOR's earlier position with respect to the Alleged Settlement.

Lastly, Appellants contend that because Bankruptcy Rule 9019 is simply a "procedural mechanism" for implementing settlements that cannot alter substantive rights, the Bankruptcy Court was somehow mandated to "rubber stamp" the Alleged Settlement. Appellants are wrong. Courts have squarely rejected the notion that a bankruptcy court's role in approving a settlement or compromise pursuant to Bankruptcy Rule 9019 is "merely a perfunctory ministerial act" noting that "the attorney for the debtor is not competent to enter into an agreement which binds the estate *without court approval*." <u>In re Tidewater Group, Inc.</u>, 8 B.R. 930, 932 (Bankr. N.D. Ga. 1981) (emphasis in original).

Thus, it is inescapable that the Bankruptcy Court correctly concluded that the Alleged Settlement was not binding on the parties absent its approval pursuant to the applicable standards of Bankruptcy Rule 9019.

**B.    The Bankruptcy Court Correctly Held that
the "Alleged Settlement" Could Not Have Been
Implemented By Means of a Plan Amendment**

Appellants implicitly concede that the Alleged Settlement violated the

express terms of NOR's substantially consummated Plan by arguing, without citing any

authority or precedent, that the Bankruptcy Court should have simply awarded Appellants

the "economic equivalent" of the Alleged Settlement.  See Appellant Brief at p. 21.

However, this argument is flawed because it would have required the Bankruptcy Court

to approve in effect a new plan without satisfying the notice, disclosure, solicitation and

confirmation requirements provided by the Bankruptcy Code.

Here, the Bankruptcy Court found that:

"the crux of the real objection comes from the manner in
which Magten's shares are being distributed, its impact on
Class 7 and Class 9 creditors and the violation of section
4.8(b)(ii) of the Plan.

The Plan provides that to the extent shares allocated to
Class 8(b) are not distributed to Option 2 holders, those
shares are to be distributed to Class 7 and 9 creditors.  *See*
Debtor's Second Amended and Restated Plan or
Reorganization, Section 4.8 (b)(ii).  Thus, Magten and the
other non-accepting QUIPS holders who took Option 2
received only a Class 9 claim, not a distribution from the
505,591 shares allocated to Option 1 holders.  To grant, as
the [Alleged Settlement] does, both types of recovery
requires the consent of the Class 7 and Class 9 creditors,
either by way of amendment to the Plan or absence of any
objections from those classes."

See Decision at p. 5.  Accordingly, because the Alleged Settlement violated the terms of

the Plan, the Bankruptcy Court correctly concluded that the parties would have been

required to amend the Plan to implement the Alleged Settlement.  However, as the

Bankruptcy Court also correctly held "a plan amendment is not legally available because

the Plan has been substantially consummated and objection to the distribution has been
presented vigorously by Class 7." <u>See</u> <u>Decision</u> at p. 5.

Section 1127(b) of the Bankruptcy Code prohibits amendment of a plan
after such plan has been substantially consummated. It provides, in pertinent part: "the
proponent of a plan or the reorganized debtor may modify such plan at any time after
confirmation of such plan and <u>before substantial consummation of such plan</u>…"
(emphasis added). 11 U.S.C. §1127(b). The case law is clear that once a plan has been
substantially consummated, a court cannot approve its amendment. <u>See</u>, <u>e.g.</u>, <u>In re
Continental Airlines</u>, 91 F.3d 553, 570 (3d Cir. 1996), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Bank of
New York</u> v. <u>Continental Airlines, Inc.</u>, 519 U.S. 1057 (1997) (section 1127(b)
dramatically curtails the power of a bankruptcy court to modify a plan of reorganization
after its confirmation and substantial consummation); <u>Ad Hoc Comm. of CTA
Bondholders</u> v. <u>Continental Airlines, Inc.</u> (<u>In re Continental Airlines</u>), 1994 U.S. Dist.
LEXIS 20531, at *15 (D. Del. June 8, 1994) (section 1127(b) provides "substantive and
procedural limitations on plan modifications" including the requirement that all
modifications be made prior to substantial consummation); <u>In re Innovative Clinical
Solutions, Ltd.</u>, 302 B.R. 136, 144 (Bankr. D. Del. 2003) (section 1127(b) provides the
sole means for modifying a confirmed plan, and a plan that has been substantially
consummated can no longer be modified); <u>In re Phoenix Petroleum Co.</u>, 278 B.R. 385,
398 (Bankr. E.D. Pa. 2001) (section 1127(b) precludes the modification of a confirmed
chapter 11 plan once substantial consummation of the plan has occurred). Accordingly,
because NOR's Plan has been substantially consummated—a fact which Appellants do
not and cannot refute—the Bankruptcy Court correctly concluded that the Plan can no

longer be amended to accommodate the terms of the Alleged Settlement as proposed by the 9019 Motion.

