IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>Reorganized Debtor. | Chapter 11<br><br>Bankruptcy Case No. 03-12872 (JLP) |
| MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Appellants,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Appellee. | CA 05-0209 (JJF) |

**DEBTOR'S REPLY TO APPELLANTS' OPENING BRIEF**

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Jesse H. Austin, III
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

- and -

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**
Kristine M. Shryock
75 East 55th Street
New York, NY 10022
Telephone (212) 318-6000

**GREENBERG TRAURIG, LLP**

Victoria Watson Counihan (No. 3488)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern Corporation*

Dated: August 23, 2005
Wilmington, Delaware

NY55/477935.3

DEBTOR'S REPLY MEMORANDUM OF LAW

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ............................................................................................. 1
II. SUMMARY OF ARGUMENT .............................................................................................. 2
III. STANDARD OF APPELLATE REVIEW ............................................................................. 2
IV. STATEMENT OF FACTS ..................................................................................................... 3
    A. The Magten Claim and Magten Adversary Proceeding ............................................ 3
    B. The NorthWestern Adversary Proceeding ................................................................. 5
    C. The Settlement Proposal ............................................................................................ 6
    D. Objections to the Proposed Settlement ..................................................................... 8
    E. The Debtor's Withdrawal From Pursuing the Proposed Settlement .......................... 9
    F. Appellants 9019 Motion .......................................................................................... 12
V. ARGUMENT AND CITATION OF LEGAL AUTHORITY ............................................. 14
    A. The Settlement Letter was Subject to Bankruptcy Court Approval ....................... 14
    B. The Terms of the Underlying Settlement Required Modification of Confirmed Plan .......................................................................................................................... 17
VI. CONCLUSION ..................................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

Abdallah v. Abdallah,
    359 F.2d 170 (3d Cir. 1966) ..................................................................................20

Am. Flint Glass Workers Union v. Anchor Resolution Corp.,
    197 F.3d 76, 80 (3d Cir.1999)..................................................................................2

In re AWECO, Inc.,
    725 F.2d 293 (5th Cir. 1984) ....................................................................18, 19, 20

In re Central R.R. Co. of New Jersey,
    579 F.2d 804 (3d Cir. 1978)...................................................................................20

In re Cincinnati Microwave, Inc.,
    210 B.R. 130 (Bankr. S.D. Ohio 1997) ..................................................................16

In re Continental Airlines,
    91 F.3d 553 (3rd Cir. 1996) ....................................................................................18

In re H&L Developers, Inc.,
    178 B.R. 77 (Bankr. E.D. Pa. 1994) ............................................................12, 18, 19

In re Hechinger,
    298 F.3d 219, 224 (3d Cir.2002)...............................................................................3

In re Hughes Steel Erection Co.,
    225 F. Supp. 66 (E.D. Pa. 1964) .............................................................................20

Hughes v. United States,
    342 U.S., 353 (1952)...............................................................................................14

Mellon Bank, N.A. v. Metro Comm., Inc.,
    945 F.2d 635, 641 (3d Cir.1991), *cert. denied*, 503 U.S. 937 (1992).....................3

Myers v. Martin (In re Martin),
    91 F.3d 389 (3d Cir. 1996).................................................................................15, 16

In re Northampton Corp.,
    39 B.R. 955 (Bankr. E.D. P.A. 1984) ...........................................................12, 18, 19

PWS Holding Corp.,
    28 F.3d 224, 236 (3d Cir. 2000)..............................................................................18

# TABLE OF AUTHORITIES
(Continued)

SEC v. American Trailer Rentals Co.,
       379 U.S. 594 (1965) ....................................................................................................20

In re Sparks,
       190 B.R. 842 (Bankr. N.D. Ill. 1996) ..........................................................................16

In re Telegroup,
       281 F.3d 133, 136 (3d Cir.2002).....................................................................................3

In re Tillotson,
       266 B.R. 565 (Bankr. W.D.N.Y 2001) ..............................................................12, 18, 19

United States v. Armour & Co.,
       402 U.S. 673 (1971) ....................................................................................................14

## STATUTES

11 U.S.C. §1127(b)..............................................................................................................15, 18, 19

28 U.S.C. §158(a) ...........................................................................................................................2

The appellee, NorthWestern Corporation ("NorthWestern", the "Debtor" or the "Reorganized Debtor"), pursuant to the Stipulation and Order Establishing Briefing Schedule dated June 7, 2005, hereby files its reply and memorandum of law (the "Reply") to Magten Asset Management Corporation's ("Magten") and Law Debenture Trust Company of New York's ("Law Debenture" and together with Magten, the "Appellants") opening brief (the "Opening Brief").

