Causes of Action who accepts or rejects the Plan may opt to receive in full satisfaction, settlement, release, extinguishment and discharge of such Claim either, **but not both**:

(1)  a Pro Rata Share of 505,591 shares of New Common Stock (such 505,591 shares representing 1.4% of the New Common Stock to be issued and outstanding on the Effective Date prior to any dilution resulting from shares of New Common Stock issued pursuant to the New Incentive Plan and exercise of the Warrants), plus Warrants exercisable for an additional 2.3% of New Common Stock (collectively, "Option 1"); or

(2)  a Pro Rata Share of recoveries, if any, upon resolution of the QUIPS Litigation ("Option 2").[11]

The Plan also provides that to the extent shares allocated to Class 8(b) are not distributed to Option 2 holders, those shares are to be distributed to Classes 7 and 9. The Plan specifically provides "any New Common Stock which otherwise would have been distributable to such holder if such holder had chosen Option 1, shall be distributed, pro rata to Class 7 and Class 9, and the Warrants which otherwise would have been distributable will be canceled."[12]

The Plan is explicit – Magten and the non-accepting QUIPS holders could have accepted the Plan and received the Class 8(b) distribution or, by rejecting the Plan they would receive only a Class 9 claim. To give them both types of recoveries as structured in the proposed settlement required the consent of Classes 7 and 9 either by way of an amendment to the Plan or the absence of objections to the proposed settlement. A Plan amendment, as discussed below, is not feasible because the Plan has been

---

[11] Id. (emphasis in bold added).

[12] Id.

substantially consummated and the opposition to the proposed settlement terms is self evident.

The express language of the Plan, and NorthWestern's substantial consummation thereof, preclude a plan amendment that would change distributions to creditors that were approved and implemented by the Debtor's substantial consummation of the confirmed Plan.[13]

### F.    Appellants 9019 Motion

Pursuant to Bankruptcy Court's direction, on February 22, 2005 Appellants filed the Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York as Indenture Trustee for Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Between NorthWestern Corporation, Magten Asset Management Corporation, and Law Debenture Trust Company of New York (the "9019 Motion"). Attached to the 9019 Motion as "Exhibit 1" is Appellants proposed order granting the 9019 Motion (the "Proposed Order"). The specific relief requested in the 9019 Motion is for the Bankruptcy Court to enter the Proposed Order which purports to (i) approve the Settlement Letter, (ii) direct NorthWestern to comply with the Settlement Letter and (iii) direct NorthWestern to pay fees and expenses of Appellants in the pursuit of the 9019 Motion. See 9019 Motion ¶20.

The 9019 Motion further quotes passages from the Settlement Letter, including the proposed settlement distribution of 382,732 shares of stock and 710,449 warrants allocated to Class 8(a) claimants. See 9019 Motion ¶21. In the 22 pages of the 9019

---

[13] See In re Northampton Corp., 39 B.R. 955, 956 (Bankr. E.D. Pa. 1984), aff'd, 59 B.R. 963 (E.D. Pa. 1984); accord, In re H & L Developers, Inc., 178 B.R. 77 (Bankr. E.D. Pa. 1994); see also In re Tillotson, 266 B.R. 565 (Bankr. W.D.N.Y. 2001).

Motion, Appellants do not refer to any other source of distribution of the 382,732 shares of stock and 710,499 warrants. However, in review of the Proposed Order, Appellants slip in several findings of fact and terms which are not included in the Settlement Letter or noticed in the 9019 Motion, such as:

> The Settlement can be effectuated without filing an amendment to the Plan, as NorthWestern has sufficient stock in the claims reserve, authorized but un-issued stock and cash to provide the holders of the QUIPS with the economic equivalent to the recovery they would have received were the stock and warrants described in the Settlement Agreement actually provided to the holders of the QUIPS.

Proposed Order pg. 4.

