# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTHWESTERN CORPORATION,<br><br>                Debtor. | Chapter 11<br><br>Case No. 03-12872 (JLP) |
| MAGTEN ASSET MANAGEMENT CORPORATION<br>AND LAW DEBENTURE TRUST COMPANY<br>OF NEW YORK,<br>                Appellants,<br>      v.<br>NORTHWESTERN CORPORATION,<br><br>                Appellee. | CA No. 05-0209 (JJF) |

**APPELLANTS' CONSOLIDATED REPLY TO (I) NORTHWESTERN CORPORATION'S REPLY TO APPELLANTS' OPENING BRIEF (II) BRIEF OF APPELLEE, PLAN COMMITTEE AND (III) JOINDER OF AD HOC COMMITTEE OF CLASS 7 DEBTHOLDERS TO PLAN COMMITTEE'S BRIEF IN RESPONSE TO OPENING BRIEF OF APPELLANTS**

FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Counsel for Magten Asset Management
Corporation

BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Counsel for Magten Asset Management
Corporation

NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
Counsel for Law Debenture Trust Company of
New York

SMITH, KATZENSTEIN & FURLOW, LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405
Counsel for Law Debenture Trust Company of
New York

Dated: September 7, 2005
Wilmington, Delaware

120087.01600/40156426v.1

## Table of Contents

Page

Preliminary Statement ..........................................................................................................1

Argument ................................................................................................................................3

I.     The Settlement Agreement, By its Express Terms, is a Binding Contract ...............3

II.    The Settlement Agreement did not Violate the Terms of the Plan .........................7

III.   The Plan Committee Does Not Have Standing to Join in This Appeal, and its Brief Should be Disregarded in its Entirety ................................................................10

Conclusion ............................................................................................................................13

Table of Authorities

Cases

In re ANC Rental Corp.,
    57 Fed. Appx. 912, 914 (3d Cir. 2003)..................................................................11

Ad Hoc. Comm of CTA Bondholders v. Continental Airlines, Inc.
(In re Continental Airlines),
    1994 U.S. Dist. LEXIS 20531 (D. Del. June 8, 1994)..........................................7, 8

Bartel v. Bar Harbor Airways,
    196 B.R. 268, 271 (S.D.N.Y. 1996)......................................................................11

In re Dykes,
    10 F.3d 184 (3d Cir. 1993).....................................................................................11

Meyers v. Martin (In re Martin),
    91 F.3d 389 (3d Cir. 1996)...................................................................................4, 5

Northview Motors, Inc. v. Chrysler Motors Corp.,
    186 F.3d 346, 351 n.4 (3d Cir. 1999)......................................................................4

In re O'Brien Envtl. Energy, Inc.,
    181 F. 3d 527, 530 (3d Cir. 1999) ........................................................................11

In re PWS Holding Corp.,
    228 F.3d 224, 249 (3d Cir. 2000)....................................................................11, 12

Travelers Ins. Co. v. H.K. Porter Co.,
    45 F.3d 737, 741 (3d Cir. 1995) 707 F.2d 441, 443 (9th Cir. 1983) .....................11

In re W.R.M.J. Johnson Fruit Farm, Inc.,
    107 B.R. 18, 19 (Bankr. W.D.N.Y. 1989) ..............................................................4

In re Wood,
    47 B.R. 774, 776 (Bankr. W.D. Wis. 1985)............................................................4

In re Zenith Electronics Corp.,
    329 F.3d 338, 340 n.7 (3d Cir. 2003)......................................................................9

### Statutes

11 U.S.C § 1109(b) .................................................................................................12

### Other Authorities

1-2 <u>Murray on Contracts</u> § 31 ..................................................................................3

120087.01600/40156426v.1

Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture" and together with Magten, "Appellants"), by and through their undersigned counsel, respectfully submit this reply (the "Reply") in response to (i) NorthWestern Corporation's ("NorthWestern") Reply ("NorthWestern Reply Brief") to Appellants' Opening Brief (the "Opening Brief"), (ii) Brief of Appellee, Plan Committee (the "Plan Committee Brief") and (iii) the Joinder of the Ad Hoc Committee of Class 7 Debtoholders (the "Ad Hoc Committee") to Plan Committee's Brief in Response to Opening Brief of Appellants; and in further support of their appeal (the "Appeal") arising from the Order (the "9019 Order") Denying Joint Motion of Appellants (the "9019 Motion"), entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on March 10, 2005. In support of this Reply, Appellants respectfully state as follows:

