LEXSEE 1994 US DIST LEXIS 20531

IN RE: CONTINENTAL AIRLINES, et al., Debtors. AD HOC COMMITTEE OF CTA BONDHOLDERS, Appellant, v. CONTINENTAL AIRLINES, INC., et al., Appellees.

C.A. No. 93-252-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1994 U.S. Dist. LEXIS 20531

June 8, 1994, Decided

**SUBSEQUENT HISTORY:** Appeal dismissed by, in part, Appeal denied by, in part Ad Hoc Comm. of CTA Bondholders v. Continental Airlines, Inc. (In re Continental Airlines), 1995 U.S. Dist. LEXIS 22119 (D. Del., Mar. 16, 1995)

**PRIOR HISTORY:** [*1] Bankruptcy Nos. 90-932 through 90-984.

**LexisNexis(R) Headnotes**

**COUNSEL:** R. Stokes Nolte, Esquire, of Bailey & Wetzel, P.A., Wilmington, Delaware; Lewis S. Rosenbloom, Esquire, and Dean C. Gramlich, Esquire, of McDermott, Will & Emery, Chicago, Illinois; attorneys for appellant.

Laura Davis Jones, Esquire, and Robert S. Brady, Esquire, of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; and Richard P. Schifter, Esquire, and Brian P. Leitch, Esquire, of Arnold & Porter, Washington, D.C.; attorneys for appellees.

Neil B. Glassman, Esquire, and Dale R. Dube, Esquire, of Bayard, Handelman & Murdoch, Wilmington, Delaware; Robert J. Rosenberg, Esquire, and Bennett J. Murphy, Esquire, of Latham & Watkins, New York, New York; attorneys for the Post-Effective Date Committee of Unsecured Creditors of Continental Airlines, Inc. et al. (successor to the Official Committee of Unsecured Creditors of Continental Airlines, Inc., et al.).

Henry E. Gallagher, Jr., Esquire, and Arthur S. Connolly, III, Esquire, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; Thomas D. Goldberg, Esquire, of Day, Berry & Howard, Stamford, Connecticut; attorneys for IBM Credit Corporation.

Norman L. Pernick, Esquire, [*2] of Prickett, Jones, Elliot, Kristol & Schnee, Wilmington Delaware; attorneys for the Pension Benefit Guaranty Corporation.

Adam C. Harris, Esquire, of O'Melveny & Myers, New York, New York; attorneys for the Estate of Eastern Air Lines, Inc.

**JUDGES:** Sue L. Robinson, District Judge

**OPINIONBY:** Sue L. Robinson

**OPINION:**

**MEMORANDUM OPINION**

Dated: June 8, 1994

Wilmington, Delaware

Sue L. Robinson, District Judge

This matter is before the Court for disposition of the motion for approval of settlement filed by appellees, Continental Airlines, Inc. and 52 affiliated companies which, in late 1990, filed Chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware. n1 This motion comes approximately one year after confirmation of Debtors' Chapter 11 plan of reorganization, and several months after substantial consummation of same. The motion is opposed, inter alia, by various members of a class of creditors who, under the terms of the settlement agreement, would be required to relinquish their right to certain funds being distributed under Debtors' reorganization plan. n2 These funds are to be paid to appellant, the Ad Hoc Committee of CTA Bondholders [*3] ("Ad Hoc Committee"), in exchange for appellant's agreement to abandon this and other related litigation. For reasons that follow, the motion will be denied.

n1 Appellees are collectively referred to herein as "Debtors."

n2 These opposing creditor parties are: IBM Credit Corporation ("IBM Credit"); the Pension Benefit Guaranty Corporation ("PBGC"); and the Chapter 11 Estate of Eastern Air Lines, Inc. In addition, the Post-Effective Date Committee of Unsecured Creditors of Continental Airlines, Inc., et al. (successor to the Official Committee of Unsecured Creditors of Continental Airlines, Inc., et al.) (the "Post-Effective Date Committee"), which represents Debtors' unsecured creditors, also has appeared in opposition to this motion. These four parties are collectively referred to herein as the "Settlement Opponents."