Appellants' arguments that NOR is now financially strong enough to comply with the "economic terms" have no bearing on whether the terms of the Alleged Settlement should have been approved in this case. NOR's financial wherewithal is not a relevant factor under these circumstances where that demanded by Appellants violates the Plan and runs roughshod over other creditors' entitlements.

Therefore, assuming *arguendo* that the Alleged Settlement was an enforceable agreement, any assertion by Appellants that the Bankruptcy Court should have approved a settlement with alternate terms has no legal basis and should be disregarded. Moreover, an alternative settlement was not properly before the Bankruptcy Court or disclosed to affected parties in interest, particularly claimants of NOR with interests in the Disputed Claims Reserve which Appellants seek to dismember for their benefit. Bankruptcy Court approval of any such alternative form of relief would have been a violation of the due process rights of such parties.

## VII.    CONCLUSION

Appellants are unable to overcome the facts that the Alleged Settlement required Bankruptcy Court approval as an express condition precedent and that it was fatally flawed from the start. Appellants' unprecedented proposal that the Bankruptcy Court simply award them the "economic equivalent" of the Alleged Settlement cannot save the day for such alternatives would similarly violate the Plan and the rights of other creditors. Thus, as the Bankruptcy Court correctly concluded, the Alleged Settlement was unenforceable and its defects incurable because the Plan has been substantially consummated.

598805v1

WHEREFORE, for the foregoing reasons, the Plan Committee respectfully requests that this Court affirm the Bankruptcy Court's Order and Decision in all respects and grant such other relief as is just and proper.

Dated: August 23, 2005

THE BAYARD FIRM

By: _____
Neil Glassman (No. 2087)
Charlene D. Davis (No. 2336)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, Delaware 19899
(302) 650-5000

-and-

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
Alan W. Kornberg
Margaret A. Phillips
Ephraim I. Diamond
1285 Avenue of the Americas
New York, New York 10019
(212) 373-3000

Attorneys for the Plan Committee

## CERTIFICATE OF SERVICE

I, Eric M. Sutty, do hereby certify that on this 23rd day of August, 2005, I caused a true and correct copy of the attached **Brief of Appellee, The Plan Committee** to be served upon the following parties in the manner indicated.

**Via Hand Delivery**

Scott D. Cousins, Esquire
William E. Chipman, Esquire
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

William J. Burnett, Esquire
Mark J. Packel, Esquire
Elio Batista, Jr., Esquire
Blank Rome LLP
1201 Market Street, Suite 800
Wilmington, DE 19801

Kathleen M. Miller, Esquire
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue, 7th Fl.
P.O. Box 410
Wilmington, DE 19899

Mark Kenney, Esquire
Office of the United States Trustee
844 King Street, Room 2313
Wilmington, DE 19801

David L. Finger, Esquire
Finger & Slanina, P.A.
One Commerce Center
1201 Orange Street, Ste. 725
Wilmington, DE 19801-1155

Collin J. Seitz, Jr., Esquire
Connolly Bove Lodge & Hutz LLP
1007 North Orange Street
Wilmington, DE 19899

Adam G. Landis
Landis Rath & Cobb LLP
919 Market Street, Ste. 600
P.O. Box 2087
Wilmington, DE 19899

**Via U.S. First Class Mail**

Amanda Darwin, Esquire
John V. Snellings, Esquire
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110

Jess H. Austin, III, Esquire
Karol K. Denniston, Esquire
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E. Suite 2400
Atlanta, GA 30308

Bonnie Steingart, Esquire
Gary L. Kaplan, Esquire
Fried, Frank, Harris, Shriver & Jacobson
One New York Plaza
New York, NY 10064

Alan W. Kornberg, Esquire
Margaret A. Phillips, Esquire
Ephraim I. Diamond, Esquire
Talia Gil, Esquire
Paul, Weiss, Rifkind, Wharton &
 Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

Thomas J. Knapp, VP & General
Counsel
NorthWestern Corporation
125 S. Dakota Avenue
Sioux Falls, SD  57104-6403

Eric M. Sutty (No. 4007)