I.   PRELIMINARY STATEMENT

Appellants are presenting this Court with two contradictory positions. On the one hand the Appellants assert that this Court should find that the underlying Settlement Letter (as defined below) is binding upon NorthWestern, its estate and all creditors. On the other hand, Appellants assert that the Settlement Letter, with certain modifications, could be implemented without an amendment to NorthWestern's confirmed and consummated Second Amended and Restated Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated August 18, 2005 (as modified, the "Plan").[1] Appellants can not have it both ways. Either the Settlement Letter was a binding contract enforceable by its terms against the estate – which NorthWestern and creditors strongly contest – or the Settlement Letter was merely an agreement in principal subject to conditions precedent for it to be effective. In either case, Appellants are not entitled to the relief sought through this appeal.

The Appellants can not overcome the fact that the signed Letter Agreement specifically provided for Bankruptcy Court approval and definitive documents before its effectiveness. Appellants spend considerable time arguing that NorthWestern should be

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

bound by the terms of the Settlement Letter. However, as discussed herein, because of the objections of certain creditors, the terms of the Settlement Letter could not be implemented as drafted. Although the Reorganized Debtor has the ability to enter into contracts in the ordinary course of business, it may only do so if the new contracts do not conflict with the terms of the confirmed Plan. As discussed herein, the terms of the Settlement Letter could not be implemented over the objections of NorthWestern's unsecured creditors based upon the fact that it would result in an impermissible modification of the Plan after the Plan had become effective and after it had been substantially consummated.

## II.  SUMMARY OF ARGUMENT

The two issues raised upon appeal are very narrow – whether the Settlement Letter was subject to court approval and whether implementation of the Settlement Letter required an amendment to the Plan. Even if this Court determines that the Settlement Letter constituted a contract outside of creditor review and Bankruptcy Court approval, implementation and enforcement of the Settlement Letter fails because it violates the terms of the confirmed Plan without the requisite creditor consent and is not in the best interest of the creditors and NorthWestern's estate absent such consent.

## III.  STANDARD OF APPELLATE REVIEW

Pursuant to 28 U.S.C. § 158(a), this court has jurisdiction to hear an appeal from the Bankruptcy Court. The appropriate standard of review for this Court is a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to the Bankruptcy Court's legal conclusions. See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir.1999). This Court is required to

conduct a de novo review of the Bankruptcy Court decision. In re Hechinger, 298 F.3d 219, 224 (3d Cir.2002); In re Telegroup, 281 F.3d 133, 136 (3d Cir.2002). To the extent there are mixed questions of law and fact, this Court is required to accept findings of "historical or narrative facts unless clearly erroneous, but exercise plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to historical facts". See Mellon Bank, N.A. v. Metro Comm., Inc., 945 F.2d 635, 641 (3d Cir.1991), *cert. denied*, 503 U.S. 937 (1992).

IV.  **STATEMENT OF FACTS**

   A.  **The Magten Claim and Magten Adversary Proceeding**

   Magten filed a proof of claim which was designated claim number 842 by the Debtor's claims agent (the "Magten Claim"). The Magten Claim asserts unliquidated claims against the Debtor's estate for (i) the face amount of the approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") that were held by Magten as of the Petition Date and (ii) damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC (a wholly owned subsidiary of the Debtor) to NorthWestern on November 15, 2002 (the "QUIPS Litigation Claim"). Law Debenture, in its capacity as Indenture Trustee for the QUIPS, filed similar claims against NorthWestern's bankruptcy estate.

   On or about April 16, 2004, after this Court granted Magten and Law Debenture relief from the automatic stay to commence an adversary proceeding, Magten and Law Debenture filed their Complaint (the "Magten Complaint") [Adv. Pro. Dkt. No. 1] to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) to NorthWestern Corporation, thereby commencing the adversary

proceeding styled as <u>Magten Asset Management Corporation & Law Debenture Trust Company of New York v. NorthWestern Corporation</u> [Adv. Pro. No. 04-53324-JLP] (the "Magten Adversary Proceeding"). The Magten Complaint seeks to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) ("Clark Fork") pursuant to what has been referred to as the "going flat" transaction, and asserted causes of action for (i) intentional fraudulent transfer pursuant to Montana Code Annotated ("MCA") § 31-2-333, (ii) constructive fraudulent transfer pursuant to MCA § 31-2-334, and (iii) unjust enrichment.