The "economic" equivalent concept is not addressed in the Settlement Letter or the 9019 Motion. Furthermore, the Settlement Letter is very specific on the source and allocation of the 382,732 shares of stock and the 710,449 warrants – these concepts are contained in a separate bullet point from the other terms of the Settlement Letter. See Settlement Letter pg. 2. By modifying the relief requested in the form of the Proposed Order, Appellants are effectively (i) conceding that the payment of the 382,732 shares of stock and 710,449 warrants as allocated in the Settlement Letter is in violation of the confirmed Plan and (ii) seeking to unilaterally modify the terms of the Settlement Letter through relief buried in the Proposed Order and not referenced in the 9019 Motion. Such modification was rejected by the Bankruptcy Court and should also be rejected by this Court by affirming the Bankruptcy Court's decision at issue in this appeal.

## V. ARGUMENT AND CITATION OF LEGAL AUTHORITY

### A. The Settlement Letter was Subject to Bankruptcy Court Approval

Appellants assert that the Bankruptcy Court erred in finding that the Settlement Letter required bankruptcy court approval to be binding on NorthWestern. It is undisputed that NorthWestern and Appellants sought to settle all claims and causes of action. In good faith, NorthWestern and Appellants documented an agreement in principal to outline the terms of the settlement. See Settlement Letter. However, Appellants ignore and disregard the clear language of the Settlement Letter which makes the effectiveness of this settlement conditioned upon bankruptcy court approval. See Settlement Letter, pgs. 2 and 3. (…"[t]his Settlement will be implemented by way of a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of an agreed upon stipulation and order (the 'Stipulation and Order') approving the Settlement…"). Moreover, the Settlement Letter specifically required an "agreed upon stipulation and order" to approve the settlement which was "*to be* mutually acceptable to the parties" and referred to the "*definitive* settlement agreement" in the context of allocation of securities. Settlement Letter, pg. 2 (emphasis added). Therefore, within the four corners of the Settlement Letter, additional documents and bankruptcy court approval were required before the actual settlement would be effective and could be implemented. Appellants can not pick and choose which provisions of a contract to enforce, but rather, must be bound by the terms of the Settlement Letter as a whole. See United States v. Armour & Co., 402 U.S. 673, 682 (1971) ("the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation."); Hughes v. United States,

342 U.S., 353 (1952) (court would not support a modification of the original decree in the guise of construing the original decree).

Even if this Court takes Appellants position and ignores the plain language in the Settlement Letter referring to additional documentation between the parties and determines that NorthWestern was bound by the terms of the Settlement Letter, Appellants still agreed, in writing, that the terms would be subject to Bankruptcy Court approval. In this instance, the Bankruptcy Court allowed Appellants to file the 9019 Motion despite NorthWestern's opposition to the proposed stipulation and order (which was a prerequisite in the Settlement Letter). The Bankruptcy Court then denied the 9019 Motion on the grounds that the proposed settlement would violate the terms of the Plan. Appellants can not have it both ways, either the Appellants agreed that the Settlement Letter would be subject to bankruptcy court approval or the Appellants can argue that notwithstanding that requirement, the Settlement Letter is binding on NorthWestern. It is contradictory to assert that the agreement is binding on NorthWestern without court approval when the agreement itself, signed by all parties, expressly requires such approval. Irrespective that the parties thereunder agreed that the Settlement Letter was subject to Bankruptcy Court approval, the fact that the terms of the settlement affected the confirmed plan brought the proposed settlement within the jurisdiction of the Bankruptcy Court and subject to court approval under Section 1127(b) of the Bankruptcy Code. See 11 U.S.C. § 1127(b) (can modify a plan only before substantial confirmation occurs).

In Myers v. Martin (In re Martin), 91 F.3d 389 (3d Cir. 1996), the Third Circuit Court of Appeals considered whether a trustee breached the duty of good faith

and fair dealing by entering into a settlement based on a good faith belief the settlement was in the estate's best interest and, subsequently repudiating the settlement when the circumstances changed and the settlement was no longer in the estate's best interest. In its ruling, the Third Circuit determined that a trustee cannot be required to choose between its contractual duties to a party to a settlement agreement and its fiduciary duty to all creditors of a bankruptcy estate and held the bankruptcy court did not abuse its discretion when it denied approval of the settlement agreement. Id. at 396. In considering the dilemma confronting the trustee, who had made an agreement with the third party and repudiated it when the facts changed, the Third Circuit concluded:

> Thus, this trustee was faced with a conflict between her fiduciary duty to the creditor body as a whole and the alleged duty to go forward with a settlement agreement favoring one creditor but otherwise detrimental to the estate.
>
> We cannot require a trustee herself to choose between these conflicting legal obligations. Rather, Rule 9019(a) demonstrates the legislature's intent to place this responsibility with the bankruptcy court. In order to make such a determination, the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.