### Preliminary Statement

On January 27, 2005, the Parties[1] executed a settlement agreement that by its express terms was "binding upon and inure[d] to the benefit of the respective successors and assigns of each of the parties hereto." See App. Exh. 248, Exh. C.[2] While Northwestern spends much time in its opposition papers trying to read conditions precedent into the Settlement Agreement, the simple fact is that the Settlement Agreement contained no conditions precedent and by its terms, it was binding upon execution. Because NorthWestern was a reorganized entity that had already emerged from chapter 11, NorthWestern was free to enter into contracts without first seeking the approval of the Bankruptcy Court and is bound by such contracts.

---

[1] All capitalized terms not expressly defined herein shall have the meanings ascribed to them in Appellants' Opening Brief.

[2] References to items identified in Appellants' Joint Designation of Items to be Included in the Record on Appeal and Statement of the Issues to be Presented on Appeal of Magten Asset Management Corporation and Law Debenture Trust Company of New York, as Trustee [Bankr. Docket No. 2943] are referred to as "App. Exh. __."

NorthWestern authored both the Plan and the Settlement Agreement and continues to champion the Settlement embodied therein, but now asserts that it cannot satisfy the terms of the Settlement Agreement without amending the Plan. That is simply false.

Under the terms of the confirmed Plan (which is the subject of an appeal), Magten and the other non-accepting QUIPS have a class 9 claim in the amount of approximately $51 million. Pursuant to the terms of the Settlement, the non-accepting QUIPS would receive 1,252,732 shares of stock and 710,000 warrants – or the equivalent of an approximately $25.5 million distribution from the Disputed Claims Reserve (based on the Plan value of the stock and warrants) representing a 51% recovery – an amount significantly less than a 62% recovery on account of their claim. Thus, any argument by the Plan Committee, the Ad Hoc Committee or NorthWestern that a distribution to Appellants impacts distributions to any other creditor is simply false.

NorthWestern's argument that the Settlement Agreement requires an amendment to the Plan is inconsistent not only with the Settlement Agreement that it drafted, but is also inconsistent with NorthWestern's prior representations to the Bankruptcy Court. When Northwestern first presented the Settlement to the Bankruptcy Court, its counsel advised the Court that amending the Plan was not necessary. Moreover, having drafted both the Plan and the Settlement Agreement (and counsel for NorthWestern having spent in excess of 7500 hours drafting and revising the Plan), and having entered into the Settlement Agreement knowing full well the terms of the Plan, NorthWestern is estopped from arguing that the Settlement Agreement runs afoul of the Plan. NorthWestern continues to assert that the Settlement is in the best interests of the Debtor's estate and that the underlying economics of the Settlement Agreement are reasonable. As such, the source of the funding to effectuate the Settlement Agreement does not allow NorthWestern to act in derogation of the Settlement Agreement in light of NorthWestern's superior knowledge of the contents of its Plan, and its superior bargaining power vís a vís Appellants. Every case in this Circuit addressing the enforceability of

settlement agreements and the Bankruptcy Code requires the enforcement of this Settlement Agreement.

Lastly, while the Plan Committee and the Ad Hoc Committee have filed briefs in support on the Appellee, neither party has standing to be heard in this appeal. The Plan Committee was created by NorthWestern's Plan and was given a very limited role, which did not encompass participating in this appeal (or other pending appeals). Similarly, the Ad Hoc Committee was created for the sole purpose of opposing the Settlement Agreement and is not a party to this appeal. Most importantly, neither the Plan Committee nor the Ad Hoc Committee is a party aggrieved within the definition provided by the Third Circuit (because their recoveries are not impacted one iota by the Settlement) and thus neither party is entitled to be heard.