## I. FACTUAL AND PROCEDURAL BACKGROUND

Debtors filed their Chapter 11 petitions for reorganization on December 3, 1990. The Bankruptcy Court, following an eight day trial, [*4] entered the Confirmation Order approving the Debtors' Joint Plan of Reorganization (the "Plan"). n3 Under the Plan, Air Canada, Air Partners and other entities (the "Investors") agreed to infuse a $ 450 million investment into the reorganized Debtors ("NewCal") in exchange for approximately two-thirds of NewCal's common stock and other valuable consideration. The remaining one-third fraction of NewCal common stock and some cash assets are to be made available to satisfy the allowed claims of various unsecured creditors of the Debtors.

n3 The term "Confirmation Order" refers to the Bankruptcy Court's April 16, 1993 "Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Revised Second Amended Joint Plan of Reorganization, as Modified, Under Chapter 11 of the United States Bankruptcy Code, and Granting Related Relief."

The Plan creates, pursuant to what has been referred to as the "Pooling Settlement," four "pools" constituted by groups of closely-related Debtors and their respective assets and [*5] liabilities. Each pool contributes all of its assets to NewCal, the reorganized Debtor. Additionally, each of the four pools receives a portion of the stock and cash allocated for payment of unsecured creditors. The apportionment of that stock and cash to the four pools is determined, under the terms of the Plan, according to the relative value of the assets contributed by each pool. Therefore, classes made up of Continental debtors which had lesser relative debtloads and greater relative assets received greater relative apportionments of stock and cash under the Plan. It appears, for example, that Class 16 creditors realized a recovery of nearly $ .50 on-the-dollar of their claims while Class 14 creditors realized only about $ .05.

The record indicates the Pooling Settlement was necessitated by several factors, chief among them being the need to consolidate the Debtors into a single corporate entity and to satisfy or discharge the claims of unsecured creditors of the Debtors' estates with one type of common stock, as required by the Investors. The Pooling Settlement resolved disputes regarding, inter alia, the following: (1) the proper valuation of the assets and liabilities [*6] of each Debtor company; and (2) various prepetition and postpetition intercompany claims. In the proceedings below and in this appeal, the Ad Hoc Committee challenged the Pooling Settlement as legally impermissible, arguing the law does not permit complete consolidation of assets into one entity without consolidating all creditors/liabilities in the same fashion. That is, the Ad Hoc Committee challenged the Plan's creation of the four creditor pools and the "disparate" allocation of value to those pools.

The Plan also provides for the release of certain claims against various non-debtor individuals and entities, including officers and directors of the Debtors, the official committees and their members, and the Debtors' professional advisors. In addition, these same entities and individuals receive the benefit of an indemnity provision under the Plan, with Debtors serving as the indemnitor. In the Bankruptcy Court proceedings and in this appeal, the Ad Hoc Committee challenged the Plan's release provision, contending the mandatory, non-consensual release of claims against non-debtor parties is legally impermissible.

On January 8, 1993, the Bankruptcy Court issued an order approving [*7] the Debtors' Disclosure Statement describing, inter alia, the Pooling Settlement. Thereafter, majorities of each class of unsecured creditors, as well as ninety-six of one-hundred classes of secured creditors, voted to accept the Plan. The Ad Hoc Committee, a group of Continental Airlines Holdings, Inc. bondholders collectively owning approximately $ 9 million in bonds, filed various objections to the Plan. n4 On April 16, 1993, the Bankruptcy Court overruled those and other objections and entered the Confirmation Order approving the Plan.

n4 It is undisputed that most of the bonds held by the Ad Hoc Committee's members were

Case 1:05-cv-00209-JJF    Document 20-2    Filed 09/07/2005    Page 3 of 9

Page 3
1994 U.S. Dist. LEXIS 20531, *

purchased at deep discounts after Debtors filed their Chapter 11 petitions.

On April 20, 1993, the Ad Hoc Committee brought this appeal to challenge, inter alia, the Bankruptcy Court's Confirmation Order. Appellant filed an emergency stay motion with the Bankruptcy Court seeking a stay of distributions under the Plan. The motion was denied. Appellant then filed a stay motion with [*8] this Court. On April 23, 1993, Chief Judge Longobardi denied the motion. Appellant filed a second stay motion in this Court, which Chief Judge Longobardi denied on April 27, 1993. On May 7, 1993, appellant appealed this Court's denial of its stay motion to the United States Court of Appeals for the Third Circuit (Appeal No. 93-7332). n5 The parties successfully obtained a limited remand of the Third Circuit stay appeal to this Court for disposition of the instant motion for approval of settlement.