On or about May 14, 2004, the Debtor filed its motion to dismiss the Magten Adversary Proceeding (the "Magten Adversary Motion to Dismiss") [Adv. Pro. Dkt. No. 5]. Following the completion of briefing, on August 20, 2004, the Court granted in part and denied in part the Magten Adversary Motion to Dismiss and held that Magten and Law Debenture lack standing as creditors of Clark Fork to pursue a fraudulent conveyance action against the Debtor, unless they can prove under applicable law that the release given to the Debtor was obtained through actual fraud or as part of a fraudulent scheme [Adv. Pro. Dkt. No. 25].[2]

On or about November 17, 2004, Magten filed a motion to withdraw the reference with respect to the Magten Adversary Proceeding (the "Withdrawal Motion") in the United States District Court for the District of Delaware (the "District Court"). The Withdrawal Motion is currently pending in the District Court and the Bankruptcy

---

[2] On or about October 4, 2004, Magten and Law Debenture filed their First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a/ NorthWestern Energy, LLC) (the "Amended Magten Complaint") [Adv. Pro. Dkt. No. 17] in response to the Bankruptcy Court's ruling on the Magten Adversary Motion to Dismiss and restated all prior allegations but adding an alleged claim for NorthWestern's failure to comply with the Public Utility Holding Company Act of 1935.

Court has stayed action on the Magten Adversary Proceeding pending a decision on the Withdrawal Motion.

On or about November 19, 2004, NorthWestern filed its Answer, Affirmative Defenses and Counterclaims to the Amended Magten Complaint (the "NorthWestern Answer") [Adv. Pro. Dkt. No. 41]. The Magten Adversary Proceeding is currently stayed by order dated December 7, 2004 [app. des. no. 301] of the Bankruptcy Court pending resolution of the appeal of the Confirmation Order.

### B. The NorthWestern Adversary Proceeding

On or about August 20, 2004, the Debtor filed the NorthWestern Adversary Proceeding, seeking to subordinate Magten's Claim, actual damages and equitable relief, and objecting to the Magten Claim, based on Magten's alleged improper trading of the QUIPS while serving as a member of the Committee and while in possession of the Debtor's material, non-public information.

In reviewing documents obtained through the discovery process in the NorthWestern Adversary Proceeding from the Committee's advisors, Committee members and Magten, the Debtor determined that while it believed it could prove that the Debtor provided material non-public information to the Committee's advisors, the discovery produced by the Committee did not clearly establish what material, non-public, information was actually conveyed to the members of the Committee or when such information was provided. Faced with the lack of such documentation by the Committee, the Debtor determined it no longer made economic sense for the Debtor to continue the NorthWestern Adversary Proceeding. Accordingly, NorthWestern and Magten filed a

joint motion to dismiss the NorthWestern Adversary Proceeding with prejudice and the joint motion was granted on March 9, 2005 [Adv. Pro. Dkt. No. 94].

### C. The Settlement Proposal

During the discovery process in the NorthWestern Adversary Proceeding, Magten, Law Debenture and the Debtor participated in settlement discussions to resolve the Magten and Law Debenture claims. In early February 2005, the Parties executed the Settlement Letter (which was dated as of January 27, 2005) setting forth the proposed settlement terms to which the Parties agreed. The Settlement Letter was expressly identified as a settlement communication protected by Federal Rule of Evidence 408. The Settlement Letter was also expressly conditioned upon: (1) the Parties' preparation and execution of a mutually acceptable stipulation and order to be presented to the Bankruptcy Court; and (2) obtaining an order from the Bankruptcy Court, in compliance with Bankruptcy Rule 9019, approving the proposed settlement.[3]

The Settlement Letter specifically states:

> As discussed, this Settlement will be implemented by way of a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of an agreed upon stipulation and order (the "Stipulation and Order") approving the Settlement, the terms of which are to be mutually acceptable to all parties.[4]

The Settlement Letter also provides:

> In reaching agreement on the Settlement as outlined herein, all litigation by and among the parties currently scheduled, or which may be scheduled, for hearing will be continued by mutual agreement until

---

[3] See Settlement Letter.
[4] Id.

the Bankruptcy Court can hold a hearing to consider approval of the Settlement. Assuming the Settlement is thereafter approved, such litigation will be dismissed or withdrawn as provided for pursuant to the terms of the Settlement.[5]

At an omnibus hearing in NorthWestern's bankruptcy case held on February 10, 2005, the Debtor's counsel informed the Court of the settlement negotiations with Magten and Law Debenture, and the terms of the agreement in principle reached among the parties with respect to the Settlement Letter. The Transcript of the Status Conference specifically provides in pertinent part:

> The parties reached an agreement in principal [sic] concerning the settlement of the claims of Law Debenture as the Indenture Trustee, Magten as the holder of the QUIPS securities, and the non-accepting holders of the QUIPS securities.
>
> Transcript, page 6, lines 18-21.
>
> In the process of litigating, as I noted, Your Honor, we received a settlement proposal from Magten on behalf of itself and all of the non-accepting QUIPS holders which[,] as a result[,] we entered into negotiations as well as while we were preparing for trial that ultimately resulted in an agreement in principal [sic] which has been evidenced now by a settlement letter. . .
>
> Transcript, page 7, lines 18-24.
>
> We anticipate that we then will file a motion under Rule 9019 to seek approval of this settlement.
>
> Transcript, page 11, lines 14-16.