Id. at 394 (emphasis added). See also In re Cincinnati Microwave, Inc., 210 B.R. 130, 133 (Bankr. S.D. Ohio 1997) (until there is approval by the Bankruptcy Court of a post-bankruptcy settlement, there is no effective agreement); In re Sparks, 190 B.R. 842, 845 (Bankr. N.D. Ill. 1996) (settlements are not enforceable absent Bankruptcy Court approval).

Martin applies here. In the present circumstances, NorthWestern entered into the Settlement Letter with the good faith belief that the proposed settlement was in NorthWestern's overall best interest and in the best interest of the creditor body as a

whole, given the expected costs to the estate from protracted litigation with Magten and Law Debenture and the economic advantages that would result to the Debtor from resolving major continuing litigation claims, including the appeal of the order confirming the Plan.

As in Martin, the circumstances changed after the Settlement Letter was executed and the proposed settlement terms became public. As a result of Harbert's and the Plan Committee's objections on behalf of Classes 7 and 9, the Debtor withdrew its support the Settlement Letter because the settlement cannot be implemented absent the consent of the creditors impaired thereby.

B. **The Terms of the Underlying Settlement Required Modification of Confirmed Plan**

The terms of the proposed settlement, as set forth in the Settlement Letter, provide the following recoveries to Magten and Law Debenture:

> (i) NorthWestern will cause to be distributed to the Indenture Trustee [Law Debenture] for its own benefit and on behalf of Magten and the non-accepting Class 8(b) QUIPS holders the 382,732 shares of common stock at the reorganization plan value of $20.00 per share ("Plan Value") and the 710,449 warrants not yet distributed to Class 8(b) claimants that would have been distributed to Magten and the non-accepting Class 8(b) QUIPS holders had they accepted NorthWestern's confirmed plan of reorganization (the "Plan"); and

> (ii) NorthWestern will distribute to the Indenture Trustee [Law Debenture] for its own benefit and on behalf of Magten and the other non-accepting Class 8(b) QUIPS holders (a) those shares of common stock of reorganized NorthWestern set aside for such QUIPS holders in the reserve established pursuant to that certain Stipulation and Order Establishing a Disputed Claim Reserve entered as Docket #2298 on November 1, 2004, which stock has a Plan Value of $17.1 million, plus (b) and additional $300,000 of common stock of reorganized NorthWestern at Plan Value, which additional stock will be distributed from

the general reserves set aside in Class 9 for pending litigation claims.

See Settlement Letter, pgs. 2 and 3.

Essentially the Settlement Letter provided that in addition to receiving proceeds as a Class 9 claimant from the Disputed Reserve, that Appellants would also be eligible to receive the shares and warrants allocated to Class 8(a) claimants. However, because Magten and other QUIPS holders voted not to accept the treatment in Class 8(a) and instead gambled upon a higher recovery from the QUIPS litigation in Class 8(b), the mechanics of the Plan do not allow a Class 8(b) creditor to share in the remaining Class 8(a) consideration, instead, those shares are redistributed to Classes 7 and 9 pursuant to Section 4.8(b)(ii) of the Plan. Accordingly, if the proposed settlement were implemented it would breach the waterfall provisions contained in the Plan to the detriment of Classes 7 and 9.[14]

Due to the redistribution provisions of Section 4.8(b)(ii) of the Plan, if the literal terms of the Settlement Letter were implemented, the Reorganized Debtor would breach the terms of the Plan. Therefore, the only way to implement the terms of the Settlement Letter would be to modify Section 4.8(b)(ii) to channel the stock from Class 7 and Class 9 creditors. Clearly, the Reorganized Debtor could not continue to pursue implementation of the proposed settlement over the objection of creditors whose claims are senior to those of Magten and Law Debenture and whose distributions under the Plan would be adversely impacted by the proposed settlement. See In re AWECO, Inc., 725