## Argument

I. The Settlement Agreement, By its Express Terms, is a Binding Contract

The Settlement Agreement, drafted by counsel to NorthWestern, is clear on its face that "the Settlement outlined herein shall be binding upon and inure to the benefit of the respective successors and assigns of each of the parties hereto." See App. Exh. 260, Exh. C, p. 4. Thus, by executing the agreement expressly containing that language, the Parties indicated their intent and their consent to be legally bound by the terms of the agreement upon its execution. "It will be rare for…parties to include a statement to the effect that they intend their agreement to be legally binding. Should they include such a statement, however, the parties have eliminated any question as to their intention of legal consequences if all of the other elements of an enforceable contract are in place." 1-2 Murray on Contracts § 31.

Neither NorthWestern nor the Plan Committee can (or even attempt to) explain away this unambiguous language binding the Parties to the Settlement Agreement. Instead, they argue that the approval of the Settlement by the Bankruptcy Court was a condition precedent to the effectiveness of the Settlement Agreement. NorthWestern Reply Brief at p. 14; Plan Committee Brief at p. 12. In support of this argument, both point to language in the Settlement Agreement

that the Settlement Agreement would be "implemented by way of a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure." (App. Exh. 260, Exh. C, p. 3); NorthWestern Reply Brief at p. 14; Plan Committee Brief at p. 13. However, both NorthWestern and the Plan Committee raise arguments that are inapposite given the undisputed facts of this case. While both try to raise the spectre that the Settlement Agreement was not a binding contact, in light of the plain language of the Settlement Agreement, the detail contained therein, the fact that it was executed by the Parties, the press release issued by NorthWestern touting the Settlement and the representations made to the Bankruptcy Court when the Settlement was disclosed, there can be no argument that the Settlement Agreement is not binding.

The law in this Circuit is clear that not only that was the Settlement Agreement a binding contract, but also that Bankruptcy Rule 9019, as a procedural rule, cannot be used to alter the agreement reached by the Parties. Ordinarily, when a court reviews a contract under Bankruptcy Rule 9019, section 363 of the Bankruptcy Code provides the court with the substantive legal authority to review and refuse to enforce a contract. Section 363 of the Bankruptcy Code, however, is not applicable here since NorthWestern had already emerged from chapter 11.[3]

> [A]s a matter of law, Bankruptcy Rule 9019(a), a rule of procedure, cannot, by itself, create a substantive requirement of judicial approval of the Trustee's settlement of the [the debtors'] claims against Chrysler. However, we adhere to our ruling in Martin, that Section 363 of the Code is the substantive provision requiring court approval.

Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346, 351 n.4 (3d Cir. 1999) (emphasis added) (internal citation omitted).

---

[3] As discussed more fully in the Opening Brief, Section 363 of the Bankruptcy Code requires a debtor in possession to seek Bankruptcy Court approval to enter into contracts outside the ordinary course of business. However, such requirements are only applicable if a plan has not yet been confirmed. See In re W.R.M.J. Johnson Fruit Farm, Inc. 107 B.R. 18, 19 (Bankr. W.D.N.Y. 1989); In re Wood, 47 B.R. 774, 776 (Bankr. W.D. Wis. 1985). Because NorthWestern is no longer a debtor in possession and may enter into contracts without the constraints of section 363(b) of the Bankruptcy Code, there was no basis for the Bankruptcy Court to hold that an agreement executed by NorthWestern is not binding absent court approval. See generally Opening Brief at pp 17-19.

As such, NorthWestern's reliance on the Third Circuit's decision in <u>Meyers v. Martin</u> (<u>In re Martin</u>), 91 F.3d 389 (3d Cir. 1996) for the proposition that the approval of the Bankruptcy Court was necessary to bind the parties to the contract, is misplaced. In <u>Martin</u>, the trustee executed a settlement with a creditor, and due to the fact that subsequent events (including a trial on the merits) dramatically impacted the value of the litigation being settled, the trustee determined that the settlement was no longer in the best interest of the debtor's estate. As a result, the trustee did not oppose the objection that was interposed to the settlement. The Third Circuit held that due to the "unique facts of this case" the court would not conclude that the stipulation of settlement was binding upon the parties and that the trustee breached the settlement. <u>Martin</u>, 91 F.3d at 395. In reaching this conclusion, the Third Circuit specifically highlighted that the "trustee did not flout or breach any term of the stipulation. Nor did she withdraw the motion to approve the stipulation. Rather, at the hearing, the trustee simply elected not to argue in favor of her motion." <u>Id.</u> at 394.