> n5 Appellant also filed an Application for a Writ of Mandamus seeking to compel Chief Judge Longobardi to stay all distributions pending the outcome of this appeal. The Third Circuit denied appellants' mandamus application on July 7, 1993.

Consistent with denial of appellant's stay motions and in reliance on the court orders permitting implementation of the Plan to go forward, Debtors consummated a series of transactions contemplated by the Plan. On June 28, 1993, Debtors moved the Bankruptcy Court for an order approving [*9] initial distributions to Debtors' general unsecured creditors. The Bankruptcy Court granted the motion on July 29, 1993. The Initial Distribution Order permitted a substantial distribution to each of the four classes or pools of unsecured creditors and established a Disputed Claims Reserve for each of the classes.

As of September 15, 1993, nearly 100% of the total stock and cash NewCal was authorized to distribute pursuant to the Initial Distribution Order already had been distributed to unsecured creditors. n6 NewCal stock has been approved for trading on the New York Stock Exchange and, it appears from the record, shares are being traded actively on today's market. n7

> n6 This Court issued an order on September 9, 1993 directing the participants to this appeal to file fact submissions regarding whether the Plan had been substantially consummated and whether the commencement of distribution had occurred. See In re Cantwell, 639 F.2d 1050, 1053 (3d Cir. 1981) (appellate court may receive factual information regarding mootness and record on appeal is properly supplemented with facts arising after appeal is filed since "facts bearing on the issue of mootness can be raised at any time during the judicial proceedings").

[*10]

> n7 Because Debtors have emerged from bankruptcy and reorganized into a single new entity, NewCal, the legal status of Debtors and their distinctiveness from NewCal is unclear at best.

On October 29, 1993, after completion of briefing, the Court scheduled oral argument on this appeal for November 11, 1993. Although the Ad Hoc Committee raised several arguments on appeal, the Court instructed the parties only to "be prepared to address the issue of whether the Bankruptcy Court's confirmation of a reorganization plan containing mandatory, non-consensual releases of non-debtors was erroneous." (D.I. 18)

On or shortly before November 10, 1993, the parties to this appeal informed the Court they had reached a tentative settlement agreement, and jointly moved for continuance of oral argument in order to finalize and obtain Bankruptcy Court approval of the agreement. (D.I. 19) The Court granted the parties' request for continuance. During the following two months, the parties provided status reports indicating they were continuing to seek Bankruptcy Court approval of the settlement agreement. (D.I. [*11] 20; D.I. 21) The latter of these reports informed the Court that several parties filed objections to the motion, and that a previously-scheduled hearing on the matter had been continued, but not rescheduled. Included among the objections to the settlement motion was the assertion that the Bankruptcy Court lacked jurisdiction to authorize Debtors to enter into the settlement due to the pendency of the appeals in this Court and the Third Circuit.

On February 18, 1994, the parties filed the instant motion for approval of settlement. (D.I. 22) In their motion, the parties explained they "believe that the Bankruptcy Court does have...jurisdiction [over this matter]; however, in view of the concurrent jurisdiction in bankruptcy of this Court (of which the Bankruptcy Court is an adjunct), and in order to avoid unnecessary litigation of the jurisdictional issues, Continental is currently circulating a Stipulation dismissing its motion for approval of the settlement from the Bankruptcy Court, and the parties now seek approval of such settlement from this Court." (D.I. 22 at 4-5)

Appended to the settlement motion filed in this Court were various motion papers and objections filed previously [*12] in the Bankruptcy Court. In their motion (D.I. 22 at 5), the parties concluded by requesting "that this Court grant this motion to approve the proposed settlement, and enter as 'so ordered' the accompanying order and stipulation of settlement, in settlement of this litigation." n8 Subsequently, two of the objecting parties filed sur-reply briefs in further opposition to the settlement motion. On May 17, 1994, the Court heard oral argument on the motion to approve settlement. n9 Appearing at argument, in addition to both parties to this appeal (the proponents of the settlement), were settlement opponents the Post-Effective Date Committee, IBM Credit Corp., and the PBGC.

n8 On March 3, 1994, the Court "so ordered" the motion to approve settlement. At that time, because of the unusual procedural circumstances of this case and by virtue of the unusual presentation of the dispute over the settlement, the nature of this proceeding was unclear. The Court's approval was subsequently withdrawn (D.I. 25 at 2), and no legal significance can be attributed to this aspect of the proceedings.

n9 In the order scheduling oral argument (D.I. 36), the Court addressed the issue of whether the moving parties provided adequate notice of their motion for approval of settlement. (See D.I. 25; D.I. 30; D.I. 31; D.I. 32; D.I. 33; D.I. 34; D.I. 35) The Court concluded that adequate notice was given and, in addition, that "the interests of parties (potentially) affected adversely by approval and implementation of the settlement agreement are adequately represented by the parties which received notice and appeared to oppose the same." (D.I. 36 at 1) In any event, the Court's denial of the motion for approval of settlement would appear to moot the notice issue.