The Debtor's counsel further advised the Court that certain objections to the proposed settlement were anticipated from certain Class 7 Claimants and certain holders of the Reorganized NorthWestern's common stock. The Transcript of the Status Conference specifically provides in pertinent part:

---

[5] Id.

> . . .[W]e are well aware that certain Class 7 holders or certain holders of the company's common stock they [sic] received that stock as a result of holding Class 7 claims are, to say the least, not happy with this settlement, and we anticipate we may receive some objections to the settlement.

Transcript, page 12, lines 13-17.

### D. Objections to the Proposed Settlement

As discussed above, both Harbert Distressed Investment Master Fund, Ltd. ("Harbert") as a Class 7 holder of claims and the Plan Committee, on behalf of Class 7 and Class 9, formally communicated to NorthWestern their objections to the proposed settlement in writing.

In Harbert's letter to the Debtor, Harbert asserted that "[t]he proposed settlement appears to be contrary to the interests of NorthWestern and its shareholders," and that "the proposed settlement violates the express terms of the Company's confirmed Plan of Reorganization."[6] More specifically, Harbert objected to the proposed settlement and asserted that "[t]he proposed settlement would contravene NorthWestern's express obligations under Section 4.8(b)(ii) of the Plan - - specifically, its obligations (i) to distribute to members of Class 7 and Class 9 the new common stock that would have been distributed to holders electing Option 2 had they chosen Option 1, and (ii) to cancel the warrants that would have been distributed to such holders had they chosen Option 1. There is no basis in the Plan for NorthWestern's continued failure to distribute these shares and cancel these warrants."[7]

---

[6] See Harbert Letter, pg. 2 and pg. 4.
[7] See Harbert Letter, pg. 4.

In addition, the Plan Committee, in the Plan Committee Objection, objected to the proposed settlement and asserted that "[t]he Proposed Settlement is neither fair nor reasonable; moreover, it violates the terms of the Plan," and demanded that "NorthWestern Corporation immediately cease all actions in pursuit of consummation of the Proposed Settlement."[8]

### E. The Debtor's Withdrawal From Pursuing the Proposed Settlement

At the time it negotiated and executed the Settlement Letter, NorthWestern believed, in the reasonable exercise of its business judgment, that the economic terms of the proposed settlement were reasonable. NorthWestern continues to believe that a settlement is in the best interest of the Debtor. But for the fatal objections of Harbert and the Plan Committee, on behalf of Classes 7 and 9, from NorthWestern's perspective, the proposed settlement would conclusively resolve all of the litigation commenced by and involving the Parties, including appeal of the confirmation order. This would, in the Debtor's reasoned business judgment, greatly facilitate NorthWestern's business goals, which included a timely return to investment grade status, with the benefit of significantly reduced borrowing costs and improved access to capital markets. Resolution of the extensive litigation involving the Parties would significantly reduce NorthWestern's legal fees and costs and the drain on senior management's time, permitting NorthWestern's senior management and its Board of Directors to focus on continuing to improve NorthWestern's business operations and

---

[8] See Plan Committee Objection, pg. 1, ¶ 2.

efficient management thereof without the distraction of continuing non-productive and very costly litigation with the Parties.

However, after the Debtor received the Harbert Letter and Plan Committee Objection objecting to the proposed settlement, it became apparent that the proposed settlement, absent the consent of Harbert and the Plan Committee, on behalf of Classes 7 and 9, was fatally flawed and could not be pursued. As set forth in its letter to Appellants dated February 16, 2005, NorthWestern withdrew from the proposed settlement because Harbert's and the Plan Committee's objections could not be cured or otherwise resolved. The settlement, absent creditor consent, could not be approved because by its terms it reduces distributions provided for in the confirmed and substantially consummated Plan. For the same reasons, a Plan amendment, if one could be proposed, would be equally unacceptable to Harbert and the Plan Committee.[9]

The objections are fatal because of limits on distributions provided for in the confirmed Plan. Specifically, the Plan provides that Class 8(b) could accept the treatment provided to Class 8(b) as an Option 1 holder or accept treatment as a QUIPS Litigation Claim Holder – but that it could not accept and receive both. The Plan specifically provides for one distribution or the other.[10]

Article IV, § 4.8(b)(ii) of the Plan provides, in part, as follows:

> On the Effective Date, or as soon thereafter as practicable, each holder of an Unsecured Subordinated Note Claim represented by the QUIPS Notes and related Claims and

---

[9] The objections asserted in Harbert's letter, were incorporated into the Objection of Ad Hoc Committee of Class 7 Debtholders to Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York as Indenture Trustee for Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Between NorthWestern Corporation, Magten Asset Management Corporation, and Law Debenture Trust Company of New York.

[10] See Plan, Article IV, § 4.8(b)(ii).