---

[14] At this time the shares have been redistributed to Class 7 and 9 creditors per the Plan and the warrants canceled. Even if NorthWestern wanted to implement the settlement, which it does not, it could not now do so. From this perspective Magten's and Law Debenture's appeal is moot. See PWS Holding Corp., 228 F.3d 224 (3d Cir. 2000) and In re Continental Airlines, 91 F.3d 553 (3rd Cir. 1996) (en banc).

F.2d 293 (5th Cir. 1984) (court cannot approve a settlement unless priority of payments will be respected as to objecting senior creditors).

Moreover, because the Debtor has substantially consummated the Plan, it cannot amend the Plan. 11 U.S.C. § 1127(b) (2000), See In re Northampton Corp., 39 B.R. 955, 956 (Bankr. E.D. Pa. 1984), aff'd, 59 B.R. 963 (E.D. Pa. 1984); accord, In re H & L Developers, Inc., 178 B.R. 77 (Bankr. E.D. Pa. 1994); see also In re Tillotson, 266 B.R. 565 (Bankr. W.D.N.Y. 2001). Such amendment, even if proposed, would be a useless act as Harbert and the Plan Committee, on behalf of Classes 7 and 9, would oppose the amendment for the same reasons they oppose the proposed settlement.

Harbert and the Plan Committee, on behalf of Classes 7 and 9, objected to the proposed settlement, asserting that it dilutes the distributions to which they are entitled under the Plan. Under Section 4.8(b)(ii) of the Plan, Class 8(b) Claimants could either accept the treatment provided to Class 8(b) as an Option 1 holder or accept Option 2 treatment as a QUIPS Litigation Claim Holder - but they could not accept and receive both. Moreover, under Section 4.8(b)(ii) of the Plan, Classes 7 and 9 are to receive the unissued shares allocated to Class 8(b).[15] Harbert and the Plan Committee, on behalf of Classes 7 and 9, object to the proposed settlement because it would modify the substantially consummated Plan and impermissibly dilute the distributions to which Classes 7 and 9 are entitled pursuant to the terms of the Plan. A confirmed plan may be modified only before substantial consummation, but not after. 11 U.S.C. § 1127(b), see In re Northampton Corp., 39 B.R. 955, 956 (Bankr. E.D. Pa. 1984), aff'd, 59 B.R. 963 (E.D. Pa. 1984); accord, In re H & L Developers, Inc., 178 B.R. 77 (Bankr. E.D. Pa.

---

[15] See Plan, Article IV, § 4.8(b)(ii).

1994); see also In re Tillotson, 266 B.R. 565 (Bankr. W.D.N.Y. 2001). Absent consent of the Plan Committee and Class 7 creditors, as represented by Harbert and similarly situated holders of claims and stock, the proposed settlement cannot be approved.

Furthermore, absent their consent, Harbert and the Plan Committee have asserted that the proposed settlement violates the "fair and equitable" standard. As soon as a debtor files a petition for relief, fair and equitable settlement of creditors' claims becomes a goal of the proceedings. In re AWECO, Inc., 725 F.2d 293, 298 (5th Cir. 1984). The words "fair and equitable" are terms of art - - they mean that "senior interests are entitled to full priority over junior ones." SEC v. American Trailer Rentals Co., 379 U.S. 594 (1965). In AWECO, the Fifth Circuit held that "a bankruptcy court abuses its discretion in approving a settlement with a junior creditor unless the court concludes that priority of payment will be respected as to objecting senior creditors." In re AWECO, Inc., 725 F. 2d at 298; see also In re Central R.R. Co. of New Jersey, 579 F.2d 804, 810 (3d Cir. 1978) ("The priority standard requires that claimants and creditors of a bankrupt estate of the same class receive the full value of their debts from the property of the debtor before junior creditors and shareholders are paid.").