Moreover, the Third Circuit premised its decision on the fact that the trustee had a fiduciary duty to the creditor body and would have violated that duty by actively championing a settlement that she believed was no longer in the debtor's best interests. The Third Circuit noted that section 363 of the Bankruptcy Code restricts the trustee's ability to use assets in the absence of court approval and that under section 363 of the Bankruptcy Code, once a debtor in possession agrees to a settlement, "Rule 9019(a) demonstrates the legislature's intent to place th[e] responsibility [of evaluating the reasonableness of a settlement] with the bankruptcy court." <u>Id.</u> at 394.

None of the facts in <u>Martin</u> are present in this case. First, NorthWestern is a reorganized debtor that does not have duties to the creditor body and is not subject to the restrictions under section 363 of the Bankruptcy Code. Additionally, while the trustee in <u>Martin</u> concluded that intervening facts rendered the settlement no longer in the debtor's best interest, here, no intervening facts have occurred that could have altered NorthWestern's position. The objections

5

of Harbert and the Plan Committee are not "changed circumstances" sufficient to justify NorthWestern's repudiation of the Settlement Agreement. NorthWestern's actions in opposing the Settlement Agreement stand in stark contrast to Martin. In Martin, the trustee did not oppose the settlement or abandon it; rather, the trustee remained silent.

Lastly, despite its repudiation of the Settlement Agreement, like Appellants, NorthWestern continues to believe that the Settlement Agreement is in the best interest of its estate and has always represented that it would have honored its obligations under the Settlement Agreement but for Harbert and the Plan Committee. See App. Exh. 255 at p. 15. Most recently, in its Reply Brief opposing this Appeal, NorthWestern continues to tout the benefits of the Settlement:

> NorthWestern continues to believe that a settlement is in the best interests of the Debtor. . .[T]he proposed settlement would conclusively resolve all of the litigation commenced by and involving the Parties, including the appeal of the confirmation order. This would, in the Debtor's reasoned business judgment, greatly facilitate NorthWestern's business goals, which included a timely return to investment grade status, with the benefit of significantly reduced borrowing costs and improved access to capital markets. Resolution of the extensive litigation involving the Parties would significantly reduce NorthWestern's legal fees and costs and the drain on senior management's time, permitting NorthWestern's senior management and its Board of Directors to focus on continuing to improve NorthWestern's business operations and efficient management thereof, without the distraction of continuing non-productive and very costly litigation to the Parties.

NorthWestern Reply Brief at pp. 9-10.

NorthWestern cannot have it both ways. As a reorganized debtor, NorthWestern cannot lure parties into settlement by negotiating, drafting and executing settlement contracts only to later repudiate the contract by trying to once again don its "debtor hat" and argue that it does not have the authority to enter into contracts absent the approval of the Bankruptcy Court. NorthWestern cannot simultaneously be both a reorganized entity and an entity that enjoys the protections afforded to chapter 11 debtors.

Thus, because of the clear language contained in the Settlement Agreement binding the Parties to the terms thereof, and because consistent with Third Circuit precedent Bankruptcy Rule 9019 was merely the procedural method by which Reorganized NorthWestern provided other creditors notice of the Settlement and the opportunity to lodge bona fide objections, if any. Here, because there can be no dispute that there was an arms-length negotiation between the Parties and because the Settlement Agreement provided Appellants with less than the full amount of their claim, there was no basis for any bona fide objections or for the Bankruptcy Court to refuse to enforce the Settlement Agreement.