[*13]

## II. DISCUSSION

The Settlement Opponents are included among the parties who would be required--under the terms of the settlement agreement itself--to fund the payment of value to members of the Ad Hoc Committee in exchange for the Ad Hoc Committee's agreement to dismiss this appeal and the related Third Circuit stay appeal. n10 Debtors/NewCal have not offered to settle this matter with use of their own funds, but instead sought to finance this settlement with value (in reserves) allocated under the Plan to holders of Class 16 allowed claims. Settlement Opponents are creditors placed in Class 16 under the Plan, a class constituted by creditors of System One Holdings, Inc. n11

n10 As noted above, the parties to this appeal obtained a limited remand of the Third Circuit stay appeal to this Court for disposition of this settlement matter.

n11 The Post-Effective Date Committee, representing all unsecured creditors of the Debtors, also opposes the settlement.

The settlement agreement contemplates [*14] payment of 40,000 shares of NewCal stock to the Ad Hoc Committee. n12 Under the terms of the agreement, the stock distributed to appellant's members would come "from the reserve fund for the payment of disputed claims and allowed claims of Class 16 creditors, and the amounts of such common stock which shall be Class A and Class B common stock, respectively, shall be the product of the percentage each such class bears to the whole of the Class 16 reserve and 40,000." (D.I. 22, settlement agreement at 7) Around the time the settlement motion was filed in the Bankruptcy Court, these 40,000 shares were estimated to have a market value of between $ 800,000 and $ 1,000,000. It was calculated the three creditors opposing the settlement would suffer an approximate reduction in recovery of over $ 500,000, with IBM Credit losing about $ 335,000, PBGC losing about $ 135,000, and the Estate of Eastern Airlines losing at least $ 75,000. At argument, it was estimated the market value of the 40,000 NewCal shares had declined to about $ 600,000, with the value of the reduction in opponents' recoveries diminishing by a proportionate amount.

n12 The agreement provides that "the Debtors shall cause to be distributed, pursuant to instructions provided by the Ad Hoc Committee, a total of forty thousand (40,000) shares of common stock of NewCal...to the individual members of the Ad Hoc Committee." (D.I. 41, settlement agreement at 7)

[*15]

In addition to asserting the settlement agreement is neither fair, reasonable, nor warranted, the Settlement Opponents raise several legal arguments in support of their position. The first such argument is that the settlement impermissibly modifies the Plan after confirmation and substantial consummation thereof, and implementa-

tion of the agreement would breach Debtors' binding obligations under the Plan.

The Bankruptcy Code contains specific provisions governing debtor modifications of a confirmed plan of reorganization. In particular, the Code provides the following substantive and procedural limitations on plan modifications:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title.

11 U.S.C. § 1127(a).

Settlement [*16] Opponents contend, inter alia, that because the confirmed Plan has been substantially consummated, the modification of the Plan resulting from implementation of the proposed settlement agreement is implicitly precluded by section 1127(a). Moreover, as the Settlement Opponents contend, Debtors have not provided for "notice and a hearing" in connection with the proposed plan modification and have not even acknowledged that a plan modification is sought. Settlement Opponents further argue that Debtors are bound by the terms of the confirmed and substantially-consummated Plan and that, accordingly, Debtors are without lawful authority to take actions contrary to the Plan's express terms. See 11 U.S.C. § 1141(a) ("the provisions of a confirmed plan bind the debtor").