NorthWestern's pursuit of the proposed settlement, in light of the objections asserted by Harbert and the Plan Committee on behalf of Classes 7 and 9, was a pointless endeavor as the proposed settlement cannot be approved over their objections. The law does not require the doing of vain or useless acts. See Abdallah v. Abdallah, 359 F.2d 170, 175 (3d Cir. 1966) ("Under such circumstances, the law, which is eminently practical, does not require the doing of a vain thing."); In re Hughes Steel Erection Co., 225 F. Supp. 66, 67 (E.D. Pa. 1964) ("To hold that petitioner, under such circumstances,

was obliged to refile his earlier petition or to file its facsimile would impose on petitioner a duty to perform a vain or useless act, a view repugnant to the law.").

Appellants, themselves, now appear to concede that the Settlement Letter, as proposed, can not be implemented under the current Plan. See Opening Brief, pg. 20. Despite recognizing this fatal flaw in the Settlement Letter, Appellants seeks to use this appeal to rewrite the terms of the Settlement Letter to provide an "economic" equivalent of the proposed settlement. See Opening Brief, pg. 20. Similar to the proposed order attached to the 9019 Motion, Appellants seeks to modify the terms of the Settlement Letter by deleting the requirement of NorthWestern to transfer 328,732 shares of common stock from Class 8(a) and instead substitute a new requirement that these shares come from Class 9. See Proposed Order, pg. 4 and Opening Brief, pg. 22. However, the issue upon appeal is whether the Bankruptcy Court erred in concluding that the implementation of the proposed settlement would be in contradiction of the confirmed Plan. Appellants can not on the one hand assert that the Settlement Letter was a binding contract containing all material terms and then, on the other hand, ask this Court to modify the terms of the written contract. NorthWestern does not dispute that it entered into the Settlement Letter with the intent of finalizing a settlement among the parties, but, NorthWestern safeguarded the incomplete settlement by specifically conditioning it upon Bankruptcy Court approval (which under Rule 9019 of the Bankruptcy Rules requires notice to parties and an opportunity to object) and requiring a further "definitive" settlement agreement and mutually acceptable stipulation and order. See Settlement Letter, pgs. 2 and 3. There is no provision in the Settlement Letter which allows Appellants to reallocate the distribution of the 328,732 shares of stock from the

designated category of undistributed Class 8(a) stock to Class 9. The source of the consideration of the proposed settlement was clearly defined in the Settlement Letter and Appellants slipping new terms into the Proposed Order or this appeal is in conflict with the terms of the Settlement Letter which was unambiguous on its face.[16]

## VI. CONCLUSION

Appellants have failed to introduce any facts or law to refute the fact that the Settlement Letter specifically required Bankruptcy Court approval. Furthermore, Appellants are unable to produce any case law to support a modification of the Plan which has become effective and has been substantially consummate or to support the theory that a Court may rewrite the terms of a Settlement Letter and provide a different source of consideration. Therefore, this Court should affirm the Bankruptcy Court's decision denying the 9019 Motion.

---

[16] The Bankruptcy Court agrees with NorthWestern on this issue. In a recent hearing the Bankruptcy Court stated, with respect to Magten's continued objection to NorthWestern resolving disputed claims "in denying the . . . 9019 Motion, the Court found that terms of the alleged settlement expressly violated the terms of the plan, and that Magten's ultimate proposal raised – *for the first time*, I might add, on oral argument – to dip into the disputed claims reserve was an untenable solution." See Transcript of Omnibus Hearing Before Honorable John L. Peterson United States Bankruptcy Court Judge dated August 10, 2005 at pg. 16, lines 2-7. (emphasis added). A copy of the transcript is attached hereto as Attachment 1.

Dated: August 23, 2005
       Wilmington, Delaware

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP
Jesse H. Austin, III
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Telephone: (404) 815-2400

- and -

PAUL, HASTINGS, JANOFSKY &
    WALKER LLP
Kristine M. Shryock
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000

- and -

Respectfully submitted,

GREENBERG TRAURIG, LLP

_____
Victoria Watson Counihan (No. 3488)
William E. Chipman, Jr. (No. 3818)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern Corporation*

# ATTACHMENT 1