II.  The Settlement Agreement did not Violate the Terms of the Plan

After the Settlement had been reached and the Settlement Agreement had been negotiated and executed, NorthWestern not only informed the Bankruptcy Court of the Settlement, but also represented to the Bankruptcy Court that an amendment to the Plan was not necessary to implement the Settlement. Counsel for NorthWestern specifically stated:

> We're not making an amendment to the plan per se, Your Honor. Because we have a pending adversary proceeding, we think we can do this under a 9019 settlement. We don't think it relates to a plan amendment because we had actually under the plan reserved a significant amount of stock for the Class 9 potential claimants as contingent unliquidated claims in connection with going effective. So that matter had ultimately been disclosed relative to the potential for settling claims.

See App. Exh. 260, Exh. B, p. 13.

Counsel for the Plan Committee was present in the courtroom when these representations were made and remained silent on the need for a Plan Amendment. Because of the Settlement, the Bankruptcy Court had stayed a trial that had been scheduled to begin on February 7, 2005 (see App. Exh. 260, Exh. B, p. 6), and if the Plan Committee believed that the Settlement required a Plan Amendment it had a duty to advise the Bankruptcy Court that the Settlement could not be implemented absent an amendment to the Plan.

7

In support of its contention that an amendment to the Plan is necessary, the Plan Committee relies on Ad Hoc. Comm of CTA Bondholders v. Continental Airlines, Inc. (In re Continental Airlines), 1994 U.S. Dist. LEXIS 20531 (D. Del. June 8, 1994). See Plan Committee Brief at pp. 14-15. This reliance is misplaced. In Continental, the Delaware District Court declined to approve a settlement that would have resolved the appeal of the confirmation order by an ad hoc committee. The claims of the members of the ad hoc committee were classified under the plan as class 14 claims and the members of the ad hoc committee had already received distributions on account of its claims in that class. Id. at *19. However, the settlement agreement sought to provide for an additional distribution to such claimants from class 16 – a distribution solely on account of the settlement of the confirmation appeal. Id. In rejecting the debtors' argument that the settlement be satisfied from the class 16 claims reserve, the court noted that the reserves were created for the resolution of disputed class claims, not for claims in class 14. Id.

The facts of Continental stand in stark contrast to the facts in the case at bar. Here, the non-accepting QUIPS have a class 9 claim and the Settlement essentially fixes the amount of that claim. Unlike Continental, the Settlement Agreement provides Appellants with a recovery on account of that Class 9 claim. The Settlement is no different than the settlement of any other disputed claim as it provides Appellants with the only distribution they have received or will receive under the Plan – a recovery that is still less than the full amount of their claim. This is consistent with the representations made by counsel for NorthWestern at the February 10, 2005 hearing that NorthWestern "had actually under the plan reserved a significant amount of stock for the Class 9 potential claimants as contingent unliquidated claims in connection with going effective." See App. Exh. 260, Exh. B, p. 13.

Second, unlike Continental, because Appellants hold a $51 million class 9 claim, any distribution to Appellants on account of the Settlement will not dilute the recovery of any creditor so long as the recovery afforded Appellants is not more than $31.6 million (i.e., 62% of

8

a $51 million claim). The Parties executed settlement contract that provided Appellants with a 51% recovery on account of their claim rather than the approximately 62% they are entitled to under the Plan in exchange for the cessation of litigation between the Parties. Where the stock to satisfy the Settlement Agreement comes from is of no moment to Appellants.[4]

When first presenting the Settlement to the Bankruptcy Court, NorthWestern represented that the distributions contemplated by the Settlement Agreement could be satisfied by NorthWestern. Counsel for NorthWestern specifically stated that NorthWestern "had actually under the plan reserved a significant amount of stock for the Class 9 potential claimants as contingent unliquidated claims in connection with going effective." See App. Exh. 260, Exh. B, p. 13. Later, in a shocking about-face, NorthWestern contended that it could not satisfy the Settlement Agreement out of the Disputed Claims Reserve. See App. Exh. 266 at pp. 44-45 (noting NorthWestern "wasn't in a position to allocate that large a portion of the reserve by way of settlement.") Thereafter, NorthWestern and the Plan Committee reversed their position and argued that there was sufficient stock in the Disputed Claims Reserve to fund the Settlement. See App. Suppl. Exh B. ("The total amount in the Disputed Claims Reserve is sufficient to cover all disputed claims which are currently pending against the estate."); see also App. Suppl. Exh C.[5]