In responding to these arguments, Debtors do not dispute Settlement Opponents' assertion that substantial consummation of the Plan has occurred. The Court so finds. n13 Debtors contend, however, that compliance with section 1127(a) is not required here because "the proposed settlement does not result in any modification, material or otherwise, to the Plan." (D.I. 22, Exhibit F at 7) It is clear from the record that [*17] Debtors have not complied with the procedural requirements of section 1127(a); thus, if implementation of the proposed settlement causes the Plan to be materially altered, there is no basis in law for permitting the relief sought by this motion. n14 The critical question, therefore, is whether implementation of the proposed settlement modifies the Plan.

n13 The record at bar provides an ample basis in fact and law for the conclusion that the Plan has been substantially consummated.

n14 Debtors tacitly concede the motion for approval of settlement should be denied if this Court concludes that implementation of the settlement results in a material modification to the Plan.

Notwithstanding Debtors' assertions to the contrary, it is clear the Plan would be modified by implementation of the proposed settlement. As related above, the settlement proposes to transfer 40,000 shares of NewCal stock, valued between $ 600,000 and $ 1 million (depending on the date of calculation), to the Ad Hoc Committee's members. [*18] Under the settlement agreement, the source of these shares would be "the reserve fund for the payment of disputed claims and allowed claims of Class 16 creditors...." The Plan itself, however, expressly provides that each holder of a Class 16 allowed general unsecured claim "will receive...its Pro Rata Share of 614,517 shares of NewCal Class A Common Stock and 1,484,543 shares of NewCal Class B Common Stock." (Plan § 5.16) Because implementation of the proposed settlement would reduce the number of shares available to holders of Class 16 allowed claims by 40,000 shares, the Settlement Opponents argue the settlement agreement impermissibly seeks to modify this provision of the Plan. n15 The Court agrees.

n15 Debtors contend that by making this argument, the Settlement Opponents are "putting the cart before the horse" because such an argument assumes the Ad Hoc Committee would not prevail on its challenge to the allocation of value under the Plan's Pooling Settlement if this appeal were to go forward. The Court is unpersuaded by Debtors' position.

The issue on appeal is whether the Bankruptcy Court erred in confirming the Plan and overruling the Ad Hoc Committee's objections to the Plan's partial substantive consolidation and pooling scheme; and, if so, what form of effective relief, if any, can be granted at this juncture. Despite Debtors' assertion to the contrary, the issue presently before the Court is very different. Debtors urge this Court to order a post-confirmation, post-substantial consummation modification of the Plan's distribution scheme-- not to remedy any error made below--but to per-

Case 1:05-cv-00209-JJF    Document 20-2    Filed 09/07/2005    Page 6 of 9

Page 6
1994 U.S. Dist. LEXIS 20531, *

mit Debtors voluntarily to settle appellate litigation through funds dedicated to one class of creditors, as opposed to funds obtained from a universal reallocation of value.

[*19]

The bondholder-members of the Ad Hoc Committee are not holders of allowed Class 16 claims. Accordingly, the express terms of the Plan would be violated by distribution to the Ad Hoc Committee of NewCal shares earmarked solely for pro rata distribution to holders of allowed Class 16 claims. The Court, therefore, concludes that implementation of the proposed settlement would violate the Plan. In the absence of Plan modification, there is no legal basis for such action and, consequently, no authority for judicial approval of the proposed settlement agreement.

Debtors offer several unpersuasive arguments in an effort to salvage the settlement agreement. First, Debtors assert that "no provision of the Proposed Settlement Agreement would change even one word of the Plan." (D.I. 22, Exhibit F at 7) In making this assertion, Debtors miss the point. In the absence of proper modification to the Plan, there is no legal basis for distribution to the Ad Hoc Committee of NewCal shares earmarked solely for pro rata distribution to holders of allowed Class 16 claims. Thus, Debtors' failure to obtain proper Plan modification permitting the redistribution contemplated by the proposed agreement is [*20] precisely the problem here.

Debtors's next argument is that the "proposed settlement is functionally equivalent to the compromise of a disputed Class 16 claim because it provides to individual creditors who believe that they are entitled to share in the value allocated to Class 16, a small portion of such value." (Id. at 8) Debtors further contend that the "Plan fully contemplates that disputed claims will be resolved after substantial consummation of the Plan, and indeed a reserve for disputed Class 16 claims has been established in the amount equivalent to almost $ 50 million of Class 16 claims." (Id.)