NorthWestern and its counsel drafted and executed the Settlement Agreement, which provided the non-accepting holders of the QUIPS with a total recovery of 51% on account of their claim. This Settlement was significantly less than the potential 62% recoverable by the holders of the QUIPS under the Plan. Additionally, because of the numerous litigations and appeals regarding the Confirmation Order, there have always been questions about the distribution scheme under the Plan and whether it would be altered. It is important to note that

---

[4]  Because securities are fungible and because the warrants that were to be distributed to the Appellants were cancelled, re-issuing those warrants and enforcing the Settlement Agreement would not prejudice any creditor.

[5]  All references to Appellants' Supplemental Exhibits ("App. Suppl. Exh. __") shall refer to those documents submitted as an appendix to the Opening Brief [Docket No. 14]. See Opening Brief p. 14 n.6.

9

although the Plan has been substantially consummated, that does not prevent an Appellate Court from providing some relief. An appeal is not moot so long as a court can craft some meaningful relief, even if such relief is only partial. See In re Zenith Electronics Corp., 329 F.3d 338, 340 n.7 (3d Cir. 2003). It is entirely possible that notwithstanding the substantial consummation of the Plan, in connection with the appeal from the Confirmation Order, this Court could determine that the holders of the QUIPS are entitled to a claim in both Class 8(a) and Class 8(b) without overturning the whole Plan. Thus, Continental is inapplicable and the structure of the recovery to the holders of the QUIPS contemplated by the Settlement Agreement as part of a global settlement of not only the Fraudulent Conveyance Proceeding but also the Confirmation Appeal was foreseeable, entirely proper and did not require an amendment to the Plan.

III.   The Plan Committee Does Not Have Standing to Join in This Appeal, and its Brief Should be Disregarded in its Entirety

On August 23, 2005, the Plan Committee filed its Brief in connection with the Appeal, declaring itself to be an "Appellee" in this matter. Similarly, on August 23, 2005, the Ad Hoc Committee filed its joinder to the Plan Committee Brief. However, neither the Plan Committee nor the Ad Hoc Committee were a party to the Settlement Agreement and both lack standing to be heard in this matter and should be disregarded for similar reasons.

Section 7.9 of NorthWestern's Plan creates the Plan Committee for "the purpose of overseeing the remaining Claims reconciliation and settlement process." Unlike the Official Committee of Unsecured Creditors which is a statutorily created body to protect the interests of creditors appointed by the United States Trustee, the Plan Committee is merely created by the Plan and is not vested with statutory duties to protect the rights and interests of creditors. Section 7.9 of the Plan specifically grants rights to the Plan Committee only with respect to the settlement

process. Its rights are limited to objecting to a proposed settlement, which it has done here, and are not extended to include a broad sweeping role in the administration of NorthWestern's estate.[6]

Even if the role of the Plan Committee fell within the scope of protecting the interests of creditors, the Third Circuit has established that appellate standing is generally limited to parties that are "aggrieved" by a bankruptcy court's decision. With the intentions of limiting third party standing for appeals in bankruptcy cases, the Third Circuit stated that

> We consider a person to be aggrieved only if the bankruptcy court's order "diminishes their property, increases their burdens, or impairs their rights." Thus, only those "whose rights or interests are directly and adversely affected pecuniarily" by an order of the bankruptcy court may bring an appeal.

In re PWS Holding Corp., 228 F.3d 224, 249 (3d Cir. 2000) (quoting In re Dykes, 10 F.3d 184, 187 (3d Cir. 1993)) (internal citations omitted). See also In re ANC Rental Corp., 57 Fed. Appx. 912, 914 (3d Cir. 2003) ("appellate standing in bankruptcy cases is limited to 'persons aggrieved'"); Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 741 (3d Cir. 1995) ("'Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.'") (quoting In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983)); Dykes, 10 F.3d at 188 ("we are satisfied that an appellant must qualify as a 'person aggrieved' to be eligible for appellate review of a bankruptcy court order …. To appeal from an order of a bankruptcy court one must show that the order diminishes one's property, increases one's burdens or impairs one's rights."); Bartel v. Bar Harbor Airways, 196 B.R. 268, 271 (S.D.N.Y. 1996) ("To be a 'person