The Court is unpersuaded by this theory. It is true the Plan contemplates resolution of disputed claims after substantial consummation. The Ad Hoc Committee members' claims, which were placed in Class 14, were allowed by the Bankruptcy Court and these bondholder-claimants have received distributions under the Plan; therefore, their claims are not the subject of this settlement. Rather, this settlement seeks to resolve appeals challenging the Plan itself. Clearly, the substantial reserves established under the Plan were created for resolution of disputed claims, not settlement of [*21] post-confirmation appeals. n16

n16 Debtors (and the Ad Hoc Committee) repeatedly contend that refusal to approve this settlement will make it too difficult for Chapter 11 debtors to settle post-confirmation appellate challenges to a plan of reorganization. The Court disagrees. First, parties such as these Debtors can establish reserves for resolution of such challenges. Second, Debtors are free at any time to settle this matter with their own money--as opposed to the funds of others.

Debtors further contend that the proposed settlement would at most result in an "immaterial plan modification," and that such changes "are permitted at any time, without resolicitation of creditors." (D.I. 22, Exhibit F at 9) In making this argument, Debtors place considerable reliance on In re American Solar King Corp., 90 Bankr. 808 (Bankr. W.D. Tex. 1988). In Solar King, as Debtors themselves report accurately, the court permitted "a pre-confirmation modification of a plan where the effect of the modification was to dilute [*22] recoveries in one class of claims by approximately one percent." (D.I. 22, Exhibit F at 10)

For several reasons, Debtors' reliance on the Solar King case is misplaced. First, the case at bar involves a postconfirmation, post-substantial consummation plan modification, whereas Solar King involved modification of a plan that had not yet even been confirmed. Second, while the court in Solar King apparently was comfortable presuming that "no previously assenting creditor would be motivated to reconsider their vote because of" the small dilution in recovery proposed by the modification at issue there, the same cannot be presumed here--judging from the vehement creditor opposition generated by the proposed settlement. Finally, irrespective of what the court in Solar King may have held, the diversion of approximately $ 600,000 in NewCal stock from the Class 16 creditors (rightfully entitled to share in that value under the Plan) to the Ad Hoc Committee members is not a "ministerial, administrative or immaterial Plan amendment." (D.I. 22, Exhibit F at 9) Debtors' assertion that the proposed settlement would result in nothing more than an immaterial plan modification must fail. [*23] For the reasons stated, the Court concludes the proposed settlement agreement is legally impermissible.

Even were the Court to conclude otherwise as to the legal permissibility of the proposed settlement, it nonetheless is clear the agreement's terms are neither fair nor reasonable, at least from the perspective of the creditors being asked to finance the deal. n17 To justify their contention that the settlement is fair and reasonable to Class 16 creditors, Debtors offer the following reasons: (1)

Case 1:05-cv-00209-JJF    Document 20-2    Filed 09/07/2005    Page 7 of 9

Page 7
1994 U.S. Dist. LEXIS 20531, *

Class 16 creditors are the creditors who would suffer if the Ad Hoc Committee prevailed on its challenge to the Plan's Pooling Settlement; (2) the diminution in Class 16 creditors' recoveries resulting from settlement implementation is less than fluctuations in value resulting from other factors of which the creditors were aware when voting to accept the Plan; (3) the settlement proposes only a "minuscule reallocation" of value (D.I. 39 at 12); and (4) Class 16 creditors, and all other unsecured creditors sharing one-third ownership of NewCal, are the true beneficiaries of the settlement agreement because it preserves the Plan's release provisions. The Courts finds this reasoning unpersuasive. [*24]

> n17 Debtors concede the fairness issue necessarily focuses on whether the settlement would be fair and reasonable from the perspective of Class 16 creditors. Because Debtors/NewCal are not requiring themselves to finance any of the settlement funds being paid to the Ad Hoc Committee, and because Debtors/NewCal obviously receive substantial benefits from the dismissal of this litigation, preservation of the Plan (particularly its release provisions), and other elements of the settlement agreement, the proposed settlement can be described as fair and reasonable to them. Likewise, creditors outside Class 16 generally stand to benefit from the proposed settlement since they incur no costs as a result of approval and implementation of the agreement, but arguably stand to gain from preservation of the Plan in its present form.

As to any purported benefit derived by Class 16 creditors from preservation of the Plan's release provision, Settlement Opponents have explained they are aware of the risks associated with [*25] the Ad Hoc Committee's possible victory on appeal on the release issue and that they are willing to take those risks. Consequently, Debtors cannot expect these Class 16 creditors to finance a settlement aimed at curtailing such risks. Furthermore, the benefits, if any, from diminishment of such risks flow to Debtors/NewCal and to all unsecured creditors sharing in ownership of the airline. n18 Under these circumstances, there is no basis whatsoever for requiring Class 16 creditors alone to pay for those benefits.