---

[6] The Plan Committee exceeded its authority under the Plan when it demanded that NorthWestern withdraw from the Settlement. See App. Exh. 257, Exh. J. It is not "protecting the interests of [NorthWestern's] unsecured creditors during the final stages of [NorthWestern's] Chapter 11 case" as it claims to do (Plan Committee Brief at p. 1), rather it is nothing more than a mouthpiece for NorthWestern's largest creditors – which are now NorthWestern's largest shareholders – that are seeking to substitute their business judgment for that of NorthWestern The Plan Committee's role is expressly limited by section 7.9 of the Plan, the Plan Committee has exceeded its authority, and it has no right to be heard in these appeals.

11

aggrieved,' the appellant must be 'directly and adversely affected pecuniarily by the challenged order.'") (quoting In re Cosmopolitan Aviation Corp., 763 F. 2d 507, 513 (2d Cir. 1985), cert. denied 474 U. S. 1032 (1985)). The Third Circuit further noted that when considering appellant standing, "[t]he 'person aggrieved' standard is more stringent than the constitutional test for standing." In re PWS Holding Corp., 228 F. 3d at 249; see also In re O'Brien Envtl. Energy, Inc., 181 F. 3d 527, 530 (3d Cir. 1999).

The Plan Committee is not a "party aggrieved" such that its rights and interests are directly and adversely affected by the relief that can be afforded Magten in the Appeals nor is it an individual creditor or a fiduciary for a creditor constituency. As noted above, under the Settlement, the non-accepting holders of the QUIPS received a recovery that was less than the full amount of their class 9 claim. Thus, no creditor is adversely effected by the Settlement.

Furthermore, the Plan Committee incorrectly asserts its right to submit its brief as a "party in interest" pursuant to section 1109(b) of the Bankruptcy Code.[7] Plan Committee Brief at p 2. The Plan Committee, with the very limited role it has been granted under the Plan, was not intended to be a "party in interest" within the meaning in section 1109(b), with the right to raise, appear and be heard on any issue in NorthWestern's chapter 11 case and further pursue those issues in appeal. Nonetheless, even if the Plan Committee is a "party in interest," as noted above, only a "party aggrieved" is conferred standing in an appeal, not a mere "party in interest." As the Third Circuit has made clear, although "[t]itle 11 U.S.C § 1109(b) . . . confers broad standing at the trial level . . . courts do not extend that provision to appellate standing." In re

---

[7] Section 1109(b) of the Bankruptcy Code provides, in relevant part:
[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

PWS Holding Corp., 228 F.3d at 248-249. For this reason, the Plan Committee's reliance on section 1109(b) is improper and the Plan Committee does not have a right to be heard in the Appeals.

Additionally, the Ad Hoc Committee, was created solely to oppose the Settlement. It is comprised of creditors of NorthWestern that have already received a 100% recovery on account of their claims. The Ad Hoc Committee is merely a fictitious entity invented by certain creditors to oppose the 9019 Motion and is not an aggrieved party entitled to be heard in this Appeal.

### Conclusion

For the reasons set forth herein, and for the reasons set forth in the Opening Brief, Appellants respectfully request that this Court reverse the 9019 Order and grant such other relief as it deems just and proper.

Dated: Wilmington, Delaware
September 7, 2005

**BLANK ROME LLP**

_____
Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
Bonnie Steingart, Esq.
Gary Kaplan, Esq.
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for Magten Asset Management Corporation

13

120087.01600/40156426v.1

- and -

By its attorneys,

Kathleen M. Miller (I.D. No. 2898)
Smith, Katzenstein & Furlow, LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Courier 19801
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

– and –

Amanda D. Darwin, Esq. BBO No. 547654
John V. Snellings, Esq., BBO No. 548791
Lee Harrington, Esq. (DE 4046)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Attorneys for Law Debenture Trust Company of New York