> n18 If the release provisions were found to be invalid as a matter of law and stricken from the Plan, and if lawsuits against individuals protected by the release provisions were then commenced, Debtors/NewCal (and the creditors now sharing in ownership of the airline) may be forced to incur litigation costs (and possibly to pay judgments or settlements) because of their promise of indemnity under the Plan and their obligations to provide discovery responses in connection with any such actions.

Debtors [*26] further contend Class 16 creditors are not unfairly burdened by the reallocation of value proposed by this settlement because factors independent of the settlement, such as allowance of once-disputed claims or variations in the market price of NewCal stock, caused fluctuations in the value of Class 16 recoveries which would exceed the change in value resulting from implementation of the settlement's terms, and that such creditors voted to accept the Plan with knowledge that such recovery fluctuations might occur. This contention is unconvincing since, as the Settlement Opponents point out, parties voting in favor of the Plan did so on the assumption that Plan reserves would be used solely for resolution of disputed claims, specifically claims placed in the pool connected with any particular reserve fund. Moreover, while parties agreeing to the Plan may have done so with the understanding that their recoveries could be reduced by any number of factors, Debtors' post-consummation use of Plan reserves to settle appellate litigation was not among those bargained-for risks.

Regarding the size of the proposed settlement payment and its relative impact on Class 16 creditors, Debtors' characterization [*27] of the settlement as proposing only a "minuscule reallocation" of value is unavailing. Debtors propose to reallocate at least $ 600,000 in value, with the largest Class 16 creditors being asked to suffer losses between $ 50,000 and $ 200,000. These amounts obviously are not "minuscule" and, judging from the reaction of the Settlement Opponents, are not properly viewed as having an insignificant impact on the recoveries of Class 16 creditors.

Finally, while it is true the Ad Hoc Committee sought reallocation of value through this appeal, nowhere in its appellate briefs did the Ad Hoc Committee request that value be taken specifically away from Class 16 and given to its members. The Ad Hoc Committee's only statement of record regarding use of reserves to effect a reallocation came in a fact memorandum filed in response to this Court's September 9, 1993 order. In its submission, appellant stated: "The Ad Hoc Committee believes that the reserves established by the Debtors are sufficient to effect a reallocation pursuant to a complete substantive consolidation, one of the alternative forms of relief available to the Ad Hoc Committee with respect to the issue on appeal of reallocation of [*28] consideration to Unsecured Creditors." (D.I. 15 at P 8) n19 Therefore, it is not true, as Debtors now suggest, that the Ad Hoc

Case 1:05-cv-00209-JJF    Document 20-2    Filed 09/07/2005    Page 8 of 9

Page 8
1994 U.S. Dist. LEXIS 20531, *

Committee sought relief in the form of reallocation of value specifically from Class 16 to members of the Ad Hoc Committee. Rather, the Ad Hoc Committee sought to alter the Plan--completely and fundamentally--by requesting "a complete substantive consolidation" through reallocation of all "reserves established by the Debtors." Thus, the form of relief sought on appeal by the Ad Hoc Committee provides no basis for requiring Class 16 to finance Debtors' settlement of this litigation. Because it is unfair and unreasonable to expect Class 16 single-handedly to pay for Debtors' settlement plans, the motion to approve settlement must be denied. n20

n19 See also D.I. 12 at 2 ("Ad Hoc Committee simply requests that the value allocated to unsecured creditors under the Plan, which has not yet been distributed, be distributed in a non-discriminatory manner....").

n20 Debtors' other theories offered as justification for requiring Class 16 to finance this settlement, such as because "that is really where the money is," (D.I. 39 at 13), are without merit and warrant no further discussion.

[*29]

### III. CONCLUSION

For the reasons stated, the Court declines to approve the proposed settlement. An order consistent with this memorandum opinion shall issue forthwith.

```
                                                                    105HKD
**********  Print Completed  **********

Time of Request:    September 07, 2005   02:41 PM EDT

Print Number:       1861:59907597
Number of Lines:    370
Number of Pages:




Send To:  DAVID, CARRIE
          BLANK ROME LLP
          1201 N MARKET ST STE 2100
          WILMINGTON, DE 19801-1165
```